UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | |
|---|---|
| In Re: <br><br> FAIRMONT GENERAL HOSPITAL, INC., <br><br> Debtor. | Case No. 1:13-bk-01054 <br><br> Chapter 11 <br><br> Joint Administration Requested |
| In Re: <br><br> FAIRMONT PHYSICIANS, INC., <br><br> Debtor. | Case No. 1:13-bk-01055 <br><br> Chapter 11 <br><br> Joint Administration Requested |

**DEBTORS' EMERGENCY MOTION TO SCHEDULE EXPEDITED HEARINGS ON CRITICAL FIRST DAY MOTIONS**

Fairmont General Hospital, Inc. and Fairmont Physicians, Inc., the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in these chapter 11 cases (collectively, the "Bankruptcy Cases"), by and through their undersigned proposed attorney, hereby submit this Debtors' Motion to Schedule Expedited Hearings on Critical First Day Motions (the "Motion") pursuant to sections 102 and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code") and Rules 2002, 9006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Rules of Bankruptcy Procedure"), for immediate entry of an order, substantially in the form attached hereto, approving and, if appropriate, shortening notice of the hearings (the "Hearings") on the Debtors' Critical First Day Motions (as defined below) in the Bankruptcy Cases, and setting a date and time for a Hearing on the Critical First Day Motions in the United States Bankruptcy Court for the Northern District

1

of West Virginia (the "Court").  In support of the Motion, the Debtors respectfully state as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 102 and 105(a) of the Bankruptcy Code.

### Background

4. On September 3, 2013 (the "Petition Date"), the Debtors filed their voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of West Virginia.

5. The Debtor[1] continues in possession of its property and assets and operates its business as debtor-in-possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6. Fairmont General Hospital, Inc. ("FGH") is a not-for-profit 501(c)(3) corporation organized under the laws of the State of West Virginia. FGH operates a 207-licensed-bed acute care hospital (the "Hospital") located at 1325 Locust Avenue in Fairmont, West Virginia. The Hospital is accredited by both The Joint Commission and the American College of Surgeons Commission on Cancer. The Hospital provides a comprehensive range of acute, sub-acute ambulatory, emergency, and ancillary services, including cardiac catheterization, ambulatory

---

[1] Fairmont General Hospital, Inc. and Fairmont Physicians, Inc. may be referred to hereafter as either the "Debtor" or the "Debtors." Use of the singular should be read to include the plural and *vice versa*, unless the context requires otherwise.

surgical services, diagnostic imaging (including MRI, PET, and CT scanning), obstetrics, behavioral medicine, home health, and orthopedics. FGH's South Marion facility (the "HealthPlex") houses physical, occupational, and speech therapy services, cardiac rehabilitation, limited radiology services, physician offices, and a retail wellness and fitness center.[2] FGH owns the majority of the HealthPlex facility, which is located at 51 Southland Drive in Fairmont, West Virginia.

7. FGH has one (1) wholly-owned operating subsidiary affiliate: Fairmont Physicians, Inc. ("FPI"), d.b.a. Fairmont Physicians Network ("FPN"). FPI has also filed a chapter 11 petition contemporaneously with the filing by FGH. FPI employs the physicians in eleven (11) practices owned or controlled by the Hospital and provides clinical and office space for the practices.

8. The origins of the Hospital date back to the early 20th century with the establishment of Cook Hospital. In the 1930s, the Cook Hospital property was transferred to the City of Fairmont, which, thereafter, owned and operated the Hospital and controlled the Hospital's board of directors. The oldest part of the Hospital building still in use was opened in 1939. Subsequent additions and renovations to the Hospital building were made in 1952, 1972, 1987, 1993, and 2010. In 1985, the Hospital was reorganized as an independent non-profit corporation and has operated as such since then. However, the Hospital buildings and campus (but excluding the HealthPlex) are still owned by the City of Fairmont, and FGH leases the Hospital property for $100 per year under a long term lease that is very favorable to FGH.

---

[2] Portions of the HealthPlex building have been conveyed to third-party owners as office condominiums and are no longer owned by FGH. FGH still owns one (1) condominium unit in the building, which comprises approximately 80% of the space.

3

9.     FGH currently employs approximately 740 full and part-time employees, including approximately 30 physicians, who are employed by FPI. There are 68 physicians with admitting privileges at the Hospital, including the physicians employed directly by the Hospital (through FPI). FGH is the fourth largest employer in Marion County, West Virginia.[3] During 2012, there were approximately 2,900 acute care and 1,600 behavioral health discharges from the Hospital, and there were approximately 173,000 outpatient visits, including emergency department visits. The Debtor's annual net patient revenues for 2013 are expected to total approximately $83,000,000.

10.    Beginning in 2008, the Debtor began to experience recurring operating losses and cash flow concerns, attributable to various events and conditions affecting the Debtor's operations, including reimbursement issues, expense issues, labor contracts, and competing hospitals and other health care service providers.  These events and conditions affecting the Debtors' cash flow, among others, resulted in the decline in the Debtors' financial condition and led to the filing of the Bankruptcy Cases.

11.    Additional information regarding the Debtors and the background to the Debtors' bankruptcy filings is set forth in the *Affidavit of Robert C. Marquardt in Support of First Day Motions for Relief* (the "Marquardt Affidavit") filed contemporaneously herewith and incorporated herein by reference.

## Relief Requested

12.    By this Motion, the Debtors seek entry of an order scheduling an expedited hearing on the following matters (collectively, the "Critical First Day Motions"):

---

[3] The largest employers are the Marion County Board of Education, CONSOL Energy, and Fairmont State University.

4

a. Debtors' Application to Employ and Retain Spilman Thomas & Battle, PLLC as Attorneys for Debtors;

b. Application of Rayford K. Adams III and Casey H. Howard to Appear *Pro Hac Vice* Pursuant to Local Bankruptcy Rule 2090-1 and LR Gen P 83.02;

c. Debtors' Application to Employ Gleason & Associates, P.C. as Financial Analyst to the Debtors;

d. Debtors' Application to Employ and Retain Hammond Hanlon Camp, LLC as Financial Advisors for Debtors;

e. Debtor's Motion for an Order Establishing Certain Notice, Case Management, and Administrative Procedures;

f. Debtors' Application for Entry of an Order Authorizing Debtor to Employ and Retain Epiq Bankruptcy Solutions, LLC as Notice, Claims, and Solicitation Agent;

g. Debtors' Emergency Motion for an Order Authorizing Disclosure of Patient-Creditor Personal Health Information, and Motion to Modify Noticing Requirements and for Extension of Time to File (i) Supplemental Mailing Matrix and (ii) Limited Schedule "F" Listing Patient Creditors;

h. Motion of the Debtors for an Order Directing Joint Administration of Their Related Chapter 11 Cases;

i. Motion of the Debtors for Entry of an Order Extending the Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs;

5

j.  Debtors' Motion for an Order Authorizing the Debtor to (A) Continue Cash Management System, (B) Maintain Existing Bank Accounts and Business Forms and (C) Maintain Existing Investment Practices;

k.  Debtors' Motion for an Order Under § 366 of the Bankruptcy Code (A) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Service, (B) Approving Proposed Adequate Assurance of Payment, and (C) Establishing Procedures for Determining Adequate Assurance of Payment (the "Utilities Motion");

l.  Debtors' Motion for an Order (A) Authorizing the Debtors to Pay Certain Pre-Petition (I) Wages, Salaries, Bonuses, and Other Compensation, (II) Reimbursable Employee Expenses, and (III) Employee Medical and Similar Benefits; (B) Confirming that the Debtors May Continue Pre-Petition Employee Programs in the Ordinary Course of Business; and (C) Directing Banks and Other Financial Institutions to Honor All Related Checks and Electronic Payment Requests;

m.  Debtors' Motion for Entry of Interim Order (A) Authorizing Debtors to Use Cash Collateral Pursuant to 11 U.S.C. § 363, (B) Granting Adequate Protection Pursuant to 11 U.S.C §§ 361 and 363 and (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b);

n.  Debtors' Motion for an Order Establishing Procedures for the Assertion of Section 503(B)(9) Claims;

o.  Debtors' Motion for Order to Dispense with Appointment of Patient Care Ombudsman; and

Given the nature of the Debtors' business, the Debtors respectfully request that the Court schedule a hearing on the Critical First Day Motions on or before September 5, 2013.

**Relief Requested**

13. Each of the Critical First Day Motions relates to a time-critical aspect of the Debtors' business and the Debtors believe that it is in the best interest of their estates, their creditors, and other parties in interest for it to obtain the relief requested in the Critical First Day Motions as quickly as possible. Delay in obtaining the relief requested in the Critical First Day Motions will likely impair any chance the Debtors have of a successful reorganization and will likely result in substantial and irreparable harm to the Debtors, their estate, and their creditors.

14. The Debtors own and operate a hospital facility in Fairmont, West Virginia. As set forth more fully in the Critical First Day Motions, the Debtors operate an acute care hospital and provide related medical services. The Debtors have approximately 900 employees who are paid on a bi-weekly basis, such that the Debtors make payroll bi-weekly and rely on a steady supply of medical supplies and other services.

15. Courts routinely set hearings on first day motions on an expedited basis pursuant to sections 102(1) and 105(a) of the Bankruptcy Code, and the doctrine of necessity, because the relief requested in such motions is necessary to preserve the existence of the debtor and the value of the debtor's assets. See, e.g., In re B & W Enters., Inc., 713 F.2d 534, 537 (9th Cir. 1983). The Critical First Day Motions are the type of applications and motions that courts normally hear and consider on an expedited basis. See, e.g., In re Geological Technologies, Inc., (Case No. 3:10-bk-01448 (Bankr. N.D.W.V. July 12, 2010); In re Baugher Chevrolet-Buick, Inc., (Case

7

No. 08-50862 W.D. Va. 2008); In re RBX Industries, Inc., (Case No. 04-00725 W.D. Va. 2004); In re Tultex Corp., (Case No. 99-03626 W.D. Va. 1999).

16. The Debtors will suffer immediate and irreparable harm unless the Court holds a hearing, makes a finding that the Debtors will suffer immediate and irreparable harm unless interim orders approving the Critical First Day Motions are entered, and enters interim orders approving the Critical First Day Motions. For example, if the Debtors cannot obtain the relief requested in the Critical First Day Motions in a timely fashion, it will be unable to pay its employees or obtain necessary supplies and services, and likely will be unable to continue operations, irreparably harming its patients, creditors, and other parties in interest. In addition, the Debtors will be required to produce certain documents to the United States Trustee and attend an initial debtor interview shortly after the Petition Date. The Debtors need counsel to assist it in responding to the United States Trustee's requests and to advise it during the interview conducted by the United States Trustee. Additionally, this Court will likely enter a debtor-in-possession order that will require the Debtors to perform certain actions within a short period of time after the Petition Date and the Debtors require experienced counsel to assist it in complying with any Orders entered by the Court. Further, proposed counsel cannot act on the Debtors' behalf to handle such matters as negotiating deposits with utility companies, negotiating cash collateral terms with secured creditors, and filing motions unless counsel is retained. Specifically, section 366(c) of the Bankruptcy Code enables allows utility companies to terminate service unless adequate assurance of payment is negotiated and provided to the utility companies within thirty (30) days of a debtor's petition date. If the Debtors are not authorized to

retain counsel in sufficient time to negotiate with utility companies, the Debtors risk having any late filed-motion pursuant to section 366(c)(3)(A) of the Bankruptcy Code denied.

17.     The Debtors need to reorganize their business structure.  Without the relief requested in the Critical First Day Motions, the Debtors will not be able to obtain the financing and utility services necessary to continue to operate the Debtors' business and preserve the value of the Debtors' estate for creditors and other parties in interest, which is essential to an effective reorganization. It is therefore imperative that the Court hear the Critical First Day Motions as soon as possible.

18.     Further, the Debtors have filed several motions seeking entry of orders setting a bar date, approving interim compensation procedures, and limiting notice of certain matters that will aid in the administration of this case (See **Exhibit A**).  The smooth administration of this case will help reorganize the Debtors' business so that it can become profitable and pay its creditors.  Courts routinely hear such motions on an expedited, first-day basis to promote the smooth administration of the Debtors' case.

19.     The Debtors have provided notice of this Motion to the parties identified in each of the Critical First Day Motions.  In light of the nature of relief requested, the Debtors respectfully submit that no further notice is necessary.

20.     Based upon the reasons set forth herein and in the Critical First Day Motions, the Debtors respectfully request that the Critical First Day Motions be heard on an expedited basis on September 5, 2013, at 1:30 p.m., at the United States Bankruptcy Court for the Northern District of West Virginia, 1125 Chapline Street, Wheeling, West Virginia, 26003, telephone

(304) 233-1655, on the basis that the relief sought in the Critical First Day Motions is critical and necessary to avoid immediate and irreparable harm.

21. The shortening of the notice of the Critical First Day Motions should be allowed pursuant to 11 U.S.C. §§ 364, 507, and 1108 of the Bankruptcy Code and Rules 4001 and 9006 of the Rules of Bankruptcy Procedure in order that:

   a. Final orders granting the relief requested can be entered where allowed, or alternatively;

   b. Interim orders granting interim relief as necessary can be allowed pending final notice and hearing.

## Notice

22. The Debtors have provided notice of this Motion to: (a) the Internal Revenue Service; (b) Larry Bonham, Associate Counsel, West Virginia Insurance Commission, Legal Division; (c) the Securities and Exchange Commission; (d) the Attorney General of West Virginia; (e) the Secretary of the Treasury; (f) the West Virginia Department of Tax & Revenue, Bankruptcy Division; (g) the Office of the Assistant United States Trustee; (h) County Attorney for Marion County, West Virginia; (i) The West Virginia Hospital Finance Authority; (j) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed by the Debtors pursuant to Bankruptcy Rule 1007(d); (k) counsel to the bondholders of The County Commission of Marion County (West Virginia) Hospital Revenue Bonds, Series 2007; (l) counsel to the bondholders of West Virginia Hospital Refunding Revenue Bonds, Series 2008; (m) representative of the District 1199 West Virginia/Kentucky/Ohio Service Employees International Union; (n) representatives of the Retail, Wholesale, and Department Store Union Council of the United Food and Commercial Workers Union; and (o) all parties known to be

affected by this pleading.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

23. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the foregoing reasons as well as the reasons set forth in the Critical First Day Motions, the Debtors respectfully request that this Court (i) enter an order, substantially in the form attached hereto; and (ii) grant such other relief as the Court may deem necessary and proper.

Dated September 3, 2013
 
*/s/ Rayford K. Adams III*
Rayford K. Adams III (NC Bar No. 8622)
Casey H. Howard (NC Bar No. 42930)
SPILMAN THOMAS & BATTLE, PLLC
110 Oakwood Drive, Suite 500
Winston-Salem, North Carolina 27103
Telephone: (336) 725-4710
Facsimile: (336)725-4476
Email:  tadams@spilmanlaw.com
Email:  choward@spilmanlaw.com

*/s/ Michael Garrison*
Michael S. Garrison (WV Bar No. 7161)
SPILMAN THOMAS & BATTLE, PLLC
P.O. Box 615
Morgantown, West Virginia 26507-0615
Telephone:  (304) 291-7920
Facsimile:  (304) 291-7979
Email:  mgarrison@spilmanlaw.com

*/s/ David R. Croft*
David R. Croft (WV Bar No. 8061)
SPILMAN THOMAS & BATTLE, PLLC
PO Box 831
Wheeling, WV 26003
Telephone: (304) 230-6950
Fax:  (304) 230-6951
Email: dcroft@spilmanlaw.com

*Counsel for Debtors*

**CERTIFICATE OF SERVICE**

I certify that on September 3, 2013, I electronically filed the foregoing *Debtors' Emergency Motion to Schedule Expedited Hearings on Critical Frist Day Motions* with the United States Bankruptcy Court for the Northern District of West Virginia. Epiq Bankruptcy Solutions, LLC will serve this filing on all interested parties as set forth in the *Motion* and will file a certificate of service of same with the Court in a timely manner.

Dated September 3, 2013　　　　　　　　　*/s/ Rayford K. Adams III*
　　　　　　　　　　　　　　　　　　　　Rayford K. Adams III (NC Bar No. 8622)
　　　　　　　　　　　　　　　　　　　　Casey H. Howard (NC Bar No. 42930)
　　　　　　　　　　　　　　　　　　　　SPILMAN THOMAS & BATTLE, PLLC
　　　　　　　　　　　　　　　　　　　　110 Oakwood Drive, Suite 500
　　　　　　　　　　　　　　　　　　　　Winston-Salem, North Carolina 27103
　　　　　　　　　　　　　　　　　　　　Telephone: (336) 725-4710
　　　　　　　　　　　　　　　　　　　　Facsimile: (336)725-4476
　　　　　　　　　　　　　　　　　　　　Email: tadams@spilmanlaw.com
　　　　　　　　　　　　　　　　　　　　Email: choward@spilmanlaw.com

　　　　　　　　　　　　　　　　　　　　*/s/ Michael Garrison*
　　　　　　　　　　　　　　　　　　　　Michael S. Garrison (WV Bar No. 7161)
　　　　　　　　　　　　　　　　　　　　SPILMAN THOMAS & BATTLE, PLLC
　　　　　　　　　　　　　　　　　　　　48 Donley Street, Suite 800 (Zip: 26501)
　　　　　　　　　　　　　　　　　　　　P.O. Box 615
　　　　　　　　　　　　　　　　　　　　Morgantown, West Virginia 26507-0615
　　　　　　　　　　　　　　　　　　　　Telephone: (304) 291-7920
　　　　　　　　　　　　　　　　　　　　Facsimile: (304) 291-7979
　　　　　　　　　　　　　　　　　　　　Email: mgarrison@spilmanlaw.com

　　　　　　　　　　　　　　　　　　　　*/s/ David R. Croft*
　　　　　　　　　　　　　　　　　　　　David R. Croft (WV Bar No. 8061)
　　　　　　　　　　　　　　　　　　　　SPILMAN THOMAS & BATTLE, PLLC
　　　　　　　　　　　　　　　　　　　　1233 Main Street, Suite 4000
　　　　　　　　　　　　　　　　　　　　PO Box 831
　　　　　　　　　　　　　　　　　　　　Wheeling, WV 26003

Telephone: (304) 230-6950
Fax: (304) 230-6951
Email: dcroft@spilmanlaw.com

*Counsel for Debtors*