Patrick M. Flatley
United States Bankruptcy Judge

Dated: Friday, September 06, 2013 3:32:26 PM

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | |
|---|---|
| In Re:<br><br>FAIRMONT GENERAL HOSPITAL, INC.,<br><br>Debtor. | Case No. 1:13-bk-01054<br><br>Chapter 11<br><br>Joint Administration Requested |
| In Re:<br><br>FAIRMONT PHYSICIANS, INC.,<br><br>Debtor. | Case No. 1:13-bk-01055<br><br>Chapter 11<br><br>Joint Administration Requested |

**INTERIM ORDER (A) AUTHORIZING INTERIM USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO TRUSTEE AND (C) SCHEDULING A FINAL HEARING**

Upon the motion (the "*Motion*")[1] of the debtors and debtors-in-possession in the above-captioned case (the "*Debtors*"), for an interim order (this "*Order*") (a) authorizing the Debtors to use the cash collateral of the Trustee, (b) granting the Trustee adequate protection upon the terms set forth in interim and final orders, and (c) scheduling a final hearing on the Motion and approving the form and manner of notice thereof; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it

---

[1] All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their respective estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND THAT:[1]

A. On the Petition Date, the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code.

B. Since the Petition Date, the Debtors have continued in the management and operation of its businesses and properties as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or committee has been appointed in the Debtors' Chapter 11 case.

C. The Debtors stipulate and agree that Fairmont General Hospital, Inc. ("*FGH*") is obligated under the following undertakings (collectively, the "*Bond Financing Documents*"):

(1) a certain Trust Indenture dated as July 1, 2007 (the "*2007 Trust Indenture*") by and between the County Commission of Marion County, West Virginia (the "*County Commission*") and WesBanco Bank, Inc. ("*WesBanco*"), as predecessor indenture trustee;

(2) those certain Hospital Revenue Bonds, Series 2007 (Fairmont General Hospital Project), issued in the original aggregate amount of $13,700,000 (the "*Series 2007 Bonds*");

(3) a certain Loan Agreement dated as of July 1, 2007 (the "*2007 Loan Agreement*") by and between the County Commission and FGH, pursuant to which FGH covenanted to make payments at such times and in such amounts so as to provide for the

---

[1] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

payment of the principal of, premium, if any, and interest on the Series 2007 Bonds and any fees, costs and expenses related thereto (collectively, the "*2007 Prepetition Obligations*");

(4) a certain Deed of Trust dated July 11, 2007 (the "*Deed of Trust*") by and among the Trustee, the County Commission and FGH;

(5) a certain Trust Indenture dated as February 1, 2008 (the "*2008 Trust Indenture*" and, collectively with the 2007 Indenture, the "*Trust Indentures*") by and between the West Virginia Hospital Finance Authority (the "*Hospital Finance Authority*" and, collectively with the County Commission, the "*Issuers*") and WesBanco, as predecessor indenture trustee;

(6) those certain (i) Hospital Refunding Revenue Bonds, Series 2008 A (Fairmont General Hospital, Inc. Project) (Tax Exempt), issued in the original aggregate principal amount of $4,300,000 and (ii) Hospital Refunding Revenue Bonds, Series 2008 B (Fairmont General Hospital, Inc. Project) (Taxable), issued in the original aggregate principal amount of $85,000 (collectively, the "*Series 2008 Bonds*" and, together with the Series 2007 Bonds, the "*Bonds*"); and

(7) a certain Loan Agreement dated as of February 1, 2008 by and between the Hospital Finance Authority and FGH related to the Series 2008 Bonds and 2008 Trust Indenture (the "*2008 Loan Agreement*" and, collectively with the 2008 Loan Agreement, the "*Loan Agreements*"), pursuant to which FGH covenanted to make payments at such times and in such amounts so as to provide for the payment of the principal of, premium, if any, and interest on the Series 2008 Bonds and any fees, costs and expenses related thereto (collectively, the "*2008 Prepetition Obligations*" and, together with the 2007 Prepetition Obligations, the "*Prepetition Obligations*").

The foregoing acknowledgments and stipulations shall be binding on the Debtors but not on any other party-in-interest in this Case, except as provided in Decretal Paragraph 8 hereof.

D. The Debtors further stipulates and agrees as follows:

(1) Pursuant to the Bond Financing Documents, FGH granted the Trustee liens on and security interests in the "Facilities" (as defined in the Loan Agreements and the Deed of Trust), "Gross Revenues" (as defined in the Loan Agreements) and all other real and personal property pledged as collateral for the Bonds (collectively, the "*Prepetition Collateral*");

(2) As of the Petition Date, the Bond Financing Documents are each valid and enforceable against FGH, and FGH does not possess and agrees not to assert any claim (as such term is defined in Section 101(5) of the Bankruptcy Code), counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability or non-avoidability of the Bond Financing Documents, except that FGH reserves its right (1) to investigate and/or challenge pursuant to Bankruptcy Code Section 547 and/or 548 the priority and avoidability of the Trustee's security interest in the personal property pledged in support of the 2007 Prepetition Obligations and (2) object solely to the calculated amount of any claim the Trustee asserts in this Case (*i.e.*, the amount of the outstanding principal, accrued interest, and

premium, if any) pursuant to one or more proofs of claim filed by the Trustee, an adversary proceeding or contested matter commenced by any party, or otherwise (the "*Reserved Right*s");

(3) As of the Petition Date, the Prepetition Obligations constitute legal, valid and binding obligations of FGH, enforceable in accordance with the terms of the Bond Financing Documents (other than with respect to a stay of enforcement arising from Section 362 of the Bankruptcy Code); no offsets, defenses or counterclaims to any of the Prepetition Obligations exists; except with respect to the Reserved Rights, no portion of the Prepetition Obligations is subject to avoidance, recharacterization, disallowance, reduction or subordination pursuant to the Bankruptcy Code or non-bankruptcy law;

(4) Pursuant to the 2007 Trust Indenture and the 2008 Trust Indenture, respectively, certain accounts were established and are held by the Trustee, respectively (collectively, the "*Trustee-Held Funds*"), including, without limitation, (a) a certain "Bond Fund", (b) a certain "Debt Service Reserve Fund", and (c) a certain "Rebate Account." The trustee believes that the Trustee-Held Funds are not property of the Debtors' estates. The Debtor acknowledges that the Trustee holds a validly perfected possessory security interest in the Trustee-Held Funds, and is entitled to access the Trustee-Held Funds in accordance with the terms of the 2007 Trust Indenture and the 2008 Trust Indenture. To the extent that the automatic stay otherwise applies to such Trustee-Held Funds pursuant to Bankruptcy Code Section 362(a), as adequate protection for the use of the Trustee's Cash Collateral, the Debtor stipulates to relief from such stay for the limited purpose of allowing the Trustee to administer and apply the Trustee-Held Funds in accordance with the 2007 Trust Indenture and the 2008 Trust Indenture. The Trustee-Held Funds do not constitute collateral to secure the repayment of the Debtors' obligations with respect to the DIP Financing (defined herein), will not be encumbered by the liens granted in connection with the DIP Financing, and shall be administered and applied as set forth the Bond Financing Documents and for the express purposes set forth therein, and shall not be used or made available to the Debtors as Cash Collateral or otherwise pursuant to this Interim Order, the Final Order or any other order entered in this case; and

(5) Subject to the Reserved Rights, the Trustee's security interests and liens have attached to all property of FGH consisting of the Prepetition Collateral, to the extent permitted by applicable non-bankruptcy law, including the Gross Revenues and accounts receivable of FGH and the product, issues, rents, profits and other proceeds of the Prepetition Collateral (as defined in Section 363(a) of the Bankruptcy Code, the "*Cash Collateral*"), and the Trustee's security interests and liens will, notwithstanding the commencement of the Chapter 11 Case, as of the Petition Date and thereafter, attach to product, issues, rents, profits and other proceeds of the Prepetition Collateral. For the avoidance of doubt, the term "Cash Collateral" does not include Trustee-Held Funds.

The foregoing acknowledgments and stipulations shall be binding on the Debtors but not on any other party-in-interest in this Case, except as provided in Decretal Paragraph 8 hereof.

E. By letter dated January 16, 2013, at the request of certain majority holders of the Bonds, WesBanco resigned as indenture trustee under each of the 2007 Trust Indenture and 2008 Trust Indenture. Pursuant to the terms of the Trust Indentures, the majority holders of the Bonds

have directed the appointment of UMB Bank, N.A. ("*UMB*") as successor Trustee. The Debtor has consented to and approved the appointment of UMB as successor Trustee, and has agreed to cooperate with and assist the majority holders, UMB, WesBanco and the Issuers to memorialize and further effectuate the expeditious appointment of UMB as successor Trustee. Pursuant to the terms of the Trust Indentures, WesBanco's resignation shall become effective upon the consummation of the appointment of UMB as successor trustee.

F. The Debtor has requested that the Trustee consent to the Debtors' use of Cash Collateral, and the Trustee is willing to consent to the Debtors' use of Cash Collateral on the terms and conditions provided herein. The Trustee is relying on the terms, conditions and protections provided herein in so consenting.

G. The agreements and arrangements described in the Motion and authorized in this Order have been negotiated at arm's-length with all parties represented by counsel, are fair and reasonable under the circumstances, and are enforceable in accordance with their terms. The Debtor and the Trustee are acting in good faith with respect to the use of Cash Collateral as provided in this Order. Subject to the Reserved Rights, the superpriority claims, security interests and liens and other forms of adequate protection granted to the Trustee pursuant to this Order (1) are fair and reasonable and satisfy the requirements of Sections 363(d)(1) of the Bankruptcy Code and (2) will not be affected by any subsequent reversal, modification, vacatur or amendment of this Order or any other order, as provided in Section 364(e) of the Bankruptcy Code.

H. Subject to the terms and conditions in this Order, the Debtors may use Cash Collateral in accordance with the budget attached hereto as <u>Exhibit A</u> (the "*Budget*"). The

expenditures set forth in the Budget satisfy the requirements of Sections 363(d)(1) of the Bankruptcy Code.

I. In light of the Trustee's agreement to subordinate its liens and superpriority claims to the Carve-Out (defined herein), the Trustee is entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

J. The liens and security interests granted to the Trustee hereunder shall not prime or impair any validly perfected lien or security interest senior to the liens and security interests of the Trustee with respect to the Debtors' assets and properties as of the Petition Date (the "*Prior Senior Liens*"). The granting of the replacement liens, super-priority administrative claims and other agreements of the Debtors hereunder constitute adequate protection to the Trustee for the Debtors' use of Cash Collateral for purposes of this Order.

K. Good cause has been shown for entry of this Order. Without use of Cash Collateral, the Debtors will not be able to fund their day-to-day operations, including payroll for its employees. Unless the Court authorizes the use of Cash Collateral, the Debtors will be unable to pay for the goods and services necessary to preserve and maximize the value of the Debtors' assets while it attempts to obtain confirmation of its Chapter 11 plan. Accordingly, this Order is required to avoid immediate and irreparable harm to the Debtors' respective estates. Entry of this Order is in the best interests of the Debtors, their creditors, and their estates.

THE COURT HEREBY ORDERS, AS FOLLOWS:

1. The Motion is granted on an interim basis in accordance with the terms and conditions of this Order.

2. <u>Use of Cash Collateral</u>. Subject to the terms and conditions set forth in this Order, the Debtors are, through and including the earlier of (a) the conclusion of the final hearing on the

Debtors' use of Cash Collateral or (b) termination of this Order following issuance of a Termination Notice as set forth in Paragraph 10 below, authorized pursuant to Bankruptcy Code Sections 105, 361, 362 and 363, and Bankruptcy Rules 2002, 4001, 6003 and 9014 to use Cash Collateral on an interim basis pending a final determination by the Court.  The Cash Collateral may only be used to fund the types and corresponding amounts of itemized expenditures contained in the Budget; <u>provided</u>, <u>however</u>, that the Debtors may use Cash Collateral in excess of the amount designated for a particular line-item so long as the percentage of deviation each line item during any rolling 4-week period does not exceed ten percent (10%), per line-item and, in addition, does not exceed ten percent (10%) in aggregate (the "*Variance*"); and <u>provided further</u> that any amendment or modification of the terms and conditions, or any amendment, modification, roll-forward or replacement of the Budget itself, shall be subject to the prior written consent of the Trustee.  Any unused portion of the Variance will carry over to the following rolling 4-week period.

3.     <u>Reporting</u>.  The Debtor will submit to the Trustee on each consecutive Wednesday during the Chapter 11 case an updated rolling 13-week cash flow report in a form acceptable to the Trustee comparing actual results to the Budget and reporting on the Variance of actual cash inflows and outflows from those set forth in the Budget.  The Debtor will make its books and records, and its financial staff and advisors, reasonably available to the Trustee and its advisors at any time between the hours of 9:00 a.m. and 5:00 p.m. on any weekday, with not less than forty-eight (48) hours advance notice, to enable the Trustee to monitor the Debtors' compliance with the Budget and this Order and the Debtors' operations (whether historic, current or prospective).

4.       <u>Adequate Protection; Replacement Liens</u>.  Pending a final hearing by the Court and subject to FGH's Reserved Rights, the Trustee is entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral, including, but not limited to, the Cash Collateral, for any diminution in value of its interests in the Prepetition Collateral, including, without limitation, any such diminution resulting from the Debtors' use of Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code.  As security for and solely to the extent of any diminution in the value of the Trustee's Prepetition Collateral from and after the Petition Date, calculated in accordance with Bankruptcy Code Section 506(a) (a "*Diminution in Value*"), the Trustee is hereby granted senior priority replacement liens upon all assets and property of the Debtors and their respective estates of any kind or nature whatsoever, now existing or hereafter acquired, including, without limitation, the Prepetition Collateral, to the extent of and with the same validity and priority of the Trustee's liens on and security interests in the Prepetition Collateral (the "*Replacement Liens*"), but excluding all claims and causes of action, and the products and proceeds thereof, arising under or permitted by Sections 502(d), 506(c), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code and any other avoidance claims and causes of action arising under state or federal law; <u>provided</u>, <u>however</u>, that the Replacement Liens shall be subject and subordinate to (a) the Carve-Out (defined below), (b) the Prior Senior Liens, and (c) the liens (the "*DIP Financing Liens*") granted in connection with a debtor-in-possession financing facility entered into by the Debtors on terms that are typical for such financings and are otherwise acceptable to the Trustee (a "*DIP Financing*").  The Replacement Liens so granted are in addition to all security interests, liens, and rights of setoff existing in favor of the Trustee on the Petition Date, and are and shall be valid, perfected,

enforceable and effective as of the Petition Date without any further action of the Debtors or the Trustee and without the necessity of the execution, filing or recording of any financing statements, security agreements, mortgages, or other documents, or of obtaining control agreements over bank accounts. Notwithstanding the foregoing, the Trustee is hereby authorized, but not required, to file or record any financing statements, security agreements, mortgages, or other documents in any jurisdiction or take any other action in order to validate and perfect the Replacement Liens granted hereunder.

5. <u>Adequate Protection; 507(b) Priority Claim</u>. Pending a final hearing by the Court and subject to FGH's Reserved Rights, the Trustee is hereby granted an administrative claim with a priority equivalent to a claim under Sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code, on a dollar-for-dollar basis for and solely to the extent of any Diminution in Value, which administrative claim shall, among other things, have priority over all other costs and expenses of the kind specified in, or ordered pursuant to, Sections 105, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 1113 and 1114 of the Bankruptcy Code (the "*Super-Priority Administrative Claim*"), except for expenditures constituting the Carve-Out and any administrative claim granted in connection with the DIP Financing.

6. <u>Adequate Protection; Fees and Expenses</u>. The Debtor is hereby authorized and directed to pay the reasonable fees and expenses of Trustee's outside legal and financial advisors in accordance with the Budget, with any balance due to the Trustee's professionals and the Trustee's internal fees and expenses to be paid through deductions made by the Trustee from the Trustee-Held Funds in accordance with the Bond Financing Documents. Notwithstanding the foregoing, the Trustee reserves its right to assert claims for the payment of additional amounts

provided for in the Bond Financing Documents, and to seek additional or further adequate protection from the Court.

7. <u>Carve-Out</u>. The Replacement Liens and Super-Priority Administrative Claim granted hereunder shall be junior and subordinate to the following fees and expenses (the "*Carve-Out*"): (a) all accrued but unpaid fees and expenses (the "*Professional Fees and Expenses*") of the attorneys, accountants, financial advisors, bankers and other professionals retained by the Debtors and any statutory committee of unsecured creditors appointed in the Chapter 11 case under section 327 or 1103(a) of the Bankruptcy Code (the "*Committee*") (collectively, the "*Professionals*"), allocable to the Debtors under and to the extent set forth in the Budget and incurred prior to the delivery of a Termination Notice; (b) Professional Fees and Expenses in the amount of $50,000 incurred after delivery of a Termination Notice; and (c) the payment of fees pursuant to 28 U.S.C. § 1930 to the extent related to the Chapter 11 cases of the Debtors, provided that all such fees and expenses shall be subject to approval by a final order of the Court pursuant to Sections 326, 328, 330, 331 or 363 of the Bankruptcy Code. Notwithstanding anything to the contrary set forth herein, except with respect to FGH's Reserved Rights, no Cash Collateral nor any portion of the Carve-Out may be used to prosecute actions, claims, demands or causes of action against the Trustee, or to object to or contest in any manner, or to raise any defense in any pleading to the validity, perfection, priority or enforceability of the Trustee's liens and security interests against the Prepetition Collateral or the Replacement Lien.

8. <u>Parties in Interest Bound</u>.

(a) Subject to FGH's Reserved Rights, the admissions and stipulations contained in Paragraphs C and D of this Order shall be binding on the Debtors under all circumstances and shall be binding upon all other parties in interest, including, without limitation, any Committee and any Chapter 7 or Chapter 11 trustee that may be appointed or elected on behalf of the estates of the Debtors, except to the extent that (i) a party in interest has filed an adversary proceeding or contested matter challenging the validity, enforceability or

- 9 -

priority of the Prepetition Debt or the liens on the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Trustee on behalf of the Debtors' estates, no later than the date that is forty-five (45) days after the date of the conclusion of the creditors' meeting pursuant to § 341 of the Bankruptcy Code and (ii) the Court rules in favor of the plaintiff in any such timely filed adversary proceeding or contested matter.  If any such adversary proceeding or contested matter is timely commenced as of such date, the admissions contained in this Order shall nonetheless remain binding and preclusive (as provided in this paragraph) except to the extent that such acknowledgments and agreements are expressly challenged in such adversary proceeding or contested matter.  For the avoidance of doubt, the foregoing sixty-day period shall not apply to FGH with respect to its Reserved Rights.

(b) Subject to FGH's Reserved Rights, if no such adversary proceeding or contested matter is commenced as of such date, then (i) the Prepetition Obligations shall constitute allowed secured claims, not subject to subordination (other than as set forth herein with respect to the Carve-Out, the Prior Senior Liens and the DIP Financing Liens) or avoidance, for all purposes in this Chapter 11 case and any subsequent Chapter 7 case, (ii) the liens securing the Prepetition Obligations on the Prepetition Collateral shall be deemed legal, valid, binding, duly authorized, perfected, not subject to defense, counterclaim, recharacterization, offset of any kind, subordination, other than as set forth herein, and otherwise unavoidable, (iii) the Prepetition Obligations and the liens on the Prepetition Collateral shall not be subject to any other or further challenge by any party-in-interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto, and (iv) the Trustee shall be deemed released from any and all rights, claims, causes of action and liabilities arising from or in connection with the Prepetition Obligations, the Prepetition Collateral, the Bond Financing Documents and/or the extension of credit or other financial accommodations thereunder or with respect thereto.

9. <u>Events of Default</u>.  Each of the following shall constitute an event of default ("*Event of Default*") with respect to the Debtors' authorization to use Cash Collateral hereunder, unless otherwise waived in writing by the Trustee:

(a) entry of an order converting this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code;

(b) entry of an order dismissing this Chapter 11 case;

(c) entry of an order appointing or directing the election of a trustee under Section 1104 of the Bankruptcy Code or an examiner under Section 1106(b) for one or both of the Debtors;

(d) without the prior written consent of the Trustee, the entry of any order (or other judicial action which has the effect of) amending, reversing, supplementing, staying the effectiveness of, vacating, or otherwise modifying this Order;

    (e) the Debtors use Cash Collateral for any purpose or in a manner other than as permitted in this Order and in the Budget or otherwise fails to comply with any term of this Order;

    (f) entry of an order by the Bankruptcy Court authorizing relief from stay by any person on or with respect to all or any portion of the Prepetition Collateral with a value in excess of $100,000 (other than the Trustee or Huntington National Bank with respect to its rights under that certain Credit Line Deed of Trust dated January 5, 2007, filed in the Office of the Clerk of the County Commission of Marion County, West Virginia in Trust Deed Book No. 884, at Page 878, executed by Fairmont General Hospital, Inc. to Barry W. Dobson and Clayton Rice, Trustees, to secure The Huntington National Bank in the maximum amount of $500,000);

    (g) the filing by either of the Debtors or any other party of any pleading objecting to or seeking to challenge the Trustee's claims with respect to the Prepetition Obligations or the Trustee's lien upon Cash Collateral or the Prepetition Collateral or otherwise asserting rights, claims or causes of action against the Trustee with respect to the Prepetition Obligations;

    (h) the breach by either of the Debtors of their obligations under this Order;

    (i) the filing by either of the Debtors of any debtor-in-possession financing pleadings or any final documents pertaining to a debtor-in-possession financing not acceptable to and not supported by the Trustee;

    (j) the filing by either of the Debtors of any bid procedure and/or sale documents relating to the sale of the Prepetition Collateral, post-petition collateral subject to the Replacement Lien, and/or Cash Collateral not acceptable to and not supported by the Trustee; or

    (k) either of the Debtors voluntarily or involuntarily dissolves or is dissolved, liquidates or is liquidated or ceases the operation of any material portion of its business.

  10. <u>Termination Notice</u>.  Immediately upon the occurrence or existence of an Event of Default, the Trustee shall be authorized to issue a notice (a "*Termination Notice*") thereof to the Debtors, their counsel, counsel to any Committee and the U.S. Trustee, which Termination Notice may be delivered by electronic mail or facsimile.  Unless, within five (5) business days after the issuance of such notice, the Court determines that the applicable Event of Default has not occurred or does not exist or the Event of Default has been cured by the Debtors, the Debtors' authority to use Cash Collateral shall terminate.

11. <u>Trustee-Held Funds</u>.  The Trustee-Held Funds are not, and shall not be deemed to be, collateral to secure the repayment of the Debtors' obligations with respect to the DIP Financing, nor shall the Trustee-Held Funds be subject to the DIP Financing Liens.  The Trustee-Held Funds are held in trust for the benefit of the holders of the Bonds, as set forth the Bond Financing Documents.  The Trustee may, without further Court authority (including, without limitation, the need to file a motion to lift the automatic stay), access the Trustee-Held Funds in accordance with the terms of the Bond Financing Documents.

12. <u>No Duty to Monitor Compliance</u>.  The Trustee may assume that the Debtors will comply with all terms and conditions of this Order and the Budget and shall not (a) be obligated to ensure or monitor the Debtors' compliance with any financial covenants, formulae or other terms and conditions of this Order or the Bond Financing Documents, (b) be obligated to pay (directly or indirectly from Cash Collateral or otherwise) any expenses incurred or authorized to be incurred pursuant to this Order or in connection with the operation of the Debtors' businesses, or (c) be obligated to ensure or monitor that Cash Collateral exists to pay such expenses.

13. <u>No Waiver</u>.  The failure of the Trustee to seek relief or otherwise exercise its rights and remedies under this Order or the Bond Financing Documents, as applicable, shall not constitute a waiver of any of the rights of the Trustee's rights hereunder, thereunder or otherwise.

14. <u>No Third Party Rights.</u> Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holders or any direct, indirect or incidental beneficiary.

15. <u>Section 552(b)</u>.  In light of its agreement to subordinate its liens and superpriority claims to the Carve-Out, the Trustee shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Trustee with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

16. <u>Effect of Order</u>.  This Order shall be effective upon its entry and not subject to any stay (notwithstanding anything to the contrary contained in the Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3)).  The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered (a) confirming any plan of reorganization; (b) dismissing this Chapter 11 case; (c) converting this Chapter 11 case to any other Chapter under the Bankruptcy Code; (d) withdrawing of the references of this Chapter 11 case from the Court; and (e) providing for abstention from handling or retaining of jurisdiction of this Chapter 11 case in the Court.

17. <u>Amendments and Waivers</u>.  The Debtor and the Trustee may amend, modify, supplement or waive any provision of this Order in writing if such amendment, modification, supplement or waiver is not material, without any need to apply to, or receive further approval from, the Court.  The Debtor shall provide notice of any such nonmaterial amendment, modification, supplement or waiver to counsel for any official committee of creditors appointed in this case and the Office of the United States Trustee.  Any material amendment, modification, supplement or waiver shall be in writing, signed by the Debtors and the Trustee, and approved by the Court on appropriate notice by the Debtors.

18. <u>Trustee Not in Control of Debtors' Operations</u>.  With respect to the Debtors' use of Cash Collateral pursuant to this Order and any subsequent interim or final order, or any

actions reasonably related to this Order, the Motion or the Bond Financing Documents, neither the Trustee nor its agents, employees, attorneys or representatives shall have any liability to any third party (including creditors of the Debtors) and shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

19.     <u>Order Governs</u>.  In the event of any inconsistency between the provisions of this Order and the Motion, the provisions of this Order shall govern.

20.     <u>Final Hearing</u>.  A final hearing on the Motion will be scheduled for October 2, 2013, at 9:30 am EST (the "*Final Hearing*") .  The Debtor will provide notice of the Final Hearing upon (a) the Internal Revenue Service, (b) Larry Bonham, Associate Counsel, West Virginia Insurance Commission, Legal Division, (c) the Securities and Exchange Commission, (d) the Attorney General of West Virginia, (e) the Secretary of the Treasury, (f) the West Virginia Department of Tax & Revenue, Bankruptcy Division, (g) the Office of the Assistant United States Trustee, (h) County Attorney for Marion County, West Virginia, (i) The West Virginia Hospital Finance Authority, (j) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed by the Debtors pursuant to Bankruptcy Rule 1007(d), (k) counsel to the bondholders of The County Commission of Marion County (West Virginia) Hospital Revenue Bonds, Series 2007, (l) counsel to the bondholders of West Virginia Hospital Refunding Revenue Bonds, Series 2008, (m) representative of the District 1199 West Virginia/Kentucky/Ohio Service Employees International Union, (n) representatives of the Retail, Wholesale, and Department Store Union Council of the United Food and Commercial Workers Union, and (o) all parties known to be affected by this pleading.  Any party wishing to object to the relief granted herein being granted on a permanent basis shall file such objection

with the Court, together with proof of service thereof, and served upon: (a) counsel for the Debtors; (b) counsel for the Trustee; (c) counsel for any official committee of creditors appointed in this case; and (d) the Office of the United States Trustee, so as to be received no later than September 26, 2013 at 9:30 a.m EST (the "*Objection Deadline*"). If no objections are filed and served on or before the Objection Deadline, at the Final Hearing, the Court may enter a final order permitting the use of cash collateral by the Debtors.

# **EXHIBIT A**

**CASH COLLATERAL BUDGET**

**Fairmont General Hospital, Inc. Subsidiaries**
**Weekly Consolidated Cash Flow Projection**

| Week Ending | 09/08/13 | 09/15/13 | 09/22/13 | 09/29/13 | 10/06/13 | 10/13/13 | 10/20/13 | 10/27/13 | 11/03/13 | 11/10/13 | 11/17/13 | 11/24/13 | 12/01/13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| **Cash Inflows** | | | | | | | | | | | | | | |
| FGH Cash Receipts | $ 1,234,196 | $ 1,360,735 | $ 1,373,796 | $ 1,373,796 | $ 1,764,250 | $ 1,459,079 | $ 1,459,079 | $ 1,459,079 | $ 1,356,808 | $ 1,349,372 | $ 1,356,808 | $ 1,356,808 | $ 1,313,826 | $ 18,217,630 |
| Physician Revenue | 160,295 | 160,295 | 160,295 | 160,295 | 160,295 | 160,295 | 160,295 | 160,295 | 160,295 | 160,295 | 160,295 | 160,295 | 160,295 | 2,083,841 |
| Fitness Center | 55,000 | 10,000 | 10,000 | 10,000 | 10,000 | 55,000 | 10,000 | 10,000 | 10,000 | 55,000 | 10,000 | 10,000 | 10,000 | 265,000 |
| UPL Tax Receipts | - | - | - | - | - | - | - | - | - | 375,000 | - | - | - | 375,000 |
| Total Cash Receipts | $ 1,449,492 | $ 1,531,030 | $ 1,544,091 | $ 1,544,091 | $ 1,934,545 | $ 1,674,374 | $ 1,629,374 | $ 1,629,374 | $ 1,527,103 | $ 1,939,667 | $ 1,527,103 | $ 1,527,103 | $ 1,484,121 | $ 20,941,470 |
| **Cash Outflows** | | | | | | | | | | | | | | |
| *Cash Expenses Paid as Incurred:* | | | | | | | | | | | | | | |
| Payroll | $ 1,456,869 | $ - | $ 1,456,869 | $ - | $ 1,456,869 | $ - | $ 1,456,869 | $ - | $ 1,456,869 | $ - | $ 1,456,869 | $ - | $ 1,456,869 | $ 10,198,083 |
| Benefits & Pension | 300,000 | - | 682,000 | - | 300,000 | - | 682,000 | - | 300,000 | - | 682,000 | - | 300,000 | 3,246,000 |
| Contract Labor & Physician Expenses | 131,123 | 131,123 | 131,123 | 131,123 | 131,123 | 131,123 | 131,123 | 131,123 | 131,123 | 131,123 | 131,123 | 131,123 | 131,123 | 1,704,594 |
| Capital Improvements | 15,000 | 15,000 | 15,000 | 15,000 | 41,167 | 188,785 | 15,000 | 15,000 | 41,167 | 15,000 | 15,000 | 15,000 | 41,167 | 447,286 |
| Medicare Cost Report Settlement | - | 68,457 | - | - | - | 68,457 | - | - | - | 68,457 | - | - | - | 205,372 |
| Medicaid Cost Report Settlement | - | 80,163 | - | - | - | 80,163 | - | - | - | 80,163 | - | - | - | 240,489 |
| Insurance | 21,371 | 21,371 | 21,371 | 21,371 | 21,371 | 21,371 | 21,371 | 21,371 | 21,371 | 21,371 | 21,371 | 21,371 | 21,371 | 277,817 |
| Tax Payments | 58,434 | 58,434 | 58,434 | 58,434 | 58,434 | 58,434 | 123,434 | 58,434 | 58,434 | 58,434 | 58,434 | 58,434 | 58,434 | 824,641 |
| Equipment Leases | 20,809 | 20,809 | 20,809 | 20,809 | 20,809 | 20,809 | 20,809 | 20,809 | 20,809 | 20,809 | 20,809 | 20,809 | 20,809 | 270,513 |
| Subtotal | $ 2,003,605 | $ 395,356 | $ 2,385,605 | $ 246,736 | $ 2,029,772 | $ 569,141 | $ 2,450,605 | $ 246,736 | $ 2,029,772 | $ 395,356 | $ 2,385,605 | $ 246,736 | $ 2,029,772 | $ 17,414,794 |
| *Professional Fees:* | | | | | | | | | | | | | | |
| Debtor's Counsel ($160k/mo) | $ 36,952 | $ 36,952 | $ 36,952 | $ 36,952 | $ 36,952 | $ 36,952 | $ 36,952 | $ 36,952 | $ 36,952 | $ 36,952 | $ 36,952 | $ 36,952 | $ 36,952 | $ 480,370 |
| Debtor's Financial Consultant ($25k/mo) | 5,774 | 5,774 | 5,774 | 5,774 | 5,774 | 5,774 | 5,774 | 5,774 | 5,774 | 5,774 | 5,774 | 5,774 | 5,774 | 75,058 |
| Debtor's Investment Bankers ($50k/mo) | 11,547 | 11,547 | 11,547 | 11,547 | 11,547 | 11,547 | 11,547 | 11,547 | 11,547 | 11,547 | 11,547 | 11,547 | 11,547 | 150,115 |
| Committee Professionals ($40k/mo) | - | - | - | 9,238 | 9,238 | 9,238 | 9,238 | 9,238 | 9,238 | 9,238 | 9,238 | 9,238 | 9,238 | 92,379 |
| Administrative Fees (Ch.11 Qtrly Fees) | - | - | - | - | - | - | 10,000 | - | - | - | - | - | - | 10,000 |
| Indenture Trustee Professionals ($80k/mo) | 18,476 | 18,476 | 18,476 | 18,476 | 18,476 | 18,476 | 18,476 | 18,476 | 18,476 | 18,476 | 18,476 | 18,476 | 18,476 | 240,185 |
| Total Professional Fees | $ 72,748 | $ 72,748 | $ 72,748 | $ 81,986 | $ 81,986 | $ 81,986 | $ 91,986 | $ 81,986 | $ 81,986 | $ 81,986 | $ 81,986 | $ 81,986 | $ 81,986 | $ 1,048,106 |
| Pre-Petition / Critical Vendors | $ 300,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 300,000 |
| Estimated Utility Deposits | 160,000 | - | - | - | - | - | - | - | - | - | - | - | - | 160,000 |
| Post-Petition Accounts Payable | - | - | - | - | 355,676 | 532,314 | 692,314 | 532,314 | 532,314 | 520,194 | 680,194 | 520,194 | 520,194 | 4,885,708 |
| Accounts Payable Payments | $ 460,000 | $ - | $ - | $ - | $ 355,676 | $ 532,314 | $ 692,314 | $ 532,314 | $ 532,314 | $ 520,194 | $ 680,194 | $ 520,194 | $ 520,194 | $ 5,345,708 |
| **Total Cash Outflows** | $ 2,536,353 | $ 468,104 | $ 2,458,353 | $ 328,722 | $ 2,467,434 | $ 1,183,441 | $ 3,234,905 | $ 861,036 | $ 2,644,072 | $ 997,536 | $ 3,147,785 | $ 848,916 | $ 2,631,952 | $ 23,808,608 |
| **Net Cash Flow** | $ (1,086,861) | $ 1,062,926 | $ (914,262) | $ 1,215,369 | $ (532,889) | $ 490,933 | $ (1,605,531) | $ 768,338 | $ (1,116,969) | $ 942,131 | $ (1,620,681) | $ 678,188 | $ (1,147,831) | $ (2,867,138) |
| **Beginning Unrestricted Cash** | $ 1,968,429 | $ 881,568 | $ 1,944,494 | $ 1,030,232 | $ 2,245,602 | $ 1,712,713 | $ 2,203,646 | $ 598,115 | $ 1,366,453 | $ 249,484 | $ 1,191,616 | $ (429,066) | $ 249,122 | |
| **Ending Unrestricted Cash** | $ 881,568 | $ 1,944,494 | $ 1,030,232 | $ 2,245,602 | $ 1,712,713 | $ 2,203,646 | $ 598,115 | $ 1,366,453 | $ 249,484 | $ 1,191,616 | $ (429,066) | $ 249,122 | $ (898,709) | |