Patrick M. Flatley
United States Bankruptcy Judge

Dated: Tuesday, May 20, 2014 2:12:15 PM

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG DIVISION

| | |
|---|---|
| In re: | Case No.: 1:13-bk-01054 |
| FAIRMONT GENERAL HOSPITAL, INC., *et al.* | Chapter 11 |
| Debtors. | Jointly Administered |

**ORDER (I) APPROVING BIDDING PROCEDURES RELATED TO THE DEBTORS' SALE OF SUBSTANTIALLY ALL THEIR ASSETS AND ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND 9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTORS' ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM, MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion") of Fairmont General Hospital, Inc. and Fairmont Physicians, Inc. (the "Debtors") for orders (i) approving the Asset Purchase Agreement with Alecto Healthcare Services Fairmont LLC (the "Stalking Horse Purchaser"); (ii) approving bidding procedures related to the Debtors' sale (the "Sale") of substantially all their assets (the "Assets"); (iii) approving the assumption and assignment of certain related executory contracts and unexpired leases; (iv) scheduling (a) auction sale (the "Auction") with respect to the Debtors' assets and (b) hearing date to confirm sale; (iii) approving the form, manner and sufficiency of notice (with respect to ii, iii, and iv together, the "Bidding Procedures Order"); (v) authorizing the Debtors' sale of substantially all of their assets to a successful bidder; and (vi)

granting related relief (with respect to v and vi together, the "Sale Order"); and due and proper notice of the Motion having been given; and no other or further notice being required; and this Court having jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having considered the Motion, its supporting materials, and all responses thereto, if any; and after due deliberation thereon; and it appearing that the entry of this Bidding Procedures Order and granting the relief set forth herein are in the best interests of the Debtors and their bankruptcy estates; and good and sufficient cause appearing therefore, it is hereby **ORDERED** that:

1. The relief requested in Part I of the Motion is granted and approved as set forth herein.

2. The Bidding Procedures, attached as Exhibit A to this Bidding Procedures Order and incorporated herein by reference, are approved and shall govern all proceedings relating to the Purchase Agreement and any Bids for the Assets in this case.

3. The Debtors, in consultation with the Official Committee of Unsecured Creditors (the "Committee"), Fundamental Advisors, L.P. ("Fundamental"), and UMB Bank, N.A., not individually, but as indenture trustee (the "Indenture Trustee") and in accordance with the terms of the Bidding Procedures may: (i) impose additional terms and conditions of the Sale at or before the Auction, provided that such rules are consistent with these Bidding Procedures and will result in the highest, best or otherwise financially superior offer for the Assets; (ii) extend the deadlines set forth in these Bidding Procedures and adjourn the Auction and/or the Sale Hearing in open court without further notice; (iii) determine, subject to Court approval, which bid, if any, constitutes the highest, best or otherwise financially superior offer; and (iv) reject, at any time, any Bid that is: (A) inadequate or insufficient, (B) not in conformity with the

requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the Sale, or (C) contrary to the best interests of the Debtors, their estates, and their creditors as determined by the Debtors, the Committee and the Indenture Trustee.

4. Prior to the Auction, all bidders are strongly encouraged to address and seek to resolve any issues concerning assumption and assignment of Fairmont General Hospital's collective bargaining agreement with (1) District 1199 WV/KY/OH Service Employees Int'l Union by contacting its counsel: Schwarzwald McNair & Fusco LLP, 616 Penton Media Bldg., 1300 East Ninth Street, Cleveland, OH 44115, Attention: David Michael Fusco (dfusco@smcnlaw.com); and (2) Local Union 550 of the Retail, Wholesale, and Department Store Union Council of the United Food and Commercial Workers Union (the "550 Union" and together with the 1199 Union, the "Unions"), 30 East Twenty-Ninth Street, New York, NY 10016.

5. Prior to the Sale Hearing, the Debtors shall file with this Court a supplement stating the identity of the Successful Bidder for the Assets and including a copy of the Purchase Agreement between the Debtors and the Successful Bidder.

6. The Court shall conduct the Sale Hearing on **June 23, 2014 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Patrick M. Flatley, U.S.B.J., at the United States Bankruptcy Court for the Northern District of West Virginia, 1125 Chapline Street, Wheeling, WV 26003, at which time the Court shall consider Part II of the Motion, the Successful Bid, and the confirmation of the results of the Auction, if any.

7. The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing. At the Sale Hearing, the Debtors will seek Court approval of the Successful Bid and the Backup Bid. Unless the Court orders

2

otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the proposed Sale and there will be no further bidding at the Sale Hearing. In the event that the Successful Bidder cannot or refuses to consummate the Sale because of the breach or failure on the part of the Successful Bidder, the Backup Bidder will be deemed the new Successful Bidder and the Debtors shall be authorized, but not required, to close with the Backup Bidder on the Backup Bid without further order of the Court.

8. Objections, if any, to the approval of the Debtors' assumption and assignment of the Assigned Contracts (as defined below) and/or the sale of the Debtors' Assets, including objections to the Auction or the selection of the Successful Bid, and the related relief requested in Part II of the Motion (an "Objection") must be filed by **5:00 p.m. (prevailing Eastern Time) on June 19, 2014** (the "Objection Deadline") with a copy of the Objection served, so as to be actually received by the Objection Deadline, upon: (1) counsel for the Debtors: Spilman Thomas & Battle PLLC, 110 Oakwood Drive, Suite 500, Winston-Salem, NC 27103, Attention: Rayford K. Adams III (tadams@spilmanlaw.com) and Spilman Thomas & Battle PLLC, 48 Donley Street, Suite 800, P.O. Box 615, Morgantown, WV 26507, Attention: Michael S. Garrison (mgarrison@spilmanlaw.com); (2) counsel to the Official Committee of Unsecured Creditors (the "Committee"): Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102, Attention.: Andrew H. Sherman (asherman@sillscummis.com) and Boris I. Mankovetskiy (bmankovetskiy@sillscummis.com); (3) counsel for Fundamental Advisors, L.P. ("Fundamental"): Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005, Attention: Matthew S. Barr (mbarr@milbank.com) and Brian Kinney (bkinney@milbank.com), and Jackson Kelly PLLC, 500 Lee Street, East, Suite 1600, Post Office Box 553, Charleston, WV 25322, Attention: William F. Dobbs, Jr.

2

(wdobbs@jacksonkelly.com) and William C. Ballard (wcballard@jacksonkelly.com); and (4) counsel for the Indenture Trustee: McDermott Will & Emery LLP, 227 West Monroe Street, Suite 4700, Chicago, IL 60606, Attention: Nathan F. Coco (ncoco@mwe.com), McDermott Will & Emery LLP, 340 Madison Ave., New York, NY 10173, Attention: Darren Azman (dazman@mwe.com), and White Law Offices, PLLC, 332 6th Ave., P.O. Box 18387, South Charleston, WV 25303, Attention: Steven Ryan White (rwhite@whitepllc.com); and (5) all parties filing an entry of appearance and request for notices pursuant to Bankruptcy Rule 2002.

9. The failure of any objecting person or entity to timely file and serve an Objection by the Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale, the Auction, the selection of the Successful Bidder at the Auction (other than the Stalking Horse Purchaser), or the Debtors' consummation and performance of the Purchase Agreement, if authorized by the Court.

10. The Court shall retain jurisdiction to: (i) interpret, implement and enforce the terms and provisions of this Bidding Procedures Order; (ii) enter orders in aid or furtherance of this Bidding Procedures Order; and (iii) adjudicate any and all remaining issues concerning the Debtors' right and authority to assume, assign and/or sell its Assets or Assigned Contracts, including to approve the Sale of the Assets at the Sale Hearing; and (iv) adjudicate any and all issues and/or disputes, if any, regarding the Cure Payments to be made pursuant to section 365(b) of the Bankruptcy Code or the assumption of contracts or leases pursuant to section 365.

11. Notice of the Motion and the Sale Hearing shall be good and sufficient, and no other or further notice shall be required, if given as follows: within five (5) days after entry of this Bidding Procedures Order, the Debtors shall serve the following by first-class mail, postage prepaid, upon (a) all entities known to have expressed an interest in the purchase of the Assets;

(b) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the Assets; (c) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (d) all parties to the Assumed Contracts; (e) Office of the United States Trustee; (f) counsel to Fundamental.; (g) counsel to the Indenture Trustee; (h) the Internal Revenue Service, Insolvency Section; (i) the Internal Revenue Service, Department of Treasury; (j) the West Virginia Treasury; (k) the West Virginia Health Care Authority; (l) the Office of the West Virginia Attorney General; (m) the Debtors' twenty (20) largest unsecured creditors; (n) counsel to the Committee; (o) all entities requesting notice pursuant to Bankruptcy Rule 2002; and (p) all parties on the core and master service lists:

      a)     The Motion (with all Exhibits);

      b)     Bidding Procedures Order (with all Exhibits); and

      c)     Proposed Sale Order.

12.    Nothing in this Order approves the sale, transfer, assumption or assignment of the Debtors' existing Medicare Provider Agreement and Medicare billing numbers without successor liability, recoupment and setoff; sets the cure amount for assumption and assignment of the Medicare Provider Agreement; or decides any other issue arising under the Medicare statute. All issues mentioned in the foregoing sentence, and the rights of all parties in interest with respect to those issues, are not waived and are expressly reserved for later argument.

[END OF DOCUMENT]

# Exhibit A
# Bidding Procedures

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | |
|---|---|
| In re:<br><br>FAIRMONT GENERAL HOSPITAL, INC., *et al.*<br><br>Debtors. | Case No.: 1:13-bk-01054<br><br>Chapter 11<br><br>Jointly Administered |

**BIDDING PROCEDURES FOR SALE OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTORS FAIRMONT GENERAL HOSPITAL, INC. AND FAIRMONT PHYSICIANS, INC.**

The bidding procedures (the "Bidding Procedures") set forth below shall be employed with respect to the proposed sale (the "Sale") of all or substantially all of the assets (the "Assets") of Fairmont General Hospital, Inc. (the "Hospital") and Fairmont Physicians, Inc. ("Fairmont Physicians"), debtors and debtors-in-possession (each a "Debtor," and together, the "Debtors"). On May 9, 2014, the Debtors filed with the United States Bankruptcy Court for the Northern District of West Virginia, Clarksburg Division (the "Bankruptcy Court") their motion (the "Motion") [Docket No. 677] for orders (I) approving bidding procedures related to the Debtors' sale of substantially all their assets and assumption and assignment of certain related executory contracts and unexpired leases pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 6004, 6006 and 9014; (II) scheduling (a) an auction sale with respect to the Debtors' assets and (b) hearing date to confirm sale; (III) approving the form, manner and sufficiency of notice (with respect to I, II and III together, the "Bidding Procedures Order"); (IV) authorizing the Debtors' sale of substantially all of their assets to a successful bidder; and (V) granting related relief (with respect to IV and V together, the "Sale Order").

On May 20, 2014, the Bankruptcy Court entered the Bidding Procedures Order, which among other things authorized the Debtors to enter into the Asset Purchase Agreement with

- 1 -

Alecto Healthcare Services Fairmont LLC (the "Purchase Agreement") subject to higher and better offers. A copy of the Purchase Agreement was attached to the Motion as <u>Exhibit A</u>. The Bidding Procedures Order set **June 23, 2014 at 10:00 a.m. (prevailing Eastern Time)** as the date and time the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Debtors to sell the Assets to the Successful Bidder (as defined below).

The Bidding Procedures set forth below describe, among other things, the Assets available for sale, the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder(s) and the Bankruptcy Court's approval of the Successful Bidder(s).

**Assets to be Sold**

The Sale shall consist of all or substantially all of the Debtors' Assets, sold together or in separate lots, as set forth in the Purchase Agreement.

**Due Diligence**

Any entity that wishes to conduct due diligence with respect to the Assets (a "Potential Bidder"), other than Alecto Healthcare Services Fairmont LLC (the "Stalking Horse Purchaser"), must (i) deliver to the Debtors an executed confidentiality agreement in form and substance satisfactory to the Debtors in consultation with the Committee, Fundamental, and the Indenture Trustee (each as defined below); (ii) deliver to the Debtors a written, non-binding expression of interest describing the Assets to be purchased and consideration therefore that is reasonably acceptable to the Debtors in consultation with the Committee, Fundamental, and the Indenture Trustee; and (iii) be deemed by the Debtors, in consultation with the Committee, Fundamental,

and the Indenture Trustee, based on the information provided by the Potential Bidder, to be reasonably likely to be able to obtain necessary regulatory approvals and be able to fund the consummation of its proposed transaction if selected as the Successful Bidder within a timeframe acceptable to the Debtors in consultation with the Committee, Fundamental, and the Indenture Trustee.  Potential Bidders should contact Jason Horowitz, Hammond Hanlon Camp, LLC, 623 Fifth Avenue, 29th Floor, New York, NY 10022; Telephone: 212-257-4514; Email: jhorowitz@h2cllc.com.

**Bid Deadline**

The deadline for submitting bids shall be **June 12, 2014 at noon (prevailing Eastern Time) (the "Bid Deadline").**  On or before the Bid Deadline, any bidder that desires to make an offer, solicitation or proposal (a "Bid") to purchase some or all of the Debtors' Assets must deliver written copies of its Bid to (1) counsel for the Debtors: Spilman Thomas & Battle PLLC, 110 Oakwood Drive, Suite 500, Winston-Salem, NC 27103, Attention: Rayford K. Adams III (tadams@spilmanlaw.com) and Spilman Thomas & Battle PLLC, 48 Donley Street, Suite 800, P.O. Box 615, Morgantown, WV 26507, Attention: Michael S. Garrison (mgarrison@spilmanlaw.com); (2) counsel to the Official Committee of Unsecured Creditors (the "Committee"): Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102, Attention.: Andrew H. Sherman (asherman@sillscummis.com) and Boris I. Mankovetskiy (bmankovetskiy@sillscummis.com); (3) counsel for Fundamental Advisors, L.P. ("Fundamental"): Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005, Attention: Matthew S. Barr (mbarr@milbank.com) and Brian Kinney (bkinney@milbank.com), and Jackson Kelly PLLC, 500 Lee Street, East, Suite 1600, Post Office Box 553, Charleston, WV 25322, Attention: William F. Dobbs, Jr. (wdobbs@jacksonkelly.com)

and William C. Ballard (wcballard@jacksonkelly.com); (4) counsel for UMB Bank, N.A., not individually but as indenture trustee (the "Indenture Trustee"): McDermott Will & Emery LLP, 227 West Monroe Street, Suite 4700, Chicago, IL 60606, Attention: Nathan F. Coco (ncoco@mwe.com), McDermott Will & Emery LLP, 340 Madison Ave., New York, NY 10173, Attention: Darren Azman (dazman@mwe.com), and White Law Offices, PLLC, 332 6th Ave., P.O. Box 18387, South Charleston, WV 25303, Attention: Steven Ryan White (rwhite@whitepllc.com); and Hammond Hanlon Camp, LLC, 623 Fifth Avenue, 29th Floor, New York, NY 10022, Attention Jason D. Horowitz (jhorowitz@h2cllc.com). A Bid received after the Bid Deadline shall not constitute a Qualified Bid (as defined below), except to the extent the Debtors, in their discretion, in consultation with the Committee, and the Indenture Trustee, determine to deem such Bid a Qualifying Bid.

**Qualified Bids**

A "Qualified Bidder" is a Potential Bidder that delivers a Qualified Bid. If the Debtors receive a Qualified Bid other than from the Stalking Horse Purchaser, the Auction will be held. If the Debtors receive a Qualified Bid other than from the Stalking Horse Purchaser prior to the Auction that satisfies the overbid requirements of subparagraph (iv) in the "Auction" section herein (each a "Qualified Overbid"), the highest and best Qualified Overbid (as determined by the Debtors in consultation with the Committee and the Indenture Trustee) shall be deemed the "Opening Overbid" by the "Opening Bidder." At the commencement of the Auction, the Debtors shall inform the Stalking Horse Purchaser and all Auction Bidders (as defined below) present at the Auction of the amount of the Opening Overbid and provide them with a redlined copy of the Opening Overbidder's purchase agreement as compared to the Purchase Agreement.

**Bid Requirements**

Except as otherwise set forth in these Bidding Procedures, to be deemed a Qualified Bidder and be eligible to participate in the Auction, a Potential Bidder must submit a Qualified Bid. A "Qualified Bid" is a Bid that is determined by the Debtors, in consultation with the Committee and the Indenture Trustee, to meet the following requirements:

(i) <u>Binding Purchase Agreement</u>. Each Qualified Bid must be accompanied by a copy of an irrevocable and binding agreement in substantially the same form as the Purchase Agreement attached as <u>Exhibit A</u> to the Motion as determined by the Debtors in consultation with the Committee, Fundamental, and the Indenture Trustee. The Purchase Agreement is available in Word format in the electronic data room accessible to Potential Bidders meeting the requirements set forth above in the "Due Diligence" section of these Bidding Procedures, and shall be marked by the Potential Bidder to show amendments and modifications. The submission of the Purchase Agreement shall confirm that, if the Bid is designated the Backup Bid (as defined below), the Bid will remain irrevocable and binding until one business day following the closing of the Sale to the Successful Bidder.

(ii) <u>Separate Lots</u>. Each Qualified Bid must specify the Assets on which the bidder is bidding. Qualified Bids may consist of offers to purchase (a) all or substantially all of the Debtors' Assets or (b) some but not all of the Debtors' Assets (*e.g.*, a specific Asset or group of Assets), and the Debtor's Assets may be sold as separate lots.

(iii) <u>Deposit</u>. With respect to each Qualified Bid, the Qualified Bidder must deliver, **at least three (3) business days before the Auction**, an earnest money deposit to Debtors' counsel equal to ten percent (10%) of the total proposed cash portion of the purchase price (the "Deposit") in the form of a certified check or wire transfer payable to the trust account of Debtor's counsel.

(iv) <u>Additional Terms</u>. Each Qualified Bid must identify the bidder and: (a) contain documents and information sufficient to establish the bidder's financial wherewithal and allow the Debtors, in consultation with the Committee and the Indenture Trustee, to make a determination regarding the bidder's ability to consummate the transactions contemplated by the Purchase Agreement, including evidence of adequate assurance of such bidder's ability to perform under any of the Assumed Contracts and to pay all cure amounts required to assume and assign any such Assumed Contracts; (b) if applicable, provide that the bidder, if successful, will assume the Debtors' Medicare and Medicaid provider agreements or will obtain its own within a timeframe acceptable to the Debtors in consultation with the Committee, and the Indenture Trustee; (c) contain documents and information sufficient to establish that the bidder is likely to receive all necessary regulatory approvals in a timely manner and provide that the bidder agrees, if selected as the Successful Bidder or the Backup Bidder, to apply for all such regulatory approvals, including, without limitation, a certificate of need, to the extent that the applicable

- 5 -

regulatory authorities are prepared to entertain applications from both the Successful Bidder and the Backup Bidder; (d) contain a W-9 form for every entity that contributes to the bidder's Deposit; (e) provide that the the bidder's offer is irrevocable for the period set forth in these Bidding Procedures; (f) affirmatively acknowledge that the bidder (i) had adequate opportunity to conduct due diligence regarding the Assets prior to making its offer and does not require further due diligence, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith; (g) not request or entitle the bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment; (h) provide that the bidder has waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or these Bidding Procedures; (i) provide that the bidder has obtained all necessary organizational approvals to make its Bid and to enter into and perform the Purchase Agreement and include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Purchase Agreement; and (j) provide that the Deposit will be forfeited as minimum liquidated damages if the bidder fails to close the Sale.

(v)   <u>Identity of Bidders</u>.  Each Qualified Bid must fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such Bid, including the names and addresses of any members or individuals with an interest in the entity, and the complete terms of any such participation, as well as the organization form and the business conducted by each entity.  Each Qualified Bidder shall be required to provide such additional information as the Debtors, in consultation with the Committee, and the Indenture Trustee, may reasonably require regarding the ability to satisfy the requirements of the applicable regulatory authorities.

(vi)   <u>Contingencies</u>.  A Qualifying Bid must not be conditioned on obtaining financing, any internal approval, or the outcome or review of due diligence, or contain any environmental or other contingencies not otherwise expressly contained in the Purchase Agreement.  A Qualifying Bid may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Purchase Agreement.

The Purchase Agreement executed by the Stalking Horse Purchaser (the "Stalking Horse Purchaser Agreement") is a Qualified Bid, and the Stalking Horse Purchaser is a Qualified Bidder for all purposes of these Bidding Procedures.

**Sale to the Stalking Horse Purchaser**

If no Qualified Bids other than the Stalking Horse Purchaser's bid have been submitted by the Bid Deadline, the Stalking Horse Purchaser will be deemed the Successful Bidder and the Debtors will proceed to seek approval by the Bankruptcy Court of the Purchase Agreement and authority to consummate the transactions contemplated thereby.

**Auction**

If more than one Qualified Bid (including the Stalking Horse Purchaser's) is received, an auction sale (the "Auction") will be conducted at the offices of Spilman Thomas & Battle PLLC, 1233 Main St., Suite 400, Wheeling, WV 26003, **on June 17, 2014 at 10:00 a.m. (prevailing Eastern Time).** The bidders authorized to participate in the Auction shall be referred to as "Auction Bidders" for the purposes of these Bidding Procedures.

Prior to the Auction, all bidders are strongly encouraged to address and seek to resolve any issues concerning assumption and assignment of the Hospital's collective bargaining agreements with (i) District 1199 WV/KY/OH Service Employees Int'l Union (the "1199 Union") by contacting its counsel: Schwarzwald McNair & Fusco LLP, 616 Penton Media Bldg., 1300 East Ninth Street, Cleveland, OH 44115, Attention: David Michael Fusco (dfusco@smcnlaw.com); and (ii) Local Union 550 of the Retail, Wholesale, and Department Store Union Council of the United Food and Commercial Workers Union (the "550 Union" and together with the 1199 Union, the "Unions"), 30 East Twenty-Ninth Street, New York, NY 10016.

The Auction shall be governed by the following procedures:

(i)   **Participation at Auction**. Attendance at the Auction shall be limited to the Stalking Horse Purchaser, Debtors, the Committee, Fundamental, the Indenture Trustee, the United States Trustee, representatives of the State of West Virginia, the Auction Bidders (or their duly authorized representatives), the legal and financial advisers to each

- 7 -

of the foregoing, and any other party the Debtors, in consultation with the Committee, Fundamental, and the Indenture Trustee, may invite to attend.

(ii)  <u>No Collusion</u>.  Each Auction Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale.

(iii)  <u>Conduct of the Auction</u>.  The Debtors and their professionals shall direct and preside over the Auction.  Other than as set forth herein, the Debtors, in consultation with the Committee, Fundamental, and the Indenture Trustee, may conduct the Auction in a manner that is consistent with these Bidding Procedures and will result in the highest, best or otherwise financially superior offer for the Assets.

(iv)  <u>Minimum Initial Overbid</u>.  Except as otherwise provided in these Bidding Procedures, bidding at the Auction shall begin with the Qualified Bid of Stalking Horse Purchaser.  The minimum initial overbid (whether at the Auction or delivered as a Qualified Overbid prior to the Auction) shall be not less than $16,050,000, which represents the Purchase Price in the Stalking Horse Purchaser Agreement, plus $500,000 required to pay the Stalking Horse Purchaser's Break-up Fee, plus a minimum overbid of $250,000.

(v)  <u>Subsequent Bids and Bid Increments</u>.  After the receipt of the initial minimum overbid, if any, described in subparagraph (iv) of this section, Auction Bidders may improve their bids at the Auction in increments of not less than $250,000.  The Auction shall continue with subsequent rounds of bidding and, after each round, the Debtors shall announce the "Leading Bid."  The bidding shall be continuous and competitive and shall not end until all Auction Bidders have submitted their last and best offers.  Notwithstanding the incremental bid provisions of this subparagraph, the Debtors, in consultation with the Committee and the Indenture Trustee, reserve the right to modify the incremental bid procedures before or during the Auction.

(vi)  <u>Transcript</u>.  The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Opening Overbid, each Leading Bid, each subsequent Bid, and the Successful Bid.

(vii)  <u>Additional Procedures</u>.  The Debtors, in their reasonable discretion and in consultation with the Committee, Fundamental, and the Indenture Trustee, may adopt rules for the Auction at or prior to the Auction, provided that such rules are consistent with these Bidding Procedures and will result in the highest, best or otherwise financially superior offer for the Assets.

## Back-Up Bids

The competitive bidding among Auction Bidders shall continue according to these Bidding Procedures until the Debtors and their advisors, in consultation with the Committee, Fundamental and the Indenture Trustee, identifies and certifies, subject to Court approval, the

- 8 -

winning Auction Bidder (the "Successful Bidder") with the highest, best or otherwise financially superior offer (the "Successful Bid") with respect to the Debtors' Assets. The Successful Bidder, to the extent necessary, must augment its deposit by wire transfer or other immediately available funds within one (1) business day after the conclusion of the Auction such that its deposit will equal not less than ten percent (10%) of its Successful Bid. If for any reason the Successful Bidder fails to augment its deposit or consummate the purchase of the Assets, the Backup Bid will be deemed to be the Successful Bid, and the Debtors shall be authorized to effect the sale of the Assets to the Backup Bidder as soon as is commercially reasonable without further order of the Bankruptcy Court. If the Successful Bidder closes the Sale, the Backup Bidder's Deposit (plus accrued interest, if any) shall be returned to the Backup Bidder **within three (3) business days** after the closing with the Successful Bidder. If the Successful Bidder fails to close, the Backup Bidder's Deposit shall be treated in the manner described in these Bidding Procedures.

### Sale Hearing

A Sale Hearing to confirm the results of the Auction or, if no Auction has been held, the Sale of the Assets to the Successful Bidder, will be held before the Honorable Patrick M. Flatley, U.S.B.J., at the United States Bankruptcy Court for the Northern District of West Virginia, 1125 Chapline Street, Wheeling, WV 26003, on **June 23, 2014, at 10:00 a.m. (prevailing Eastern Time).**

### Escrow of Bid Deposits

Other than the Stalking Horse Purchaser's Deposit (which is governed by the Purchase Agreement), Deposits shall be held by Debtors' counsel in an interest-bearing bank account (assuming the bidder provides the requisite W-9(s)). Within two (2) business days after entry of the Sale Order approving the Sale of the Assets, Deposits shall be returned to all bidders except

the Successful Bidder and the Backup Bidder. The Deposit (plus accrued interest, if any) of the Successful Bidder or the Backup Bidder, as applicable, shall be applied to the purchase price at the closing of the Sale.

### Deposit Forfeit

The Successful Bidder's Deposit will be forfeited as minimum liquidated damages and the Successful Bidder held liable for compensatory damages if the Successful Bidder fails to close the Sale by reason of its breach of the contract of sale to be signed by the Debtors and the Successful Bidder (the "Contract") subject to the terms of the Purchase Agreement.

### Reservation of Rights

The Debtors reserve the right to, in consultation with the Committee, Fundamental, and the Indenture Trustee, (i) impose additional terms and conditions of the Sale at or before the Auction, provided that such rules are consistent with these Bidding Procedures and will result in the highest, best or otherwise financially superior offer for the Assets; (ii) extend the deadlines set forth in these Bidding Procedures and Adjourn the Auction and/or the Sale Hearing in open court without further notice; (iii) determine, subject to Court approval, which bid, if any, constitutes the highest, best or otherwise financially superior offer; and (iv) reject, at any time, any Bid that is: (A) inadequate or insufficient, (B) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the Sale, or (C) contrary to the best interests of the Debtors, their estates, and their creditors as determined by the Debtors, the Committee and the Indenture Trustee.

### Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale of the Debtors' Assets, the Bidding Procedures, the Auction, the Sale

Hearing, the Purchase Agreement, and/or any other matter that in any way relates to the foregoing.