## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF WEST VIRGINIA
## CLARKSBURG DIVISION

| | |
|---|---|
| **In re** | Case No. 1:13-bk-01054 |
| **FAIRMONT GENERAL HOSPITAL, INC.,** | Chapter 11 |
| **Debtor.** | Jointly Administered |
| **In re** | Case No. 1:13-bk-01055 |
| **FAIRMONT PHYSICIANS, INC.,** | Chapter 11 |
| **Debtor.** | Jointly Administered |

## <u>JOINT CHAPTER 11 PLAN OF ORDERLY LIQUIDATION</u>

Nothing contained herein shall constitute an offer, an acceptance, or a legally binding obligation of the Debtors or any other party in interest.  This Plan is subject to approval of the Bankruptcy Court and other customary conditions.  This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan.  Acceptances or rejections with respect to this Plan may not be solicited until a disclosure statement has been approved by the United States Bankruptcy Court for the Northern District of West Virginia in accordance with section 1125 of the Bankruptcy Code.  Such a solicitation will only be made in compliance with applicable provisions of securities and bankruptcy laws.

YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.

2564228

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION .................................................................................. 2

II.     DEFINITIONS AND RULES OF CONSTRUCTION ...................................... 3

        A.      Definitions ............................................................................. 3

        B.      Interpretation, Rules of Construction, Computation of Time ............... 14

                1.      Defined Terms .......................................................... 14

                2.      Rules of Interpretation ............................................... 14

                3.      Time Periods ............................................................ 15

III.    DESIGNATION OF CLASSES OF CLAIMS ............................................. 16

        A.      Classes of Claims .................................................................. 16

        B.      Impaired Classes ................................................................... 16

        C.      Terms of Confirmed Plan Control Unless Otherwise Specified ........... 16

        D.      Holders of Claims as of Record Date .......................................... 17

IV.     TREATMENT OF CLAIMS ................................................................. 17

        A.      Unclassified Claims ............................................................... 17

                1.      Administrative Expense Claims ..................................... 17

        B.      Classified Claims .................................................................. 18

                1.      Class 1 – Priority Non-Tax Claims ................................ 18

                2.      Class 2 – Allowed 2008 Bond Claim .............................. 19

                3.      Class 3 – Allowed 2007 Bond Claim .............................. 19

                4.      Class 4 – Secured Claims of Other Lienholders ................. 21

                5.      Class 5 – FGH General Unsecured Claims ........................ 22

                6.      Class 6 – FPI Allowed Claims ...................................... 23

V.      ACCEPTANCE OR REJECTION OF THIS PLAN ..................................... 24

        A.      Voting Classes ..................................................................... 24

        B.      Controversy Concerning Impairment ........................................... 24

        C.      Acceptance by Impaired Classes ............................................... 24

        D.      Non-Consensual Confirmation ................................................. 24

VI.     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 24

        A.      Rejection of Executory Contracts and Unexpired Leases................... 24

        B.      Bar Date for Rejection Damages ............................................... 25

        C.      Insurance Policies ................................................................. 25

VII.    MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ............. 26

**TABLE OF CONTENTS**
(cont'd)

| | | | |
|---|---|---|---|
| A. | Overview | | 26 |
| B. | No Substantive Consolidation | | 26 |
| C. | Calculation of Estimated Liquidated Assets | | 26 |
| D. | Establishment of Liquidating Trust; Appointment of Liquidating Trustee and Debtor Representative; Revesting of D&O Claims in Estates; Assigned Claims | | 26 |
| E. | Income Tax Status | | 27 |
| F. | Powers and Authority of the Liquidating Trustee | | 28 |
| G. | Funding of the Liquidating Trust | | 28 |
| H. | Liquidating Trust's Post-Effective Date Expenses | | 28 |
| I. | Treatment of 2007 Bond Causes of Action | | 29 |
| J. | Use of Existing Accounts | | 29 |
| K. | Employment and Compensation | | 29 |
| L. | Vesting of Authority in Debtor Representative | | 30 |
| M. | Termination of the Committee; Creation of POC | | 30 |
| N. | Liquidating Trustee as Successor in Interest to the Debtors and Committee | | 31 |
| O. | Termination of the Liquidating Trust Estates | | 31 |
| P. | Objections to Administrative Expense Claims and Priority Claims | | 31 |
| | 1. | Objection Procedures | 31 |
| | 2. | Resolution of Disputed Administrative Expense Claims and Priority Claims and Administrative Expense Claims and Priority Claims that have Not Otherwise Been Allowed | 32 |
| Q. | Objections to Other Claims | | 32 |
| | 1. | Objection Procedures | 32 |
| | 2. | Resolution of Disputed Other Claims and Other Claims that Have Not Otherwise Been Allowed | 33 |
| VIII. | PROVISIONS GOVERNING DISTRIBUTIONS | | 33 |
| A. | Delivery of Distributions | | 33 |
| B. | Undeliverable Distributions | | 33 |
| C. | Failure to Claim Undeliverable Distributions | | 34 |
| D. | Compliance with Tax Requirements | | 34 |
| E. | Minimum Distributions | | 34 |
| F. | Rounding | | 35 |

**TABLE OF CONTENTS**
(cont'd)

**Page**

| | | | |
|---|---|---|---|
| | G. | Setoffs and Recoupments | 35 |
| | H. | Settlement of Claims and Controversies | 35 |
| IX. | | PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS AND CLAIMS THAT HAVE OTHERWISE NOT BEEN ALLOWED | 35 |
| | A. | Payments and Distributions on Disputed Claims and Claims That Have Otherwise Not Been Allowed | 35 |
| | B. | Safekeeping of Distributable Property | 36 |
| | C. | Allowance of Claims | 36 |
| X. | | JURISDICTION | 36 |
| | A. | Retention of Jurisdiction | 36 |
| | B. | Consent to Jurisdiction | 38 |
| XI. | | RELEASES, EXCULPATIONS AND RELATED PROVISIONS | 38 |
| | A. | Term of Bankruptcy Injunction or Stay | 38 |
| | B. | Exculpation | 38 |
| | C. | Limitation on Liability of Liquidating Trustee and Debtor Representative | 39 |
| | D. | Releases By the Debtors | 39 |
| | E. | Releases by Holders of Claims | 40 |
| | F. | Injunction | 41 |
| | G. | Nondischarge of the Debtors | 41 |
| | H. | Cancellation of Documents | 41 |
| | I. | Effect of Plan on Released Claims and Liens | 41 |
| XII. | | MISCELLANEOUS PROVISIONS | 41 |
| | A. | Conditions to Confirmation and the Effective Date | 41 |
| | B. | Effect of Failure of Condition | 42 |
| | C. | Waiver of Conditions to Confirmation and Effective Date | 42 |
| | D. | Modification of the Plan | 43 |
| | E. | Extension of Time | 43 |
| | F. | Post-Effective Date Notice List | 43 |
| | G. | Revocation of Plan | 44 |
| | H. | Successors and Assigns | 44 |
| | I. | Reservation of Rights | 44 |
| | J. | Service of Documents | 44 |

**TABLE OF CONTENTS**
(cont'd)

**Page**

K.   Filing of Additional Documents and Notice of Effective Date ........................... 44

L.   Severability ................................................................................................. 44

M.   Entire Agreement .......................................................................................... 45

N.   Governing Law .............................................................................................. 45

O.   Closing of the Chapter 11 Cases .................................................................... 45

<center>I.</center>

<center>**<u>INTRODUCTION</u>**</center>

Fairmont General Hospital, Inc. ("**Fairmont**" or "**FGH**") and Fairmont Physicians, Inc. ("**FPI**") the debtors-in-possession in the above-captioned chapter 11 cases  and the Official Committee of Unsecured Creditors appointed in this case jointly propose the following plan of liquidation (the "**Plan**") pursuant to the provisions of chapter 11 of the Bankruptcy Code.

Pursuant to the Plan, the Plan Proponents propose an orderly liquidation of the Debtors' remaining Assets.  The Plan provides that all funds realized from the collection and liquidation of the Debtors' Assets will be paid to Creditors on account of their Allowed Claims in accordance with the distributive priorities of the Bankruptcy Code and this Plan.  The Plan Proponents propose to implement the Plan by establishing, *inter alia*, a Liquidating Trust that will be administered by the Liquidating Trustee.  On the Effective Date, certain of the Debtors' Assets will be transferred to the Liquidating Trust for the benefit of Creditors and certain assets will be administered by a Debtor Representative.  Thereafter, the Liquidating Trustee will be responsible for liquidating the Assets and making distributions to Creditors in accordance with the terms of the Plan.

Transmitted with this Plan is a copy of the Disclosure Statement required by section 1125 of the Bankruptcy Code (together with exhibits and as amended from time to time, the "**Disclosure Statement**").  The Disclosure Statement is provided to help Creditors understand this Plan.  The Disclosure Statement contains, among other things, a discussion of the Debtors' history, business and operations, risk factors and other related matters.  The Disclosure Statement also provides a summary of this Plan.  All Creditors and other parties-in-interest are encouraged to carefully review the Disclosure Statement prepared by the Plan Proponents before voting to accept or reject this Plan.

The Plan Proponents urge all creditors and other parties in interest to read this Plan and the Disclosure Statement in their entirety.  No solicitation materials other than the Disclosure Statement and any documents, schedules, exhibits or letters attached thereto or referenced therein have been authorized by the Plan Proponents or the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan.

The Voting Deadline to accept or reject this plan is <u>5:00 p.m. Eastern time, April 1, 2015</u>, unless extended by order of the United States Bankruptcy Court for the Northern District of West Virginia.

The Plan Proponents believe that this Plan will enable the Estates to efficiently liquidate its assets for the benefit of the Creditors and accomplish the objectives of Chapter 11.  Additionally, the Plan Proponents believe the Plan presents the most advantageous outcome for all of the Debtors' Creditors and that, therefore, confirmation of the Plan is in the best interests of the Estates.  The Plan Proponents recommend that Creditors <u>vote to accept the Plan</u>.

2564228                                      <center>-2-</center>

**II.**

**DEFINITIONS AND RULES OF CONSTRUCTION**

**A.      Definitions**

In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

**"2007 Bond Causes of Action"** means, collectively, the Bond Counsel Claims, the Predecessor Trustee Claims and any other causes of action (including, but not limited to, claims for negligence and malpractice) against (i) the bond counsel for the issuance of the 2007 Bonds, (ii) the Predecessor Trustee or (iii) any officer or director or auditor of the Debtors relating to the issuance, oversight and administration of the 2007 Bonds.

**"2007 Bond Distributions"** shall have the meaning attributed to such term in section IV.B.3 of this Plan.

**"2007 Bond Claim"** means the Claim of the Bond Trustee under the 2007 Bond Documents for the outstanding principal due and accrued interest owing as of the Petition Date in respect of the 2007 Bonds, which shall be treated as an Allowed Claim under this Plan in the aggregate amount of $12,193,827 less the aggregate amount of Trustee-Held Funds held by the Bond Trustee in respect of the 2007 Bonds.

**"2007 Bond Documents"** means (i) the 2007 Bonds, (ii) the 2007 Indenture, (iii) the Loan Agreement dated July 1, 2007 between the County Commission of Marion County and Fairmont, (iv) the Deed of Trust, dated July 11, 2007, among Fairmont, the Predecessor Bond Trustee, and the County Commission of Marion County, and (iv) all other indentures, notes, instruments, agreements, documents and undertakings executed in connection with or otherwise serving as collateral in connection with the 2007 Bonds.

**"2007 Bondholders"** means the Holders of the 2007 Bonds.

**"2007 Bonds"** means The County Commission of Marion County (West Virginia) Hospital Revenue Bonds, Series 2007 (Fairmont General Hospital, Inc. Project), in the initial aggregate principal amount of $13,700,000, issued pursuant to the 2007 Indenture.

**"2007 Indenture"** means Trust Indenture, dated July 1, 2007, between the County Commission of Marion County and the Predecessor Bond Trustee.

**"2008 Bond Claim"** means the Claim of the Bond Trustee under the 2008 Bond Documents for the outstanding principal due and accrued interest owing as of the Petition Date in respect of the 2008 Bonds, which shall be treated as an Allowed Claim under this Plan in the aggregate amount of $2,742,618 less the aggregate amount of Trustee-Held Funds held by the Bond Trustee in respect of the 2008 Bonds.

"**2008 Bond Documents**" means (i) the 2008 Bonds, (ii) the 2008 Indenture, (iii) the Loan Agreement, dated February 1, 2008, between the West Virginia Hospital Finance Authority and Fairmont, and (iv) all other indentures, notes, instruments, agreements, documents and undertakings executed in connection with or otherwise serving as collateral in connection with the 2008 Bonds.

"**2008 Bonds**" means West Virginia Hospital Finance Authority Hospital Refunding Revenue Bonds, Series 2008A (Fairmont General Hospital, Inc. Project) Tax-Exempt, in the initial aggregate principal amount of $4,300,000, issued pursuant to the 2008 Indenture.

"**2008 Indenture**" means the Trust Indenture, dated February 1, 2008, between the West Virginia Hospital Finance Authority and the Predecessor Bond Trustee.

"**Additional Sources of Cash**" means the net Cash proceeds received or collected by the Liquidating Trustee and/or the Debtor Representative after the Effective Date, including, without limitation, the proceeds from any Causes of Action.

"**Administrative Expense Claim**" means any allowed and/or approved Claim (other than a Claim included in a Class under the Plan) that is entitled to priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code or Order of the Bankruptcy Court, including (i) Claims for the actual, necessary costs and expenses of preserving the Estates arising or accruing during the period commencing on the Petition Date and ending on the Administrative Bar Date, (ii) Section 503(b)(9) Administrative Claims, and (iii) Professional Compensation and Reimbursement Claims.

"**Administrative Bar Date**" means December 11, 2014 pursuant to the Administrative Bar Date Order, other than with respect to (A) all fees payable to the Clerk of the Bankruptcy Court or the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; (B) any Administrative Expense Claim already fixed and approved by Order of the Bankruptcy Court prior to the entry of the Administrative Expense/Priority Claim Bar Date Order; (C) any Administrative Expense Claim that has been paid in full prior to the entry of the Administrative Expense Bar Date Order; (D) any Administrative Expense Claim of a governmental unit that is subject to 11 U.S.C. § 503(b)(1)(D); (E) any Professional Compensation and Reimbursement Claim; (F) fees and expenses payable to Patient Care Ombudsman and her counsel; (G) Administrative Expense Claims of Committee members for expenses pursuant to Bankruptcy Code section 503(b)(3)(F); and (H) fees and expenses payable to Epiq.

"**Administrative Bar Date Order**" means the *Amended Order (I) Establishing Bar Date for Filing Administrative Expense Claims Pursuant to 11 U.S.C. §§ 105(A) and 503, Including Claims Under 11 U.S.C. § 503(B)(9); (II) Approving the Form, Manner, and Sufficiency of Notice Thereof; and (III) Approving Proof of Administrative Expense Claim Forms* entered by the Bankruptcy Court on October 31, 2014 as Docket No. 1117.

"**Allowed Claim**" means any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, which has been or hereafter is listed by the Debtors in its Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and, in each case, as to which: (A) no objection to allowance has been interposed within the applicable period fixed

-4-

by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (B) such Claim has been allowed, in whole or in part, by a Final Order; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder. Unless otherwise specified herein or by Order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of computation of distributions under the Plan, include interest on such Claim from and after the Petition Date.

**"APA"** means that certain Asset Purchase Agreement entered into on or about May 9, 2014 between the Purchaser and the Debtors that was approved by the Sale Order.

**"Assets"** means each and every item of property and interest of the Debtors or their respective Estates as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, and includes, without limitation, (i) all assets not otherwise sold by the Debtors under the APA, including but not limited to all Excluded Assets (as defined in the APA); and (ii) all Cash (including, without limitation, all proceeds of the Sale), Chapter 5 Actions, rights in and proceeds of Insurance Policies applicable to Fairmont, and any other rights, privileges, deferred taxes, claims, causes of action or defenses, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law.  For the avoidance of doubt, Fairmont Assets shall not include any Trustee-Held Funds.

**"Bankruptcy Code"** means title 11 of the United States Code, as now in effect or hereafter amended.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of West Virginia, having jurisdiction over the Chapter 11 Cases, or if such Court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and any Local Rules of the Bankruptcy Court, as now in effect or hereafter amended.

**"Bar Date"** means the last date fixed by the Bankruptcy Court for filing proofs of Claim in the Chapter 11 Cases.  For Creditors holding a General Unsecured Claim, except Governmental Units, the Bar Date is February 14, 2014 and for Governmental Units, the Bar Date is March 14, 2014.

**"Beneficiary"** means a "beneficiary," as defined in the Liquidating Trust Agreement.

**"Bond Claims"** means, collectively, the 2007 Bond Claim and the 2008 Bond Claim.

**"Bond Counsel Claims"** means rights, Claims and causes of action of the 2007 Bondholders and/or the Bond Trustee against the bond counsel for the issuance of the 2007 Bonds for, *inter alia*, negligence, malpractice and/or breach of contract and any proceeds thereof,

including, without limitation, any Claims and causes of action arising from the bond counsel's failure to timely file UCC-1 Financing Statements in connection with the 2007 Bonds.

"**Bond Documents**" means, collectively, the 2007 Bond Documents and the 2008 Bond Documents.

"**Bond Trustee**" means UMB Bank, N.A., not individually but as successor indenture trustee under each of (i) the 2007 Indenture and (ii) the 2008 Indenture.

"**Bonds**" means, collectively, the 2007 Bonds and the 2008 Bonds.

"**Business Day**" means any day that is not a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"**Cash**" means cash constituting legal tender of the United States of America, cash equivalents and other readily marketable direct obligations of the United States of America, and fully FDIC-insured certificates of deposit issued by a bank.

"**Causes of Action**" means any and all causes of action, grievances, arbitrations, suits, demands, demand letters, claims, complaints, notices of non-compliance or violation, enforcement actions, investigations or proceedings that belong to the Debtors and/or the Estates that are or may be pending on the Effective Date or that may be instituted or prosecuted by the Liquidating Trustee on behalf of the Estates, or by the Debtor Representative on behalf of the Debtor, against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date including, without limitation:  (i) the right to object to Claims; (ii) all avoidance powers, actions (including all claims and causes of action  arising under chapter 5 of the Bankruptcy Code), rights, remedies or affirmative defenses under the Bankruptcy Code and state law; (iii) all Tort Claims; and (iv) all D&O Claims.

"**Chapter 5 Actions**" means any and all Claims arising under chapter 5 of the Bankruptcy Code and any and all fraudulent conveyance or transfer Claims that, in either instance, could be brought under state or federal law.

"**Chapter 11 Cases**" means the cases commenced by the Debtors under chapter 11 of the Bankruptcy Code styled *In re Fairmont General Hospital, Inc.,* Case No. 13-01054, and *In re Fairmont Physicians, Inc.*, Case No. 3-01055, currently pending in the Bankruptcy Court.

"**Claim**" means a "claim," as defined in section 101(5) of the Bankruptcy Code.

"**Claims Agent**" means Epiq, in its capacity as the appointed claims, noticing and solicitation agent of the Bankruptcy Court pursuant to 28 U.S.C. § 156(c).

"**Claims Register**" means the document generated by the Bankruptcy Court or the Claims Agent that reflects the proofs of Claim filed by Holders of Claims.

"**Class**" means any group of substantially similar Claims classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

"**Closing**" means September 19, 2014, the closing date of the sale of substantially all of the Debtors' assets to the Purchaser pursuant to the APA.

"**Collateral**" means any property or interest in property of the Estates of the Debtors subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

"**Committee Challenge Claims**" means the disputes, challenges and objections asserted by the Committee with respect to the perfection, priority and avoidability of the Bond Trustee's Liens and security interests in respect of the 2007 Bonds and the 2007 Bond Documents.

"**Committee's Professionals**" means (a) the law firm of Sills Cummis & Gross P.C., (b) CohnReznick LLP and (c) any and all other professionals that the Committee has retained or may retain, with Bankruptcy Court approval, to assist in the conduct of the Chapter 11 Cases or to provide professional services for a specified purpose, all in accordance with Bankruptcy Code section 327.

"**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

"**Confirmation Order**" means the entry of the Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"**Creditor**" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

"**Cure**" means, with respect to the assumption of an Executory Contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code, (A) the distribution of Cash, or the distribution of such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties under an Executory Contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law or (B) the taking of such other actions as may be agreed upon by the parties or ordered by the Bankruptcy Court.

"**D&O Claims**" means rights and claims against the Debtors' former directors and officers for, *inter alia*, breach of fiduciary duty and the proceeds of any such claims, including any Insurance Policies associated therewith.

**"D&O Policies"** means, collectively, any "Directors and Officers" and other fiduciary liability insurance policies belonging to the Debtors or under which either of the Debtors is named as an insured or additional insured, including, without limitation, the Not-for-Profit Protector policy issued by National Union Fire Insurance Company of Pittsburgh, Pa., policy number 01-529-48-22.

**"Debtors"** means Fairmont General Hospital, Inc., Fairmont Physicians, Inc. and their Estates.

**"Debtor Representative"** means such person as may be appointed and approved by the Bankruptcy Court as the Debtor Representative.  The Plan Proponents shall identify the Debtor Representative at or prior to Confirmation of the Plan.

**"Deficiency Claim"** means a General Unsecured Claim in an amount equal to the difference between the total Allowed amount of a Claim and the value of any Collateral securing such Claim (*i.e.*, the total Allowed Claim amount minus the Allowed Secured Claim amount).

**"Designated Contract"** means each of those contracts and other agreements and permits identified on Schedule 2.7 of the APA.

**"Disallowed"** means, with reference to any Claim, a Claim or any portion thereof that is or has been disallowed or expunged by Final Order of the Bankruptcy Court.

**"Disclosure Statement"** means the disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**"Disputed Claim"** means any Claim that has not been allowed by a Final Order of the Bankruptcy Court and (i) has not been listed on the Schedules, or has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, regardless of whether a proof of claim has been filed as to such Claim; (ii) as to which the Debtors or, if not prohibited by the Plan, any other party in interest has interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3007, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, or (iii) as to which proof of claim was required to be filed by Order of the Bankruptcy Court but as to which a proof of claim or interest was not timely or properly filed.

**"Distribution(s)"** means any transfer under the Plan of Cash or other property or instruments to a Holder of an Allowed Claim.

**"Distribution Reserve Account"** shall have the meaning attributed to such term in section IV.B.5.a of this Plan.

**"Effective Date"** means the first Business Day after the Confirmation Order becomes a Final Order, and all conditions to the Effective Date as set forth in section XII.A of this Plan have been satisfied or, if waivable, jointly waived by the Debtors and the Committee.

"**Employee Benefit Claims**" means all Claims arising from the Debtors' various nonworking day policies and employee benefit plans and programs, including medical, dental, pharmacy, vision and life programs, and insurance policies, savings and retirement plans, and workers compensation programs, including, but not limited to, claims for reimbursement or contribution under any such policy or program.

"**Entity**" means an "entity," as defined in section 101(15) of the Bankruptcy Code.

"**Epiq**" means Epiq Bankruptcy Solutions, LLC.

"**Estates**" means the Estates created upon the commencement of the Chapter 11 Cases under section 541 of the Bankruptcy Code.

"**Estimated Liquidated Assets**" means the estimated Cash available to the Liquidating Trust as of the Effective Date *minus* the estimated funds reasonably necessary to satisfy the Allowed Unclassified Claims and the Allowed Claims in Class 1, Class 2 and Class 4, calculated pursuant to section VII.B of this Plan.

"**Estimated Liquidated Assets Remainder**" means the Cash available to the Liquidating Trust as of the Effective Date in an amount equal to (i) the Estimated Liquidated Assets *minus* (ii) the Initial Class 3 Distribution.

"**Executory Contract**" means any executory contract or unexpired lease as of the Petition Date, subject to section 365 of the Bankruptcy Code, between a Debtors and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to the Plan or subject to section 1113 of the Bankruptcy Code.

"**Fee Application**" means an application by a Professional for a Professional Compensation and Reimbursement Claim.

"**FGH  General Unsecured Claims**" means any General Unsecured Claim against FGH.

"**FPI Allowed Claims**" means any Allowed Claim against FPI.

"**Final Class 3 Distribution**" shall have the meaning attributed to such term in section IV.B.3 of this Plan.

"**Final Distribution Date**" means the date on which the distribution is made from the Liquidating Trust that finally and fully exhausts the assets of the Liquidating Trust.

"**Final Order**" means an Order of the Bankruptcy Court or any other adjudicative body, which Order has not been stayed, and as to which the time to appeal or to move for reargument or rehearing has expired and no appeal, or motion for reargument or rehearing shall then be pending; provided, however, that the Confirmation Order shall be deemed a Final Order unless it has been stayed.

"**General Unsecured Claim**" or "**Unsecured Claim**" means any Claim against the Debtors that is not secured by collateral and that is not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, or Secured Claim, including, without limitation,

Claims arising from the rejection of an unexpired lease or Executory Contract pursuant to the Plan or otherwise and Deficiency Claims.

"**Governmental Unit**" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

"**GUC Distribution Date(s)**" means: (a) initially, the first Business Day that is thirty (30) days after the Effective Date or as soon as practical thereafter; (b) thereafter, any interim date(s) that the Liquidating Trustee, in consultation with the POC, deems appropriate based on the amount of Liquidation Trust Proceeds on hand, whether there remain any unpaid Administrative Expense Claims or Priority Claims and the amount of General Unsecured Claims (taking into consideration all such Allowed General Unsecured Claims) at the time and the status of pending or potential litigation, if any, affecting such distributions; and (c) thereafter, the Final Distribution Date.

"**Holder**" means the legal or beneficial holder of any Claim against the Estates.

"**Hospital**" means the non-profit community hospital located at 1325 Locust Avenue, Fairmont, West Virginia.

"**Impaired**" means, when used in reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Impaired Classes**" means the classes designated under this Plan as Class 2, Class 3, and Class 5.

"**Initial Class 3 Distribution**" shall have the meaning attributed to such term in section IV.B.3 of this Plan.

"**Insurance Policy**" includes any policy of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that at any time belonged or belongs to or included or includes any Debtors as a named insured, additional insured, or beneficiary, including, without limitation, the D&O Policies.

"**Lien**" means a "lien," as defined in section 101(37) of the Bankruptcy Code.

"**Liquidating Trust**" means the trust to be established pursuant to this Plan and the Liquidating Trust Agreement that will effectuate the wind down of the Debtor, and make distributions pursuant to the terms of the Plan and Liquidating Trust Agreement. With respect to any action required or permitted to be taken by the Liquidating Trust, the term includes the Liquidating Trust Committee or any other person authorized to take such action in accordance with the Liquidating Trust Agreement.

"**Liquidating Trust Agreement**" means that certain agreement which will be entered into prior to the Effective Date by the Debtors and the Liquidating Trustee pursuant to Article VII of the Plan, will be subject to approval by the Bankruptcy Court, and will become part of the Plan pursuant to the Confirmation Order. The Liquidating Trust Agreement will be filed with Bankruptcy Court prior to Confirmation.

"**Liquidating Trust Distributable Cash**" means Cash and any other assets of the Liquidating Trust reduced to Cash net of the Liquidating Trust Expense Reserve and all expenses and costs of operating or effectuating the duties of the Liquidating Trust.

"**Liquidating Trust Estate**" means collectively, (i) all Assets transferred to the Liquidating Trust pursuant to this Plan on the Effective Date or at any time thereafter pursuant to this Plan, and (ii) such additional or different corpus as the Liquidating Trustee may from time to time acquire and hold in trust pursuant to the Liquidating Trust Agreement.

"**Liquidating Trust Expense Reserve**" means the reserve established by the Liquidating Trustee to pay the Post-Effective Date Expenses.

"**Liquidating Trustee**" means such person or entity as may be appointed and approved by the Bankruptcy Court as the trustee of the Liquidating Trust as of the date of execution of the Liquidating Trust Agreement, and any successor Liquidating Trustee appointed as provided in the Liquidating Trust Agreement.  Any changes to the identity of the Liquidating Trustee will be subject to approval of the Bankruptcy Court, and will become part of the Plan pursuant to the Confirmation Order.  The Plan Proponents shall identity the Liquidating Trustee prior to Confirmation of the Plan.

"**Liquidating Trustee Professionals**" means professionals for whom retention has been or is sought by the Liquidating Trustee for carrying out the objectives of the Liquidating Trust Agreement.

"**Liquidation Trust Proceeds**" means (a) the Cash transferred to the Liquidating Trustee on the Effective Date; (b) the Cash proceeds or other proceeds of sale, collection, or other liquidation of any of the Assets after payment of all costs, expenses, and commissions of such sale, collection, or other disposition of the Assets; and (c) all Cash or other proceeds from the ownership of the Assets, including Chapter 5 Action recoveries; provided, however, that the Liquidation Trust Proceeds will not include the Liquidating Trust Expense Reserve, except as provided in the definition of Liquidating Trust Expense Reserve.

"**Net Sale Proceeds**" means proceeds from the sale of the Debtors' assets to the Purchaser, net of the amounts necessary to satisfy administrative claims and repay the DIP facility.

"**Order**" means an order or judgment of the Bankruptcy Court or other adjudicative body.

"**Other Administrative Expense Claim**" means an Administrative Expense Claim that was not required to be filed with the Court or the Claims Agent on or before the Administrative Expense/Priority Claim Bar Date, but shall not include Professional Compensation and Reimbursement Claims.

"**Other Lienholders**" means the Holders of Liens against property of the Debtors or the Estates, other than the Liens held by the Bond Trustee.

"**Patient Care Ombudsman**" means Suzanne Koenig, the patient care ombudsman as retained by Order of the Bankruptcy Court.

"**Person**" means a "person," as defined in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means September 3, 2013, the date on which the Debtors filed their voluntary petitions for relief commencing the Chapter 11 Cases.

"**Plan**" means this plan of orderly liquidation under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, or modified from time to time.

"**Plan Oversight Committee**" or "**POC**" means the committee of persons appointed as of the Effective Date to advise and instruct the Liquidating Trustee in the performance of the Liquidating Trustee's duties and obligations under the Plan with respect to the liquidation of Assets for the benefit of the holders of Allowed Claims in Class 5 of the Plan.

"**Plan Proponents**" means the Debtors and the Committee.

"**Post-Effective Date Expense(s)**" means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or unliquidated incurred by the Liquidating Trust after the Effective Date until the Liquidating Trust is dissolved, including, but not limited to, those expenses described in section VII.E of this Plan.

"**Post-Effective Date Notice List**" means the list, created pursuant to section XII.F of the Plan, of persons who desire to receive notices after the Effective Date of the Plan.

"**Postpetition Financing**" means Debtor-in-possession ("**DIP**") financing provided by Fundamental Advisors LP pursuant to that certain *Final Order Authorizing Debtors to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 362, and 364* [Doc. No. 250], and the related terms and conditions of postpetition financing.

"**Predecessor Bond Trustee**" means WesBanco Bank, Inc., as predecessor indenture trustee under each of (i) the 2007 Indenture and (ii) the 2008 Indenture.

"**Predecessor Trustee Claims**" means rights, Claims and causes of action of the 2007 Bondholders and/or the Bond Trustee against the Predecessor Bond Trustee for, *inter alia*, negligence, breach of duty and/or breach of contract and any proceeds thereof.

"**Priority Claim**" means any Priority Non-Tax Claim or Priority Tax Claim.

"**Priority Non-Tax Claim**" means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"**Priority Tax Claim**" means any claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**"Pro Rata"** means a number (expressed as a percentage) equal to the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of: (a) Allowed Claims plus (b) Claims, Disputed or undisputed, otherwise asserted but not yet Disallowed (in their aggregate face or, if applicable, estimated amount) in such Class as of the date of determination.

**"Professional"** means a Person or Entity employed pursuant to a Final Order in accordance with sections 327 or 1102 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 and/or 331 of the Bankruptcy Code, or for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**"Professional Compensation and Reimbursement Claim"** means a Claim of a Professional pursuant to sections 330(a) and 503(b)(2) of the Bankruptcy Code for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to the Effective Date.

**"Purchaser"** means Alecto Healthcare Services Fairmont LLC, the purchaser of substantially all of the Assets pursuant to the APA.

**"Record Date"** means the Confirmation Date.

**"Released Parties"** means, collectively and individually, (i) the Debtors' attorneys, accountants, agents and other professionals, (ii) the Committee and its members, attorneys, accountants, agents and other professionals, (iii) the Bond Trustee, in any capacity, and its attorneys, accountants, agents, employees and other professionals, and (iv) the POC and its members, attorneys, accountants, agents and other professionals.

**"Sale"** means the sale of substantially all of the Debtors' real and personal property assets and other intangible property to the Purchaser pursuant to the terms of the APA, which was approved by the Sale Order.

**"Sale Order"** means the *Order (I) Approving the Asset Purchase Agreement with Alecto Healthcare Services Fairmont LLC; (II) Approving the Assumption and Assignment of Certain Related Executory Contracts and Unexpired Leases; (III) Authorizing the Debtors' Sale of Substantially all their Assets; and (IV) Granting Related Relief* entered by the Bankruptcy Court on July 1, 2014 as Docket No. 851.

**"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtors with the Bankruptcy Court, pursuant to section 521(a) of the Bankruptcy Code, Bankruptcy Rule 1007(b), and the Official Bankruptcy Forms, as may be amended from time to time.

**"Section 503(b)(9) Administrative Claim"** means a Claim against the Debtors alleged to be entitled to an administrative expense priority under section 503(b)(9) of the Bankruptcy Code for goods sold to the Debtors in the ordinary course of the Debtors' business and received by the Debtors within 20 days before the Petition Date.

**"Secured Claim"** means a Claim that is secured by a Lien on property in which the Estates has or had an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; provided, however, that a Secured Claim shall not include any portion of the Claim to the extent that the value of such entity's Collateral is less than the amount of such Claim.  Nothing herein revives or preserves any Lien on property sold free and clear pursuant to the APA.

**"Secured Creditor"** means a Creditor that holds a Secured Claim in the Chapter 11 Cases.

"**Supplemental Class 3 Distributions**" shall have the meaning attributed to such term in section IV.B.3 of this Plan.

**"Tort Claims"** means any and all claims of the Debtors against any of their former professionals, including, without limitation, any and all claims against the Debtors' former auditors Arnett Foster Toothman PLLC.

**"Trustee-Held Funds"** means any funds, accounts or securities held or administered by the Bond Trustee pursuant to the 2007 Indenture and the 2008 Indenture, including, without limitation, the bond funds, the debt service reserve funds, and the rebate accounts thereunder.

 **"Unclassified Claim"** means any Claim that is not part of any Class, including Administrative Expense Claims and Priority Tax Claims.

**"U.S. Trustee"** means the Office of the United States Trustee for the Northern District of West Virginia, Clarksburg Division.

**"Voting Deadline"** means April 1, 2015 at 5:00 p.m. Eastern time, the date fixed by the Bankruptcy Court Order approving the Disclosure Statement.

**B.**     **Interpretation, Rules of Construction, Computation of Time**

**1.**     **Defined Terms**

Any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

**2.**     **Rules of Interpretation**

For purposes of this Plan:

a.     whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;

b.      any reference in this Plan to a contract, lease, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

c.      any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented through and including the Confirmation Date, which, after they are filed, may be amended, modified or supplemented only with the express written consent of the Plan Proponents;

d.      unless otherwise specified in a particular reference, all references in the Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to the Plan;

e.      the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

f.      captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

g.      all exhibits to the Plan are incorporated herein, regardless of when those exhibits are filed;

h.      to the extent any discrepancy exists between the description contained herein of a document or agreement that is an exhibit to the Plan and with the provisions of that exhibit, the actual agreement or document shall govern;

i.      the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;

j.      nothing in this Plan shall be deemed to effect a substantive consolidation of the Debtors' Estates.  Any reference to "Debtor", "Allowed Claims" and/or "Distributions" in section IV of this Plan (except section IV.B.6) shall be solely with respect to FGH and FGH's creditors and shall not apply to FPI or FPI's creditors.  The treatment of Allowed Claims against FPI's Estate is set forth exclusively in section IV.B.6 of this Plan; and

k.      nothing in this Plan shall be deemed to effect a release or waiver of any 2007 Bond Cause of Action, all of which 2007 Bond Causes of Action are expressly reserved by the 2007 Bondholders and/or the Bond Trustee as set forth herein.

**3.      Time Periods**

a.      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

b.      Whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date, or as soon as practicable thereafter.

**III.**

## DESIGNATION OF CLASSES OF CLAIMS

The following is a designation of the Classes of Claims for all purposes, including voting, confirmation, and Distribution pursuant to the Plan and sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim and has not been paid, released, or otherwise satisfied before the Effective Date.

This Plan is intended to deal with all Claims against the Debtors of whatever character, whether known or unknown, whether or not with recourse, whether or not contingent or unliquidated, and whether or not previously Allowed by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code.  **However, only Holders of Allowed Claims will receive any distribution under this Plan.**  For purposes of determining Pro Rata distributions under this Plan and in accordance with this Plan, Disputed Claims shall be included in the Class in which such Claims would be included if Allowed, until such Claims are finally Disallowed.  This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date. Classified Claims shall receive the treatment described in section IV.B herein.

**A.    Classes of Claims**

      1.    **Class 1** consists of Priority Non-Tax Claims of the Debtor.

      2.    **Class 2** consists of the Allowed 2008 Bond Claim.

      3.    **Class 3** consists of the Allowed 2007 Bond Claim.

      4.    **Class 4** consists of Claims that are Secured Claims of Other Lienholders.

      5.    **Class 5** consists of all FGH General Unsecured Claims.

      6.    **Class 6** consists of all FPI General Unsecured Claims.

**B.    Impaired Classes**

Classes 3, 5 and 6 are Impaired under the Plan.  The treatment of Allowed Claims in the Impaired Classes in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights of each Holder of an Allowed Claim in the Impaired Classes.  Holders of Claims in the Impaired Classes are entitled to vote on the Plan.

**C.    Terms of Confirmed Plan Control Unless Otherwise Specified**

If the Plan is confirmed by the Bankruptcy Court, except as specifically set forth in this Plan and the Confirmation Order, the treatment of Claims set forth in the Plan and the Confirmation Order supersedes and replaces any agreements or rights the Holders of the Claims

2564228

have in or against the Debtors or their property.  **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN OR IN THE CONFIRMATION ORDER, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM, WHETHER AN ALLOWED CLAIM OR NOT.**

**D.**    **Holders of Claims as of Record Date**

All Distributions under the Plan will be tendered to the Holders of the Allowed Claims effective as of the Record Date.

**IV.**

**TREATMENT OF CLAIMS**

**A.**    **Unclassified Claims**

Certain types of Claims are not placed into Classes; instead, such Claims are Unclassified Claims.  Such Unclassified Claims are not considered Impaired and their Holders do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Plan Proponents did not place the following Claims in a Class. The respective treatment for these Claims is provided below.

**1.**    **Administrative Expense Claims**

a.    General

Subject to the allowance procedures and the deadlines provided in this Plan, except to the extent any entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of its Allowed Administrative Expense Claim, Cash in an amount equal to the amount of such Allowed Administrative Expense Claim, on or before the later of the date that is ten (10) Business Days after (i) the Effective Date and (ii) the date of entry of a Final Order determining and allowing such Claim as an Allowed Administrative Expense Claim, or as soon thereafter as is practicable.

b.    Claims for Employee Benefits

All Employee Benefit Claims that have not been paid as of the Effective Date, and for which no proof of Claim has been filed, shall be Disallowed and expunged as of the Effective Date.  Not later than the Effective Date, any and all of the Debtors' obligations relating to employee benefits (including any self-funding obligations) shall be terminated and of no further force or effect, other than the obligation to satisfy any Allowed Employee Benefit Claims under this Plan.

c.    Professional Compensation and Reimbursement Claims

All Professionals seeking payment of Professional Compensation and Reimbursement Claims shall file their respective final Fee Applications no later than sixty (60) days after the

-17-

Effective Date.  All Professional Compensation and Reimbursement Claims shall be treated as Administrative Expense Claims as set forth in section 4(A)(1)(a) above, or shall be paid on such other terms as may be mutually agreed upon between the Holder of an Allowed Professional Compensation and Reimbursement Claim and the Debtor, or the Liquidating Trustee, as the case may be.  Failure to timely file a final Fee Application shall result in the Professional Fee Compensation and Reimbursement Claim being forever barred and discharged.

        d.       <u>Priority Tax Claims</u>

In full satisfaction of an Allowed Priority Tax Claim, except to the extent any entity entitled to payment of any Allowed Priority Tax Claim has received payment on account of such Claim prior to the Effective Date, each Holder of such Allowed Priority Tax Claim, if any, shall receive Cash equal to the amount of such Claim on or before the later of the date that is ten (10) Business Days after (i) the Effective Date and (ii) entry of a Final Order allowing such Priority Tax Claim, or as soon thereafter as is practicable, unless such Holder shall have agreed to different treatment of such Allowed Claim.

        e.       <u>Statutory Fees</u>

On or before the date that is thirty (30) days after the Effective Date, the Liquidating Trustee shall make all payments required to be paid to the U.S. Trustee pursuant to section 1930 of Title 28 of the United States Code.  All fees payable pursuant to section 1930 of Title 28 of the United States Code after the Effective Date shall be paid by the Liquidating Trustee on a quarterly basis until the Chapter 11 Cases are closed, converted, or dismissed.

**B.**      **Classified Claims**

The Allowed Claims classified in Article IV of this Plan shall be deemed satisfied in the manner set forth herein unless the Holder of such Allowed Claim agrees to accept less favorable treatment.

      **1.**      **Class 1 – Priority Non-Tax Claims**

Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of each Priority Non-Tax Claims, each Holder of an Allowed Class 1 Claim, if any, will receive Cash equal to such Allowed Class 1 Claim, without interest, on or before the later of the date that is thirty (30) Business Days after (i) the Effective Date and (ii) entry of a Final Order allowing such Claim, or as soon thereafter as is practicable.  Any Priority Non-Tax Claim, proof of which was required to be filed on or before the Bar Date but was not timely filed, is and shall be Disallowed and expunged, effective on the Effective Date.

Class 1 is not Impaired and, therefore, Holders of Allowed Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject this Plan.  Each Holder of an Allowed Class 1 Priority Non-Tax Claim is conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

Objection procedures with respect to Allowed Class 1 Claims are set forth in section VII.P of this Plan.

### 2. Class 2 – Allowed 2008 Bond Claim

As of the Effective Date, the Allowed 2008 Bond Claim shall be deemed Allowed for all purposes under this Plan in the amount of $2,742,618 less the aggregate amount of Trustee-Held Funds held by the Bond Trustee in respect of the 2008 Bonds. Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of the Allowed 2008 Bond Claim, on or before the date that is ten (10) Business Days after the Effective Date, the Liquidating Trustee shall transfer to the Bond Trustee, for the benefit of the Holders of the 2008 Bonds, Cash in an amount equal to (x) $2,742,618 *minus* (y) the aggregate amount of Trustee-Held Funds held by the Bond Trustee in respect of the 2008 Bonds, which Cash shall be administered, applied and distributed in accordance with the 2008 Bond Documents.

Class 2 is Not Impaired and, therefore, the Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject this Plan.

### 3. Class 3 – Allowed 2007 Bond Claim

As of the Effective Date, the Allowed 2007 Bond Claim shall be deemed Allowed for all purposes under this Plan in the amount of $12,193,827 less the aggregate amount of Trustee-Held Funds held by the Bond Trustee in respect of the 2007 Bonds. All 2007 Bond Distributions detailed in this section IV.B.3 shall be administered, applied and distributed in accordance with the 2007 Bond Documents. Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of the Allowed 2007 Bond Claim, the Deficiency Claim and in partial consideration for the agreement to transfer certain proceeds of the 2007 Bond Causes of Action to the Liquidating Trust, the Allowed 2007 Bond Claim shall receive the following treatment:

a. Initial Distribution

On or before the date that is ten (10) Business Days after the Effective Date, the Liquidating Trustee shall transfer to the Bond Trustee, for the benefit of the Holders of the 2007 Bonds, Cash in the amount equal to (i) $3,500,000, if the Estimated Liquidated Assets *equals or exceeds $4,000,000*, or (ii) 85% of the Liquidating Trust Distributable Cash, if the Estimated Liquidated Assets is *less than $4,000,000* (the "**Initial Class 3 Distribution**").

b. Supplemental Distributions

After the Initial Distribution is made, from time-to-time after the Effective Date, as soon and as often as is reasonably practicable from the liquidation of the Additional Sources of Cash, the Liquidating Trustee shall transfer to the Bond Trustee, for the benefit of the Holders of the 2007 Bonds, Cash in an amount equal to (i) 85% of such Additional Sources of Cash until the aggregate amount of Distributions to the Bond Trustee, for the benefit of the Holders of the 2007 Bonds (including the Initial Class 3 Distribution), equals $3,500,000, and thereafter (ii) 50% of such Additional Sources of Cash until the aggregate amount of Distributions to the Bond

Trustee, for the benefit of the Holders of the 2007 Bonds equals $4,250,000 (each of the foregoing, a "**Supplemental Class 3 Distribution**").

To the extent that the aggregate amount of Distributions to the Bond Trustee, for the benefit of the Holders of the 2007 Bonds (*i.e.*, the sum of the Initial Class 3 Distribution and the Supplemental Class 3 Distributions) reaches $4,250,000, all Assets, including any Cash from the Estimated Liquidated Assets and the Additional Sources of Cash in excess of $4,250,000 shall be used to satisfy the Allowed Class 5 General Unsecured Claims consistent with the terms of this Plan, subject to section c below.  For the avoidance of doubt, the Bond Trustee shall receive no further Distributions under the Plan unless and until Holders of Allowed Class 5 General Unsecured Claims receive Distributions equal to 10% of all such Allowed Class 5 General Unsecured Claims in accordance with section IV.B.5.b of this Plan.

c.    Final Distributions

If and when, after (i) all required Supplemental Class 3 Distributions have been made to Class 3 and (ii) Distributions have been made to the Holders of Allowed General Unsecured Claims in an aggregate amount equal to or greater than 10% of such Allowed General Unsecured Claims, then from time-to-time after the Effective Date and as soon and as often as is reasonably practicable, the Liquidating Trustee shall transfer to the Bond Trustee, for the benefit of the Holders of the 2007 Bonds, Cash from the liquidation of the Additional Sources of Cash in an amount equal to 40% of such Cash until the Allowed 2007 Bond Claim is fully satisfied (each such distribution, a "**Final Class 3 Distribution**" and, together with the Initial Class 3 Distribution and all Supplemental Class 3 Distributions, the "**2007 Bond Distributions**").

d.    Proceeds of the 2007 Bond Causes of Action

The Bond Trustee or the majority Holder of the 2007 Bonds will pursue, prosecute and/or litigate the 2007 Bond Causes of Action in its discretion.  The expenses associated with the prosecution of the 2007 Bond Causes of Action shall constitute Post-Effective Date Expenses and shall be paid or reimbursed by the Liquidating Trustee from the assets of the Liquidating Trust to the extent available.

In partial consideration for the Initial Class 3 Distribution, the Supplemental Class 3 Distributions and the Final Class 3 Distributions provided to the Holders of 2007 Bonds pursuant to this Plan, and in partial settlement and compromise of the Committee Challenge Claims hereunder, on or after the Effective Date, upon the entry of a final judgment or settlement of any of the 2007 Bond Causes of Action, the Bond Trustee or the majority Holder of the 2007 Bonds shall transfer one hundred percent (100%) of the net proceeds of such judgment and/or settlement to the Liquidating Trust for Distribution in accordance with sections IV.B.3.a-c and IV.B.5.

Class 3 is Impaired and, therefore, the Holders of Allowed Class 3 Claims are entitled to vote to accept or reject this Plan.

4.     **Class 4 – Secured Claims of Other Lienholders**

In the sole discretion of the Plan Proponents, the Holder of an Allowed Class 4 Secured Claim shall be treated in one of the following ways:

a.     on the Effective Date, the legal, equitable, and contractual rights of each Holder of an Allowed Secured Claim shall be reinstated in accordance with the provisions of section 1124(2) of the Bankruptcy Code notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Secured Claim to demand or receive payment of such Allowed Secured Claim before the stated maturity of such Allowed Secured Claim from and after the occurrence of a default; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, covenants regarding corporate existence, or covenants prohibiting certain transactions or actions contemplated by the Plan or conditioning such transactions or actions on certain factors, shall not be enforceable as to any breach that occurred on or prior to the Effective Date or any breach determined by reference back to a date preceding the Effective Date;

b.     on the Effective Date, the Holder of an Allowed Secured Claim shall (i) retain a Lien securing such Allowed Secured Claim and (ii) receive deferred Cash payments from the Liquidating Trust totaling at least the value of such Allowed Secured Claim as of the Effective Date;

c.     on the Effective Date, the collateral securing such Allowed Secured Claim shall be surrendered to the Holder of such Allowed Secured Claim in full satisfaction of such Allowed Secured Claim; or

d.     the Holder of an Allowed Secured Claim shall be paid, in Cash, an amount equal to such Holder's Allowed Secured Claim, on or before the later of the date that is ten (10) Business Days after (i) the Effective Date and (ii) entry of a Final Order allowing such Claim as a Secured Claim, or as soon thereafter as is practicable.  To the extent the collateral securing an Allowed Secured Claim has been or is to be sold pursuant to an Order of the Bankruptcy Court, the amount to be paid to the Holder of such Allowed Secured Claim pursuant to the preceding sentence shall be net of the costs of sale of such collateral and otherwise subject to the rights of the Debtors or the Liquidating Trustee pursuant to section 506(c) of the Bankruptcy Code.

The failure to object to any Secured Claim in the Chapter 11 Cases shall be without prejudice to rights of the Debtors or the Liquidating Trustee to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of such Secured Claim.

Notwithstanding section 1141(c) or any other provision of the Bankruptcy Code, all pre-petition Liens on property of the Debtors held with respect to a Secured Claim shall survive the Effective Date and continue in accordance with the contractual terms or statutory provisions governing such Claim until such Allowed Claim is satisfied, at which time such Lien shall be released, shall be deemed null and void, and shall be unenforceable for all purposes; provided, however, that the Debtors or Liquidating Trustee, as the case may be, may condition delivery of

any final payment upon receipt of an executed release of the Lien.  Any and all Liens securing any Secured Claim that is not an Allowed Claim shall be released, shall be deemed null and void, and shall be unenforceable for all purposes.  Nothing in this Plan shall preclude the Debtors or the Liquidating Trustee from challenging the validity of any alleged Lien on any asset of the Debtors or the value of the property that secures any alleged Lien.

Class 4 is not Impaired and, therefore, Holders of Class 4 Secured Claims are not entitled to vote to accept or reject this Plan.  Each Holder of a Class 4 Secured Claim is conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

Class 4 shall not affect any General Unsecured Claim for any Allowed Deficiency Claim of the Holder

No Lien with respect to any Secured Claim shall attach to any property sold free and clear pursuant to the APA.

5.   **Class 5 – FGH General Unsecured Claims**

a.   <u>Initial Funding of Liquidating Trust; Distribution Reserve Account</u>

The Liquidating Trust shall be initially funded through the payment of the Estimated Liquidated Assets Remainder and all other Assets of the Debtors.

The Liquidating Trustee shall establish a distribution reserve account (the "**Distribution Reserve Account**") for the purposes of making Distributions to Holders of an Allowed Class 5 General Unsecured Claims.  The Liquidating Trustee shall have sole discretion to determine the amount to be funded into the Distribution Reserve Account provided that such discretion is not exercised in a manner that is inconsistent with the express provisions of this Plan, including, without limitation, section IV.B.3 hereof.  Upon the Effective Date, to the extent that any amounts from the Estimated Liquidated Assets and the Additional Sources of Cash exceeds $5,000,000, the Liquidating Trustee shall fund the  Distribution Reserve Account in an amount of not less than $500,000.

b.   <u>Distributions to Allowed General Unsecured Claims</u>

After the Initial Class 3 Distribution is made and consistent with the treatment of Class 3 Allowed 2007 Claim in section IV.B.3 hereof, from time-to-time after the Effective Date, and as soon and as often as is reasonably practicable, the Liquidating Trustee shall, in his discretion, deposit Cash into the Distribution Reserve Account for Distributions to Holders of Class 5 Allowed General Unsecured Claims.  The amounts funded to the Distribution Reserve Account shall be net of amounts necessary to satisfy Claims under this Plan and net of reasonable and appropriate reserves for the administration of the Liquidating Trust and expenses of the Debtor Representative.

Thereafter (*i.e.*, after aggregate Distributions have been made to the Bond Trustee, for the benefit of the Holders of the 2007 Bonds consistent with section IV.B.3.b of this Plan), the Liquidating Trustee shall, subject to his discretion, create and maintain appropriate reserves, deposit any additional Cash proceeds into the Distribution Reserve Account for the satisfaction

of Class 5 Allowed General Unsecured Claims until the amount deposited in such reserve reaches an amount equal to 10% of such Allowed General Unsecured Claims.

Consistent with section IV.B.3.c of this Plan, if and when, after (i) all required Supplemental Class 3 Distributions have been made to Class 3 and (ii) Distributions have been made to the Holders of Allowed General Unsecured Claims in an aggregate amount equal to 10% of such Allowed General Unsecured Claims, then from time-to-time after the Effective Date, and as soon and as often as is reasonably practicable, the Liquidating Trustee shall deposit Cash proceeds from Additional Sources of Cash into the Distribution Reserve Account in an amount equal to 60% of such Cash until all Allowed General Unsecured Claims are fully satisfied.

        c.      <u>Payments from the Liquidating Trust</u>

Each Holder of an Allowed Class 5 Claim shall receive, in full and final satisfaction of its Allowed Class 5 Claim, a Pro Rata share of the monies to be distributed on account of Allowed Class 5 Claims by the Liquidating Trust (subject to establishment of an appropriate reserve pending final determination and payment of Allowed Administrative Claims and Allowed Priority Claims) from the Distribution Reserve Account pursuant to this Plan.

Payments to each Holder of an Allowed Class 5 Claim shall be made on the Distribution Dates, and in accordance with this Plan.  Any Class 5 Claim, proof of which was required to be filed by the Bar Date and was not timely filed, is and shall be Disallowed and expunged, effective on the Effective Date.

The failure to object to any Class 5 General Unsecured Claim in the FGH Chapter 11 Case shall be without prejudice to rights of the Debtors or the Liquidating Trustee to contest or object to such Claim.

Class 5 is Impaired and, therefore, the Holders of Allowed Class 5 Claims are entitled to vote to accept or reject this Plan.

**6.      Class 6 – FPI Allowed Claims**

Distributions to Holders of FPI Allowed Claims shall be made solely from the net proceeds (if any) of any Causes of Action of FPI in accordance with priorities set forth in the Bankruptcy Code.

Payments to each Holder of an Allowed Class 6 Claim shall be made on the Distribution Dates, and in accordance with this Plan.  Any Class 6 Claim, proof of which was required to be filed by the Bar Date and was not timely filed, is and shall be Disallowed and expunged, effective on the Effective Date.

The failure to object to any Class 6 Claim in the FPI Chapter 11 Case shall be without prejudice to rights of the Debtors or the Liquidating Trustee to contest or object to such Claim.

Class 6 is Impaired and, therefore, the Holders of Allowed Class 6 Claims are entitled to vote to accept or reject this Plan.

## V.

## ACCEPTANCE OR REJECTION OF THIS PLAN

**A.      Voting Classes**

Holders of Allowed Claims in each Impaired Class, or their designees, shall be entitled to vote separately to accept or reject the Plan.  Each Holder of an Allowed Claim in Class 2, 3 or 5 is entitled to vote to accept or reject the Plan.

**B.      Controversy Concerning Impairment**

In the event of a controversy as to whether any Holder of an Allowed Claim or Class is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

**C.      Acceptance by Impaired Classes**

An Impaired Class of Claims shall be deemed to have accepted the Plan if (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**D.      Non-Consensual Confirmation**

At the request of the Plan Proponents, this Plan may be confirmed under the so-called "cram down" provisions set forth in section 1129(b) of the Bankruptcy Code if, in addition to satisfying the other requirements for confirmation (other than section 1129(a)(8) of the Bankruptcy Code), this Plan "does not discriminate unfairly" and is determined to be "fair and equitable" with respect to each Class of Claims that has not accepted this Plan (i.e., dissenting Classes).  The Plan Proponents will request confirmation under this provision for any Impaired Class that rejects the Plan.  The Plan Proponents reserve the right to alter, amend, modify, revoke or withdraw the Plan or any amendment or supplement thereto, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary, in accordance with section 1127 of the Bankruptcy Code and this Plan.

## VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date and subject to this section VI.A and VI.C, all Executory Contracts and unexpired leases of the Debtors will be deemed rejected, as of the Effective Date, other than: (i) Executory Contracts and unexpired leases that were previously assumed, assumed and assigned or rejected by Final Order of the Bankruptcy Court (which contracts will be treated in

accordance with such Final Order); and (ii) Designated Contracts.  The Confirmation Order will constitute an Order approving the foregoing.

**B.** **Bar Date for Rejection Damages**

If the rejection of an Executory Contract or unexpired lease pursuant to the Plan and the Confirmation Order or a previous or subsequent order of the Court gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Liquidating Trust, or the Estates unless a proof of Claim is filed and served on the Debtors or the Liquidating Trust, as the case may be, and its counsel within thirty (30) days after the Confirmation Date.  Notwithstanding the foregoing, to the extent that any such Claim is or was subject to a previously-established bar date in the Chapter 11 Cases, such previously-established bar date shall be deemed operative and will not be deemed extended by virtue of this section VI.B.  All such Claims for which proofs of Claim are required to be filed for contracts in which FGH is a party, if Allowed, will be classified and treated as Class 5 General Unsecured Claims, subject to the provisions of the Plan.  All such Claims for which proofs of Claim are required to be filed for contracts in which FPI is a party, if Allowed, will be classified and treated as Class 6 General Unsecured Claims, subject to the provisions of the Plan.

**C.** **Insurance Policies**

For the avoidance of doubt, the Debtors' rights with respect to all Insurance Policies under which either of the Debtors may be a beneficiary (including all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by the Debtors after the Petition Date, and all Insurance Policies under which either of the Debtors holds rights to make, amend, prosecute and benefit from claims) shall revest in the Debtor Representative as necessary to pursue and prosecute any Causes of Action and to the extent that any Insurance Policies are not necessary for the pursuit and prosecution of any Causes of Action, all such Insurance Policies shall be transferred to the Liquidating Trust from the Effective Date until its dissolution, unless any such Insurance Policy is otherwise cancelled by the Liquidating Trustee in its discretion.  Notwithstanding any provision providing for the rejection of Executory Contracts, any Insurance Policy that is deemed to be an Executory Contract shall neither be rejected nor assumed by operation of this Plan and shall be the subject of a specific motion by the Liquidating Trust, which shall retain the right to assume or reject any such Executory Contracts pursuant to and subject to the provisions of section 365 of the Bankruptcy Code following the Effective Date.

The Confirmation Order shall constitute a determination that no default by the Debtors exists with respect to any of the Insurance Policies requiring Cure and that nothing in the Sale Order, any underlying agreements or this Plan shall be construed or applied to modify, impair or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any Claims, including the D&O Claims.  The Plan shall be liberally construed to protect the interests of all Creditors in all Causes of Action and to limit any Claims against the Estates.

# VII.

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### A.      Overview

This Plan provides for the disposition of substantially all of the Assets and the distribution of the net proceeds thereof to Holders of Allowed Claims, consistent with the priority provisions of the Bankruptcy Code.  This Plan also creates a mechanism for the Liquidating Trustee and Debtor Representative to pursue Claims and Causes of Action, including the D&O Claims, to enable recoveries to Creditors herein.

### B.      No Substantive Consolidation

Nothing contained herein shall be deemed to consolidate the Estates of FGH and FPI.  As set forth herein, any reference to "Debtor", "Allowed Claims" and/or "Distributions" in section IV of this Plan (except section IV.B.6) shall be solely with respect to FGH and FGH's creditors and shall not apply to FPI or FPI's creditors

### C.      Calculation of Estimated Liquidated Assets

Prior to the Effective Date, the Debtors, the Committee, the Bond Trustee and their respective professionals shall undertake in good faith to jointly calculate the amount of Estimated Liquidated Assets available to the Liquidating Trust.  To the extent that the parties cannot reach agreement on the calculation, any of them may seek a judicial determination or estimation of Estimated Liquidated Assets for purposes of effecting Distributions under this Plan.

### D.      Establishment of Liquidating Trust; Appointment of Liquidating Trustee and Debtor Representative; Revesting of D&O Claims in Estates; Assigned Claims

Prior to the Effective Date, the Debtors shall execute the Liquidating Trust Agreement. The Liquidating Trust Agreement is hereby incorporated into this Plan in its entirety as if set forth in full.  The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to ensure the continued treatment of the Liquidating Trust as a grantor trust.

On the Effective Date, and in accordance with the Confirmation Order, the Estates' title to all of the Assets, (other than the D&O Claims which shall revest in the Debtors and shall be pursued by the Debtor Representative), shall automatically pass to the Liquidating Trust, free and clear of all Claims and equity interests in accordance with section 1141 of the Bankruptcy Code.  Notwithstanding the foregoing, the Plan Proponents reserve the right to modify the Plan to exclude certain Assets from transfer to the Liquidating Trust. The Confirmation Order shall constitute a determination that the transfers of the Assets to the Liquidating Trust are legal and valid and consistent with the laws of the State of West Virginia.

All parties shall execute any documents or other instruments as necessary to cause title to the Assets to be transferred to the Liquidating Trust.  The Assets will be held in trust for the

benefit of all Holders of Allowed Claims pursuant to the terms of the Plan and the Liquidating Trust Agreement.

The Liquidating Trustee will be appointed as of the date of execution of the Liquidating Trust Agreement.  The Liquidating Trustee will pay or otherwise make distributions on account of all Allowed Claims against the Debtors in accordance with the terms of the Plan.

On the Effective Date, a Debtor Representative shall be appointed pursuant to section 1123(b)(3) of the Bankruptcy Code.

On the Effective Date, the Estates' interest in any D&O Claims and Tort Claims and rights in and proceeds of any Insurance Policies necessary for the prosecution of all such Claims will revest in the Debtor. The Debtor Representative shall be authorized to institute and to prosecute through final judgment or settle the D&O Claims and Tort Claims.  Upon the entry of a final judgment or settlement, the relevant proceeds of the D&O Claims shall be transferred to the Liquidating Trust for the benefit of the Holders of Allowed Claims, in accordance with the provisions of this Plan.

**This Plan shall be interpreted so as to afford, for the benefit of all Holders of Allowed Claims, the greatest opportunity for maximum recovery by the Liquidating Trustee and the Debtor Representative on the Assets, D&O Claims and rights in and proceeds of any Insurance Policies.  The Proceeds of All Causes of Action and any Proceeds to be Received from the 2007 Bond Causes of Action are Material to the Implementation of this Plan and the Recoveries to Creditors Herein.**

### E.    Income Tax Status

For federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Beneficiaries of the Liquidating Trust Estates) shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124.  For federal income tax purposes, the transfer of Assets to the Liquidating Trust under the Plan shall be treated as a deemed transfer to the Beneficiaries of the Liquidating Trust Estates in satisfaction of their Claims followed by a deemed transfer of the Assets by the Beneficiaries to the Liquidating Trust. For federal income tax purposes, the Beneficiaries will be deemed to be the grantors and owners of the Liquidating Trust and its assets.  For federal income tax purposes, the Liquidating Trust will be taxed as a grantor trust within the meaning of IRC sections 671-677 (a non-taxable pass-through tax entity) owned by the Beneficiaries.  The Liquidating Trust will file federal income tax returns as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 and report, but not pay tax on, the Liquidating Trust's tax items of income, gain, loss deductions and credits ("**Tax Items**").  The Beneficiaries will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability.  All parties will use consistent valuations of the assets transferred to the Liquidating Trust for all federal income tax purposes.  The assets shall be valued based on the Liquidating Trustee's good faith determination of their fair market value.

F.      **Powers and Authority of the Liquidating Trustee**

The powers of the Liquidating Trustee are set forth in full in the Liquidating Trust Agreement and shall include, among other things: (a) the power to sell, lease, license, abandon or otherwise dispose of all remaining assets of the Liquidating Trust Estates subject to the terms of this Plan; (b) the power to effect distributions under this Plan to the Holders of Allowed Claims; (c) the authority to pay all costs and expenses of administering the Liquidating Trust Estates after the Effective Date, including the power to employ and compensate Persons to assist the Liquidating Trustee in carrying out the duties hereunder, and to obtain and pay premiums for insurance and any other powers necessary or incidental thereto; (d) the power to implement this Plan including any other powers necessary or incidental thereto; (e) the authority to settle Claims, Chapter 5 Actions, or disputes as to amounts owing to the Estates; (f) the authority to participate in any post-Effective Date motions to amend or modify this Plan or the Liquidating Trust Agreement, or appeals from the Confirmation Order; (g) the authority to participate in actions to enforce or interpret this Plan; and (h) the power to bind the Liquidating Trust.  Each of the foregoing powers may be exercised by the Liquidating Trustee without further order of the Bankruptcy Court.  Notwithstanding any of the foregoing, the Liquidating Trustee may not materially amend or alter the terms and provisions of this Plan.

The authority of the Liquidating Trustee will commence as of the Effective Date of the Plan and will remain and continue in full force and effect until all of the Assets are liquidated in accordance with the Plan, the funds in the Liquidating Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the Order closing the Chapter 11 Cases is a Final Order.

G.      **Funding of the Liquidating Trust**

The funding of the Liquidating Trust for the payments to be made to Holders of Allowed Claims under the Plan and the payment of Post-Effective Date Expenses will be from (i) the Liquidating Trust Expense Reserve, (ii) the Debtors' Cash on hand as of the Effective Date, which will be transferred to the Liquidating Trust as of the Effective Date and proceeds from the investment of such Cash, and (iii) the proceeds of the liquidation of the Assets, including, without limitation, any Claims or Causes of Action or the proceeds of the 2007 Bond Causes of Action.

H.      **Liquidating Trust's Post-Effective Date Expenses**

All expenses related to implementation of the Plan incurred from and after the Effective Date through the date on which the Liquidating Trust is dissolved will be expenses of the Liquidating Trust, and the Liquidating Trustee will disburse funds from the Liquidating Trust Expense Reserve, as appropriate, for purposes of paying the Post-Effective Date Expenses of the Liquidating Trust without the need for any further Order of the Court.  The Post-Effective Date Expenses shall include, but are not limited to, the fees and expenses of the Liquidating Trustee, the fees and expenses of the Debtor Representative, the fees and expenses of the professionals employed by the Liquidating Trustee and/or the Debtor Representative, and other costs, expenses and obligations of the Liquidating Trust until the date the Liquidating Trust is terminated in accordance with section VII.N and the Liquidating Trust Agreement.

Prior to making a distribution to any Holders of Allowed Claims under the Plan, the Liquidating Trustee may place in reserve any funds that may be needed to pay Disputed Claims and Claims that have otherwise not been Allowed in the event that all or a portion of such Claims become Allowed Claims. When a Claim is Allowed or Disallowed (and thus becomes an Allowed Claim or a Disallowed Claim, in whole or in part), the funds set aside on account of such Claim shall be released from the respective account and shall be available for distribution in accordance with the terms of this Plan to either (i) the Holder of the Claim that has become an Allowed Claim, or (ii) if Disallowed, the Holders of Allowed Claims. Consistent with the terms of this Plan, the Liquidating Trustee, in its sole discretion, on and after the Effective Date, shall have authority to increase or decrease the Distribution Reserve Account, as reasonably necessary and appropriate, and upon satisfaction of all Allowed Claims required to be paid from the Distribution Reserve Account, to transfer amounts held therein for distribution pursuant to the Plan.

## I.  Treatment of 2007 Bond Causes of Action

Nothing in this Plan shall be deemed to effect a release or waiver of any 2007 Bond Cause of Action, all of which any 2007 Bond Causes of Action are expressly reserved by the 2007 Bondholders and/or the Bond Trustee. The Bond Trustee or the majority Holder of the 2007 Bonds will pursue, prosecute and/or litigate the 2007 Bond Causes of Action in its discretion. The expenses associated with the prosecution of the 2007 Bond Claims shall constitute Post-Effective Date Expenses and shall be paid or reimbursed by the Liquidating Trust. All such expenses associated with the prosecution of the 2007 Bond Claims shall be agreed upon in advance by the Liquidating Trustee.

In partial consideration for the Initial Class 3 Distribution, the Supplemental Class 3 Distributions and the Final Class 3 Distributions provided to the Holders of 2007 Bonds pursuant to this Plan, and in partial settlement and compromise of the Committee Challenge Claims hereunder, on or after the Effective Date, upon the entry of a final judgment or settlement of any of the 2007 Bond Causes of Action, the Bond Trustee or the majority Holder of the 2007 Bonds shall transfer one hundred percent (100%) of the net proceeds of such judgment and/or settlement to the Liquidating Trust for Distribution in accordance with sections IV.B.3.a-c and IV.B.5

## J.  Use of Existing Accounts

The Liquidating Trustee may use the Debtors' existing bank accounts (as of the Effective Date) for the purposes set forth herein, to the extent possible and desired. The Liquidating Trustee also may close the Debtors' existing bank accounts, at its discretion, and transfer all amounts therein to one or more accounts, in accordance with the terms of this Plan. Alternatively, notwithstanding any provisions to the contrary in this Plan, the Liquidating Trustee may invest some or all of the funds that would otherwise be deposited into the accounts established pursuant to the Plan in allowed investments under applicable non-bankruptcy law.

## K.  Employment and Compensation

The Liquidating Trustee shall serve without bond and shall receive compensation for serving as Liquidating Trustee as set forth in the Liquidating Trust Agreement. At any time after

the Effective Date and without further Order of the Bankruptcy Court, the Liquidating Trustee may employ Persons or Entities, including Professionals (which may, but need not, include Professionals previously or currently employed in the Chapter 11 Cases) reasonably necessary to assist the Liquidating Trustee in the performance of his duties under the Liquidating Trust Agreement and this Plan. Such Persons or Entities shall be compensated and reimbursed by the Liquidating Trustee for their reasonable and necessary fees and out of pocket expenses on a monthly basis in arrears.

**L.      Vesting of Authority in Debtor Representative**

Upon the Effective Date, the Debtors' board of directors shall be dissolved and the then-current members of the board of directors and officers of the Debtors shall be relieved of their positions and corresponding duties and obligations; provided, however, that the Debtor Representative shall be responsible for effectuating transfers of Assets in accordance with this Plan and otherwise satisfying the Debtors' obligations under the terms of this Plan. On and after the Effective Date, the Debtor Representative shall have full and complete authority to act on behalf of and bind the Debtors without further action or approval of the Bankruptcy Court or the board of directors of the Debtor. After the D&O Claims and 2007 Bond Causes of Action are liquidated and the proceeds of such Causes of Action are transferred to the Liquidating Trust Estates in accordance with this Plan, the Debtor Representative shall be empowered, but not directed, to effectuate the dissolution of the Debtors in accordance with the laws of the State of West Virginia.

**M.      Termination of the Committee; Creation of POC**

On the Effective Date, the Committee shall be dissolved, the retention and employment of the Committee's Professionals shall terminate and the members of the Committee will be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases, other than for purposes of filing and/or objecting to final Fee Applications filed in the Chapter 11 Cases.

On the Effective Date, the Committee shall be replaced by the POC that shall consist of not less than three (3) Persons or Entities that are Beneficiaries of the Liquidating Trust, and shall include at least one member of Class 3 or a delegate chosen by a majority of the Holders of Allowed Class 3 Claims. The identities of the Persons and/or Entities that will serve on the POC as of the Effective Date will be filed by the Committee with the Court no later than five (5) days before the Confirmation Hearing. The POC may also include such other Persons or Entities (including ex officio members) as may be requested by the POC, which Persons or Entities shall have agreed to participate in the performance of the POC's functions as set forth in this Plan. The POC's sole function and responsibility shall be to advise and instruct the Liquidating Trustee in the performance of the Liquidating Trustee's duties and obligations under the Plan with respect to the liquidation of Assets for the benefit of the Holders of Allowed Claims. The members of the POC shall serve without compensation, but may be reimbursed for reasonable expenses incurred in the performance of their duties as members of the POC.

**N.      Liquidating Trustee as Successor in Interest to the Debtors and Committee**

Except as to the D&O Claims, the Liquidating Trustee is the successor in interest to the Debtors and the Committee, and thus, after the Effective Date, to the extent this Plan requires an action by the Debtors (and except as it relates to the D&O Claims), the action shall be taken by the Liquidating Trustee on behalf of the Debtors and the Creditors' Committee, as applicable. The Liquidating Trustee may not materially amend or alter the terms and provisions of this Plan.

For federal and applicable state income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee and the Beneficiaries of the Liquidating Trust Estates) shall treat the transfer of Assets to the Liquidating Trust in accordance with the terms of this Plan, as a sale by the Debtors of such Assets to the Liquidating Trust Estates at a selling price equal to the fair market value of such Assets on the Effective Date. The Liquidating Trust shall be treated as the owner of all Assets that it holds.

**O.      Termination of the Liquidating Trust Estates**

The existence of the Liquidating Trust and the authority of the Liquidating Trustee will commence as of the date of execution of the Liquidating Trust Agreement and will remain and continue in full force and effect until the earlier of (a) the date on which all of the Assets are liquidated in accordance with the Plan, the funds in the Liquidating Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the Order closing the Chapter 11 Cases is a Final Order or (b) five (5) years after the date of creation of the Liquidating Trust, unless extended by the Bankruptcy Court as provided in the Liquidating Trust Agreement.

At such time as the Liquidating Trust has been fully administered (i.e., when all things requiring action by the Liquidating Trustee have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the Final Distribution Date, the Liquidating Trustee will file an application for approval of his final report and the entry of the final decree by the Bankruptcy Court.

**P.      Objections to Administrative Expense Claims and Priority Claims**

**1.      Objection Procedures**

The Liquidating Trustee shall have standing and authority to object to the allowance of Administrative Expense Claims and Priority Claims.  No distribution shall be made pursuant to this Plan to a Holder of an Administrative Expense Claim or Priority Claim, Disputed or otherwise, unless and until such Claim becomes an Allowed Claim.

The Liquidating Trustee shall have one hundred and eighty (180) days after the Effective Date to object to each filed administrative expense claim and unsecured priority claim.  All objections to Administrative Expense Claims and Priority Claims must be filed with the Bankruptcy Court, and served upon the Holders of such Claims, on or before the one hundred and eightieth (180th) day after the Effective Date, except as extended by an agreement between the claimant and the objecting party, or by Order of the Bankruptcy Court upon a motion filed by the Liquidating Trustee or the Bond Trustee.  If an objection has not been filed to a proof of

Claim for an Administrative Expense Claim or Priority Claim within this 180-day period, or the extension of such period, the Administrative Expense Claim or Priority Claim to which the proof of Claim relates shall be treated as an Allowed Claim for purposes of distribution under this Plan; <u>provided</u>, <u>however</u>, that if the Holder of the Administrative Expense Claim or Priority Claim is a Debtor under any chapter of the Bankruptcy Code, the deadline shall be thirty (30) days after the Liquidating Trustee obtains relief from stay or other relief that will permit the filing of an objection to such Claim.

> ### 2.    Resolution of Disputed Administrative Expense Claims and Priority Claims and Administrative Expense Claims and Priority Claims that have Not Otherwise Been Allowed

The Liquidating Trustee shall have the right to settle or otherwise compromise any Administrative Expense Claim or Priority Claim and shall use reasonable best efforts to resolve disputes regarding such Claims.  If the Bond Trustee or any other Creditor disputes a proposed settlement or other compromise of an Administrative Expense Claim or Priority Claim, the Liquidating Trustee may seek Bankruptcy Court approval of the proposed resolution, after notice and a hearing, upon a showing that such resolution is fair and equitable with respect to the Estates.

Until such time as an unliquidated Administrative Expense Claim or Priority Claim, contingent Administrative Expense Claim or Priority Claim, or a contingent portion of an Administrative Expense Claim or Priority Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions. The Holder of an unliquidated or contingent Administrative Expense or Priority Claim will be entitled to a distribution under the Plan only when and if such unliquidated or contingent Claim becomes an Allowed Claim.

## Q.    Objections to Other Claims

### 1.    Objection Procedures

From and after the Effective Date, the Liquidating Trustee shall have the right and standing to (i) object to and contest the allowance of all Claims that are not Administrative Expense Claims or Priority Claims (the "**Other Claims**"), (ii) compromise and settle any Disputed Other Claim or Other Claim that has not otherwise been Allowed without Bankruptcy Court approval, subject to the notice procedure set forth in section VII.P.2; and (iii) litigate to final resolution objections to Other Claims.

> **<u>No distribution shall be made pursuant to this Plan to a Holder of an Other Claim, Disputed or otherwise, unless and until such Other Claim is or becomes an Allowed Claim.</u>**

All objections to Other Claims must be filed with the Bankruptcy Court, and served upon the Holders of such Claims, on or before the one hundred eightieth (180th) day after the Effective Date, except as extended by an agreement between the claimant and the Liquidating Trustee or by Order of the Bankruptcy Court upon a motion filed by the Liquidating Trustee. Such deadline shall be automatically extended upon the filing of any motion to extend such

deadline through and including any Final Order resolving any such motion. If an objection has not been filed to a proof of Claim for an Other Claim within this 180-day period or the extension of such period, the Other Claim to which the proof of Claim relates shall be treated as an Allowed Claim for purposes of distribution under this Plan; provided, however, that if the Holder of the Other Claim is a Debtors under any chapter of the Bankruptcy Code, the deadline shall be thirty (30) days after the Liquidating Trustee obtains relief from stay or other relief that will permit the filing of an objection to such Claim.

### 2. Resolution of Disputed Other Claims and Other Claims that Have Not Otherwise Been Allowed

If the Holder of a Disputed Other Claim or Other Claim that has not otherwise been Allowed and the Liquidating Trustee agree to a settlement of such Claim for an amount that does not exceed $100,000, the Liquidating Trustee shall be authorized to enter into and effectuate such settlement without any further notice or approval of the Bankruptcy Court, and the settled Claim shall be deemed an Allowed Claim.  If the Holder of such a Claim and the Liquidating Trustee agree to a settlement of such Claim and the settlement amount exceeds $100,000, the Liquidating Trustee shall provide notice of the proposed settlement (with a fourteen-day (14) period to object) to the Persons or Entities on the Post-Effective Date Notice List.  If no objection is received within the fourteen-day (14) period, the settled Claim shall be deemed to be an Allowed Claim, without the need for further review by or approval of the Bankruptcy Court or any other party.  If an objection to a proposed settlement is received within the 14-day period and such objection cannot otherwise be resolved, then the Liquidating Trustee shall schedule a hearing in the Bankruptcy Court to resolve the objection.

Until such time as an unliquidated Other Claim, contingent Other Claim, or a contingent portion of an Other Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions. The Holder of an unliquidated or contingent Other Claim will be entitled to a distribution under the Plan only when and if such unliquidated or contingent Claim becomes an Allowed Claim.

### VIII.

### PROVISIONS GOVERNING DISTRIBUTIONS

### A.   Delivery of Distributions

Distributions to Holders of Allowed Claims shall be made at the address of the Holder of such Claim as indicated on the records of the Debtor, or a filed proof of Claim, as applicable.

### B.   Undeliverable Distributions

If any Allowed Claim Holder's Distribution is returned as undeliverable, no further Distributions shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then-current address.  Undeliverable Distributions shall remain in the possession of the Liquidating Trustee until such time as a Distribution becomes deliverable. Undeliverable Cash shall not be entitled to any interest, dividends or other accruals of any kind. Within twenty-one (21) days after the end of each calendar quarter following the Effective Date,

the Liquidating Trustee shall make all Distributions that become deliverable during the preceding calendar quarter, except as otherwise provided herein.  Any check that is not cashed or otherwise deposited within three months after the check's date shall be deemed an undeliverable distribution under this Plan.

## C.    Failure to Claim Undeliverable Distributions

In an effort to ensure that all Holders of Allowed Claims receive their allocated Distributions, the Liquidating Trustee will file with the Bankruptcy Court a listing of unclaimed Distribution Holders.  This list will be maintained and updated as needed for as long as the Chapter 11 Cases stay open.  Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable Distribution within three (3) months after the first attempted delivery shall have its Claim for such undeliverable Distribution discharged and shall be forever barred from asserting any such Claim against the Debtor, the Liquidating Trust Estates, or the Liquidating Trustee, or their respective property.  In such cases, any Cash held for Distribution on account of such Claims shall be property of the Liquidating Trust Estates, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be distributed pursuant to the Plan.  Nothing contained in the Plan shall require the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

## D.    Compliance with Tax Requirements

In connection with the Plan, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of Allowed Claims with any excess allocated, if applicable, to unpaid interest that accrued on such Claims.

**Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution under this Plan.**

## E.    Minimum Distributions

If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than $50 on a particular Distribution Date, the Trustee may hold the Cash Distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than $50.  Notwithstanding the preceding sentence, if the aggregate amount of

Cash Distribution owed to any Holder of an Allowed Claim never equals or exceeds $50, then the Liquidating Trustee shall not be required to distribute Cash to any such Holder.

## F. Rounding

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

## G. Setoffs and Recoupments

The Liquidating Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, exercise the right of setoff or recoupment against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Claim (before Distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors may hold against the Holder of such Allowed Claim; provided, however, that (i) neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such claims, rights and causes of action that the Liquidating Trust may possess against such Holder and (ii) no such setoff or recoupment shall be in derogation of the APA.

## H. Settlement of Claims and Controversies

Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any Distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and is fair, equitable and reasonable. Without limiting the foregoing, this Plan shall constitute a good faith settlement and compromise of the Committee Challenge Claims with respect to the 2007 Bond Claim and the Liens and security interests associated therewith.

## IX.

## PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS AND CLAIMS THAT HAVE OTHERWISE NOT BEEN ALLOWED

## A. Payments and Distributions on Disputed Claims and Claims That Have Otherwise Not Been Allowed

Notwithstanding any provision in the Plan to the contrary, except as otherwise agreed by the Liquidating Trustee, in its sole discretion, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Claim that has otherwise not been Allowed until such disputes are resolved by settlement or Final Order and the Claim has been Allowed.

Notwithstanding the foregoing, any Person or Entity who holds both an Allowed Claim(s) and a separate and distinct Disputed Claim(s) or Claim that has otherwise not been Allowed will receive the appropriate payment or distribution on account of the Allowed Claim(s), although, except as otherwise agreed by the Liquidating Trustee in his sole discretion, no payment or distribution will be made on the Disputed Claim(s) or Claim(s) that have otherwise not been Allowed until such dispute is resolved by settlement or Final Order and the Claim(s) have been Allowed.  In the event there are Disputed Claim(s) or Claim(s) that have otherwise not been Allowed requiring adjudication and resolution, the Liquidating Trustee reserves the right, or upon order of the Bankruptcy Court, to establish appropriate reserves for potential payment of such Claims.

**B.      Safekeeping of Distributable Property**

Pending entry of a Final Order determining an objection to any Disputed Claim, the Liquidating Trustee shall take appropriate steps to safeguard the Cash, notes or other instruments that would be distributed on account of such Claim if Allowed, but the Liquidating Trustee shall not be required to establish any formal escrow or reserve for such distributable property unless it determines, or the Bankruptcy Court orders, that an escrow or reserve is necessary to ensure that such property is available if and when such Claim is Allowed.

**C.      Allowance of Claims**

Except as expressly provided herein or in any Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed, unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim.  Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Liquidating Trust Estates on and after the Effective Date will have and retain any and all rights and defenses the Debtors had with respect to such Claim as of the Petition Date.

<div align="center">

**X.**

**<u>JURISDICTION</u>**

</div>

**A.      Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases until the Chapter 11 Cases are closed, including jurisdiction to issue any other Order necessary to administer the Estates or the Liquidating Trust Estates and enforce the terms of this Plan, and/or the Liquidating Trust Agreement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.      To determine the type, allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Liquidating Trustee or any other party-in-interest entitled to proceed in that manner;

b.       Except as otherwise limited herein, to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located;

c.       To hear and determine any issue arising under this Plan; provided, however, any action, controversy, dispute, claim or question arising out of or relating to the right of any party to enforce, contest and/or litigate the existence, primacy and/or scope of available coverage and/or any defenses to coverage under the Insurance Policies shall be referred to and resolved solely in accordance with the terms and conditions of the Insurance Policies and applicable non-bankruptcy law, including, but not limited to, any choice of law, forum or jurisdiction provision therein;

d.       To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

e.       To hear any other matter not inconsistent with the Bankruptcy Code;

f.       To enter a final decree closing the Chapter 11 Cases;

g.       To ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

h.       To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on or instituted by the Liquidating Trustee after the Effective Date;

i.       To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

j.       To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

k.       To enforce, interpret, and determine any disputes arising in connection with any stipulations, Orders, the Sale Order, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

l.       To adjudicate any adversary proceeding or other proceeding which may be commenced against any Person or Entity arising from, related to, or in connection with (i) any Chapter 5 Action; (ii) the D&O Claims; (iii) 2007 Bond Causes of Action; and (iii) claims against third parties relating to the facts and circumstances surrounding the same; provided, however, that nothing in this Plan or the Confirmation Order shall vest the Bankruptcy Court with exclusive jurisdiction over any claims identified in subclauses (ii) through (iii) of this subparagraph (l) or over any dispute relating to coverage under the D&O Policies;

m.    To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

n.    To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the Claims Bar Date, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of the Plan for the purpose of determining whether a Claim is discharged hereunder or for any other purpose.

## B.    Consent to Jurisdiction

All creditors who have filed claims in the Chapter 11 Cases shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for purposes of the Causes of Action.

## XI.

## RELEASES, EXCULPATIONS AND RELATED PROVISIONS

## A.    Term of Bankruptcy Injunction or Stay

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, except for any injunction in the Sale Order which shall remain in full force and effect until then and at all times after the Effective Date.  Except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan, the Confirmation Order or a separate Order of the Bankruptcy Court, as of the Effective Date, all entities who have held, hold, or may hold Claims against the Debtors, are permanently enjoined, on and after the Confirmation Date, from (A) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or taking any act to recover such Claim outside of the claims allowance procedure discussed in this Plan and the Bankruptcy Code and Bankruptcy Rules, (B) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or Order against the Debtors, the Liquidating Trust or the Liquidating Trustee on account of any such Claim, (C) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim and (D) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim.  Such injunction shall extend for the benefit of the Debtor Representative, the Liquidating Trustee and any successors of the Debtors, and to any property and interests in property subject to this Plan.

## B.    Exculpation

Except to the extent arising from willful misconduct or gross negligence, any and all claims, liabilities, causes of action, rights, damages, costs and obligations held by any party other than the United States of America against the Debtor, the Committee and its members, the POC and its members, the Bond Trustee, and/or each of their respective attorneys, accountants, agents and other professionals, whether known or unknown, matured or contingent, liquidated or

unliquidated, existing, arising or accruing, whether or not yet due in any manner related to or in connection with (i) the Chapter 11 Cases or any act or omission in connection with, arising out of, or related to the Chapter 11 Cases, (ii) any act or omission in connection with, arising out of, or related to the Sale, (iii) the formulation, negotiation, prosecution or implementation of the Plan, (iv) the solicitation of acceptances of the Plan, or (v) the Confirmation, consummation or implementation of the Plan, will be deemed fully waived, barred, enjoined, released and discharged in all respects, except as to rights, obligations, duties, claims and responsibilities preserved, created or established by terms of this Plan.

## C.    Limitation on Liability of Liquidating Trustee and Debtor Representative

Neither the Liquidating Trustee or the Debtor Representative will be liable for any act he may do or omit to do as Liquidating Trustee or Debtor Representative under the Plan and the Liquidating Trust Agreement, as applicable, while acting in good faith and in the exercise of his reasonable business judgment; nor will the Liquidating Trustee or the Debtor Representative be liable in any event except for gross negligence, willful fraud or willful misconduct.  The foregoing limitation on liability also will apply to any Person (including any Liquidating Trustee Professional) employed by the Liquidating Trustee or Debtor Representative and acting on behalf of the Liquidating Trustee or Debtor Representative in the fulfillment of their respective duties hereunder or under the Liquidating Trust Agreement.  Also, the Liquidating Trustee and all Liquidating Trustee Professionals shall be entitled to indemnification out of the assets of the Liquidating Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits or claims that the Liquidating Trustee or Debtor Representative may incur or sustain by reason of being or having been a Liquidating Trustee of the Liquidating Trust or Debtor Representative or for performing any functions incidental to such service; provided, however, that the foregoing shall not relieve the Liquidating Trustee, the Debtor Representative or the Liquidating Trustee's Professionals from liability for bad faith, willful misfeasance, reckless disregard of duty, gross negligence, fraud, self-dealing or breach of fiduciary duty.

The Liquidating Trust is deemed to release each Person and Entity exculpated under this Subsection from any liability arising from any act or omission occurring after the Petition Date and in connection with, relating to or arising out of the Chapter 11 Cases, except as provided herein.

## D.    Releases By the Debtors

Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious liquidation of the Debtors and the consummation of the transactions contemplated by this Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors and their Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the

Debtors' Chapter 11 Cases, the Sale, the transactions or events giving rise to any Claim that is treated in this Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims before or during the Debtors' Chapter 11 Cases, the negotiation, formulation or preparation of this Plan, the Disclosure Statement or any related agreements, instruments or other documents, other than a Claim against a Released Party arising out of the gross negligence or willful misconduct of any such person or entity.

**E.** **Releases by Holders of Claims**

ON THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN AND EXCEPT FOR THE RIGHT TO ENFORCE THIS PLAN, ALL PERSONS WHO HAVE (I) VOTED TO ACCEPT THIS PLAN OR WHO ARE PRESUMED OR DEEMED TO HAVE VOTED TO ACCEPT THIS PLAN UNDER SECTION 1126(f) OF THE BANKRUPTCY CODE, (II) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THIS PLAN AND WHO VOTE TO REJECT THIS PLAN OR ABSTAIN FROM VOTING, AND (III) DO NOT MARK THEIR BALLOTS AS OPTING OUT OF THE RELEASES GRANTED UNDER THIS SECTION, SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE THE RELEASED PARTIES AND EACH OF THEIR RESPECTIVE CONSTITUENTS, PRINCIPALS, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, REPRESENTATIVES, ATTORNEYS, PROFESSIONALS, ADVISORS, AFFILIATES, FUNDS, SUCCESSORS, PREDECESSORS, AND ASSIGNS, OF AND FROM ALL LIENS, CLAIMS, CAUSES OF ACTION, LIABILITIES, ENCUMBRANCES, SECURITY INTERESTS, INTERESTS OR CHARGES OF ANY NATURE OR DESCRIPTION WHATSOEVER RELATING TO THE DEBTOR, THE CHAPTER 11 CASES OR AFFECTING PROPERTY OF THE ESTATES, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, SCHEDULED OR UNSCHEDULED, CONTINGENT OR NOT CONTINGENT, UNLIQUIDATED OR FIXED, ADMITTED OR DISPUTED, MATURED OR UNMATURED, SENIOR OR SUBORDINATED, WHETHER ASSERTABLE DIRECTLY OR DERIVATIVELY BY, THROUGH, OR RELATED TO THE DEBTOR, AGAINST SUCCESSORS OR ASSIGNS OF THE DEBTORS AND THE INDIVIDUALS AND ENTITIES LISTED ABOVE WHETHER AT LAW, IN EQUITY OR OTHERWISE, BASED UPON ANY CONDITION, EVENT, ACT, OMISSION OCCURRENCE, TRANSACTION OR OTHER ACTIVITY, INACTIVITY, INSTRUMENT OR OTHER AGREEMENT OF ANY KIND OR NATURE OCCURRING, ARISING OR EXISTING PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE NEGOTIATION AND CONSUMMATION OF THE SALE. THE CONSUMMATION OF THIS PLAN OR THE ADMINISTRATION OF THIS PLAN, INCLUDING WITHOUT LIMITATION, THE NEGOTIATION AND SOLICITATION OF THIS PLAN, ALL REGARDLESS OF WHETHER (A) A PROOF OF CLAIM HAS BEEN FILED OR IS DEEMED TO HAVE BEEN FILED, (B) SUCH CLAIM IS ALLOWED OR (C) THE HOLDER OF SUCH CLAIM HAS VOTED TO ACCEPT OR REJECT THIS PLAN, EXCEPT FOR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. FOR THE AVOIDANCE OF DOUBT, NOTHING CONTAINED HEREIN SHALL IMPACT THE RIGHT OF ANY HOLDER OF AN ALLOWED CLAIM TO RECEIVE A DISTRIBUTION ON ACCOUNT OF ITS ALLOWED CLAIM IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS PLAN.

2564228

### F.    Injunction

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.

### G.    Nondischarge of the Debtors

In accordance with section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order will not discharge Claims.  However, no Holder of a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Holder pursuant to the Plan.  As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan any Claims, rights, causes of action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

### H.    Cancellation of Documents

On the Effective Date, except to the extent otherwise provided in this Plan, any and all notes, instruments, debentures, certificates and other documents evidencing Claims against the Debtors including, without limitation, the Bond Documents, shall be deemed inoperative and unenforceable solely as against the Debtors and its Estates; provided, however, that (1) the Bond Documents shall continue in effect for purposes of allowing Holders of the Bonds to receive Distributions under the Plan and (2) the Bond Documents shall remain operative and enforceable with respect to any Person, other than the Debtors, which has rights and/or obligations thereunder, except with respect to the releases and exculpations set forth in Article XI of this Plan.

### I.    Effect of Plan on Released Claims and Liens

Nothing contained in this Plan shall revive, preserve, or transfer any Claims or Liens that have been released pursuant to the Sale Order, the APA, or otherwise.

## XII.

## MISCELLANEOUS PROVISIONS

### A.    Conditions to Confirmation and the Effective Date

The following are conditions precedent to the occurrence of Confirmation and the Effective Date, each of which must be satisfied or waived in writing:

a.    the Confirmation Order, authorizing and directing that the Debtors take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan and the transactions contemplated thereby, including, without limitation, the transactions contemplated by the Liquidating Trust Agreement, shall have been entered and become a Final Order;

b.    the Liquidating Trustee shall have accepted, in writing, the terms of his service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

c.    the Liquidating Trust shall have been established; and

d.    all other actions, authorizations, consents and regulatory approvals required (if any) and necessary to implement the provisions of the Plan shall have been obtained, effected or executed in a manner acceptable to the Debtors and the Committee or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

## B.    Effect of Failure of Condition

If each condition to the Effective Date has not been satisfied or duly waived within thirty (30) days after the Confirmation Date, then (unless the period for satisfaction or waiver of conditions has been extended at the joint option of the Plan Proponents for a period not exceeding sixty (60) days) upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order will be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Plan Proponents or the Liquidating Trustee, as the case may be, before the Bankruptcy Court enters a Final Order granting such motion.  If the Confirmation Order is vacated pursuant to this Plan, the Plan shall be deemed null and void in all respects, and nothing contained herein shall (A) constitute a waiver or release of any Claims by or against the Debtors or (B) prejudice in any manner the rights of the Debtors or the Committee.

## C.    Waiver of Conditions to Confirmation and Effective Date

The Debtors and the Committee, jointly and in their sole discretion, may waive any or all of the conditions to Confirmation and the Effective Date, in whole or in part, at any time, without notice or an Order of the Bankruptcy Court. In that event, the Debtors and the Committee will be entitled to render any or all of their performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived, including, but not limited to, the right to perform under any circumstances which would moot any appeal, review, or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review, or other challenge. The failure to satisfy or to waive any condition may be asserted by the Debtors or the Committee regardless of the circumstances giving rise to failure of such condition to be satisfied (including any action or inaction by the Debtor). The failure of the Debtors or the Committee to exercise any of the foregoing rights will not be deemed a waiver of

-42-

any other rights, and each such right will be deemed an ongoing right that may be asserted at any time.

**D.      Modification of the Plan**

The Plan and any Exhibits thereto may be modified jointly by the Plan Proponents, or the Liquidating Trustee, as applicable, from time to time in accordance with Bankruptcy Code section 1127 and Bankruptcy Rule 3019.  The Plan and any Exhibits thereto may be modified at any time before the entry of the Confirmation Order pursuant to section 1127(a) of the Bankruptcy Code; and after the entry of the Confirmation Order, the Plan Proponents, or the Liquidating Trustee, as applicable may, upon Order of the Bankruptcy Court, amend or modify the Plan and any Exhibits thereto in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

Objections with respect to any amendments or modifications to the Plan (as and to the extent permitted hereby) filed after the deadline for objections to the Plan, as set by the Bankruptcy Court, may be brought at the Confirmation Hearing.  The Plan, and any modification or supplement thereof, may be inspected in the Office of the Clerk or its designee during normal business hours.  Holders of Claims may obtain a copy of the Plan and any supplement or modification, if any, by contacting the solicitation agent, Epiq, at (646) 282-2400 or by reviewing such document on the internet at *http://www.epiq11.com*.  The documents annexed to the Disclosure Statement or contained in any modification or supplement to the Plan or the Disclosure Statement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**E.      Extension of Time**

For cause shown, any deadlines herein which are applicable to the Debtors or the Liquidating Trust Estates and which are not otherwise extendable, may be extended by the Bankruptcy Court.

**F.      Post-Effective Date Notice List**

Because certain Persons may not desire to continue to receive notices after the Effective Date, this Plan provides for the establishment of a Post-Effective Date Notice List.  Persons on such Post-Effective Date Notice List will be given certain notices and in some cases an opportunity to object to certain matters under this Plan (as described herein).  Any Person desiring to be included in the Post-Effective Date Notice List must (i) file a request to be included on the Post-Effective Date Notice List and include thereon its name, contact person, address, telephone number and facsimile number, within thirty (30) days after the Effective Date, and (ii) concurrently serve a copy of its request to be included on the Post-Effective Date Notice List on the Liquidating Trustee and his counsel.  On or before sixty (60) days after the Effective Date, the Liquidating Trustee shall compile a list of all Persons on the Post-Effective Date Notice List and file such list with the Bankruptcy Court.  Those parties set forth in section XII.J of the Plan shall be included in the Post-Effective Date Notice List without the necessity of filing a request.

G.    **Revocation of Plan**

The Plan Proponents reserve the right to jointly revoke or withdraw the Plan prior to the Effective Date and to jointly file subsequent plans of reorganization or liquidation.  If the Plan is withdrawn or revoked, or if confirmation or the Effective Date of the Plan does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, and except as herein provided and as provided in the Settlement Agreement or the Sale and Settlement Order (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtors or any other person, (ii) prejudice in any manner the Debtors' or any other Person's rights, or (iii) constitute the Debtors' or any other Person's admission of any sort.

H.    **Successors and Assigns**

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, and lawful successor or assign of such Person or Entity.

I.    **Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect until the Bankruptcy Court has entered the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained in the Plan, nor the Debtors' taking of any action with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any of the Debtors' rights with respect to the Holders of Claims prior to the Effective Date.

J.    **Service of Documents**

Any pleading, notice or other document required or permitted to be made in accordance with this Plan shall be made in writing and shall be delivered personally, by facsimile transmission, electronic mail or by first class U.S. mail, postage prepaid, as follows:

K.    **Filing of Additional Documents and Notice of Effective Date**

On or before the Effective Date, the Debtors and/or the Committee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Liquidating Trustee shall file a notice of the Effective Date as soon as practicable after the Effective Date and shall serve such notice on all parties that are entitled to notice under Bankruptcy Rule 2002.

L.    **Severability**

The provisions of the Plan shall not be severable unless the Plan Proponents agree to such severance and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

**M.    Entire Agreement**

The Plan, and any supplements or amendments hereto, supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects (other than the Liquidating Trust Agreement), all of which have become merged and integrated into the Plan.

**N.    Governing Law**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of West Virginia, without giving effect to the principles of conflicts of law of such jurisdiction.

**O.    Closing of the Chapter 11 Cases**

The Liquidating Trustee shall promptly, upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable Order of the Bankruptcy Court to close the Chapter 11 Cases.

Dated:  February 27, 2015

FAIRMONT GENERAL HOSPITAL, INC.


By: */s/ Margaret C. Coster*
Name:  Margaret C. Coster
Title: Chief Executive Officer


FAIRMONT PHYSICIANS, INC.


By: */s/ Margaret C. Coster*
Name: Margaret C. Coster
Title: Chief Executive Officer


OFFICIAL COMMITTEE OF UNSECURED CREDITORS


By: */s/ Brad Hamman*
Name: Brad Hamman
Title: Chairman

2564228