Patrick M. Flatley
United States Bankruptcy Judge

Dated: Friday, March 24, 2017 3:38:47 PM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:                                            )
                                                  )
FAIRMONT GENERAL HOSPITAL, INC.,  )   Case No. 13-bk-01054
*et al.*,                                         )
            Debtor.                               )   Chapter 11
                                                  )
_____                    )

## MEMORANDUM OPINION

On December 8, 2016, Clifford A. Zucker, in his capacity as Liquidating Trustee and Estate Representative (the "Liquidating Trustee"), objected to the amended employment discharge proof of claim filed by Robert Marquardt ("Marquardt"), former President and Chief Executive Officer ("CEO") of the Debtor, based upon, among other things, the claim being unenforceable against Fairmont General Hospital, Inc. (the "Debtor"). The primary thrust of the Debtor's objection is that Marquardt resigned from his position and, as such, is not entitled to certain benefits that would otherwise accrue to him in the event that his departure is characterized as an involuntary termination. At a prior hearing addressing his objection, the Liquidating Trustee agreed to accept as true the statement of facts set forth in Marquardt's affidavit for the limited purpose of enabling the court to make a determination as to whether he resigned or was terminated. In that regard, if the court determines that Marquardt was terminated, then the Liquidating Trustee has preserved for further litigation the issue as to whether the termination was based upon cause.

The Liquidating Trustee argues that Marquardt's claim is unenforceable against the Debtor because his claim seeks to recover severance compensation when he resigned, rather than was terminated, from his position as President and CEO of the Debtor. Moreover, the Liquidating Trustee asserts that Marquardt's admitted request to characterize his departure as a resignation estops him from seeking to recover any severance compensation. Alternatively, the Liquidating Trustee points to certain components of Marquardt's claim that are allegedly not enforceable under his contract with the Debtor. Finally, the Liquidating Trustee asserts that Marquardt amended his

1

proof of claim after the bar date and plan confirmation, and that his amendments do not survive the scrutiny necessary for late-amended proofs of claim. In opposition, Marquardt asserts that his claim is enforceable as he was constructively terminated by the Debtor under state law. Moreover, he asserts that all of the components of his claim are provided for in his employment agreement. Finally, he asserts that his claim, though amended well beyond the claims bar date, is permissible because he merely adjusted the claim to be more accurate and because he reduced the total amount of his claim.

## I.  FACTS

For the limited purpose already noted, the Liquidating Trustee concedes the facts asserted by Marquardt. Thus, the background of this dispute unfolds as follows. On July 21, 2009, Marquardt and the Debtor entered into an Executive Employment Agreement (the "Employment Agreement") whereby Marquardt would serve as the Debtor's President and CEO for a three-year term. Under the Employment Agreement, that term was subject to periodic extensions and was in fact extended until December 31, 2013. On September 23, 2013, shortly after the Debtor's September 3, 2013 entry into bankruptcy, the Debtor's Board of Directors held a meeting. At that meeting, the Debtor's directors informed Marquardt that they desired to take the Debtor in a different direction and that they had selected Peggy Coster to replace Marquardt as CEO. In response, Marquardt requested that the Debtor phrase his termination as a resignation. The Board honored Marquardt's request and described Marquardt's departure as a resignation in every applicable instance.

During the interaction between the Board and Marquardt, the Board failed to discuss any reason for his purported termination. Moreover, Marquardt received no advance notice that his future as an executive employee of the Debtor was in question. Furthermore, Marquardt was not accorded time to consult with an attorney or otherwise contemplate his options. Rather, after he was informed that the Debtor hired his replacement, he immediately requested that he and the Debtor describe his departure as a resignation, after which he left the meeting and forthwith and permanently ceased employment with the Debtor.

On October 4, 2013, Marquardt received his base salary and amounts owed and accrued for paid time off that he earned while employed by the Debtor between the Debtor's petition date and the end of his employment. Then, on February 6, 2014, Marquardt filed his proof of claim seeking a priority wage claim of $12,475 and a general unsecured claim of $346,089.61. He cited

the Debtor's breach of his Employment Agreement as the basis for his proof of claim. Specifically, he sought to recover $265,000 as the value of his annual base salary, recoverable under the Employment Agreement upon termination without cause, $7,885.20 in compensation for termination without 60 days' notice, $52,436.58 for 399 hours of unpaid legacy paid time off, $13,256.47 for an additional 100.871 hours of paid time off, and $19,986.36 in compensation for the Debtor's failure to provide him with healthcare despite terminating him without cause.

After Marquardt's purported termination, the Debtor ceased to provide him with the same health care benefits it offered during his employment. Instead, it offered him the opportunity to maintain the same coverage at his expense in compliance with the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") for $1,665.54 per month. Marquardt instead elected to go uninsured until he obtained insurance coverage through a new employer. On January 15, 2014, Marquardt obtained new employment with Select Medical in Fort Wayne, Indiana as its CEO. His new position compensated him a gross base salary of $145,000 and provided new medical coverage 60 days after the start of his new employment.

The Debtor's Chapter 11 Plan was confirmed on April 24, 2015. The Effective Date of the Plan was May 28, 2015. On August 30, 2016, the Liquidating Trustee objected to Marquardt's proof of claim. Marquardt responded, defending portions of his proof of claim but also noting that he intended to file an amended proof of claim. Notably, the claims bar date of February 14, 2014 had passed. However, after a hearing on the matter, the court ordered Marquardt to file an amended proof of claim by November 3, 2016. Marquardt complied and filed his amended proof of claim on November 3.

Marquardt's amended proof of claim decreased his total claim from $358,564.61 to $311,312.12. The claim still asserted $12,475 in priority unsecured claims, while the remainder of the claim is alleged to be general unsecured debt. Although Marquardt reduced his total claim, the reduction was accomplished by modifying numerous facets of the claim, including increasing the amounts asserted for certain components. Specifically, Marquardt asserts that the claim is comprised of $173,594.06, not $265,000, in base salary compensation under the Employment Agreement. This adjustment represented the greatest reduction of any of the components of the amended proof of claim. Marquardt also decreased the amount of the claim attributable to compensation for the cost of healthcare from $19,986.36 to $10,376.48 and increased the portion of his claim attributable to compensation for failure to provide 60-days' notice from $7,885.20 to

3

$44,934.84. Finally, the amended proof of claim introduced a new component in that it asserts that Marquardt is entitled to $16,401.24 in retirement contributions. This element of the amended proof of claim was absent in the original claim.

The Employment Agreement between the Debtor and Marquardt sets forth the terms regarding Marquardt's compensation during the course of his employment. It establishes Marquardt's base compensation at $265,000 subject to a potential annual market adjustment to be determined by the Debtor, and also provides for annual paid time off, health insurance, and various other benefits.

The Employment Agreement also addresses if and how the Debtor must compensate Marquardt should he or the Debtor terminate his employment. Under the Agreement, the Debtor may terminate Marquardt for cause without notice and without any compensation, other than payment of salary compensation earned up until the date of termination. The Agreement does not define cause, but rather provides a list of potential reasons which may constitute cause. If Marquardt was terminated without cause, he is entitled to at least 60 days prior written notice, or salary payment in lieu of such prior notice. Moreover, the Debtor is required to continue to pay Marquardt his base monthly salary for 12 months, subject to a reduction in the amount of compensation received from his new employer. The Debtor is also required to pay all gross base salary for services performed through Marquardt's last day worked, and is to continue to provide healthcare benefits in effect at the time of his termination for 12 months or until he obtains alternative coverage. If Marquardt, rather than the Debtor, terminated the Employment Agreement, or the termination was for cause, then Marquardt is entitled only to compensation for services provided through his last day worked.

Finally, the Employment Agreement provides that West Virginia law governs the interpretation and implementation of its terms.

## II. ANALYSIS

The Liquidating Trustee raises essentially three grounds for objecting to Marquardt's amended proof of claim. First, he asserts that a proof of claim may only be amended after plan confirmation upon a showing that (1) the amendment relates back to the original claim, (2) the amendment does not unfairly prejudice other creditors, and (3) there is a compelling reason to amend the claim in the face of the Debtor's discharge, the *res judicata* effect of the plan, the disruption to the orderly process of adjudication, and the interests of finality. He argues that

Marquardt cannot satisfy those requirements. Next, the Liquidating Trustee alleges that Marquardt is barred from seeking to recover severance payments because he specifically requested to resign rather than be fired. Third, he asserts that Marquardt resigned, thus none of the provisions contained in the Employment Agreement regarding compensation upon termination by the Debtor apply.

In response, Marquardt asserts that the amended claim relates back to the original claim, that the amendment reduces the total proof of claim and thus cannot be prejudicial, and that the amendment is intended to provide a more accurate depiction of Marquardt's claim. Furthermore, Marquardt argues that equitable estoppel does not apply on these facts. Finally, Marquardt asserts that he was constructively terminated under West Virginia law, thus the provisions of the Employment Agreement pertaining to termination without cause apply.

I.   *Claims Amendment Procedure*

Pursuant to 11 U.S.C. § 501, a creditor may file a proof of claim in a bankruptcy case. As stated in § 502(a), "[a] claim or interest, proof of which is filed under § 501 of this title, is deemed allowed, unless a party in interest . . . objects." To execute a proof of claim, Fed. R. Bankr.P. 3001(a) directs that the proof of claim be "a written statement setting forth a creditor's claim," and that it "shall conform substantially to the appropriate Official Form." When a claim is executed and filed in accordance with the Bankruptcy Rules, then Rule 3001(f) provides that the proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." When the Rule 3001(f) presumption arises, the Bankruptcy Code establishes a burden shifting framework for the allowance or disallowance of that claim:

> The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. The burden then shifts to the debtor to object to the claim. The debtor must introduce evidence to rebut the claim's presumptive validity. If the debtor carries its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence.

*Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 640 (4th Cir. 2004). *See also* 11 U.S.C. § 502(b) (providing nine grounds on which to disallow a proof of claim); *Travelers Cas. & Sur. Co. of Am. v. PG & E*, 549 U.S. 443 (2007) ("[T]he court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b).").

The strength of a proof of claim's presumption as to validity and amount is described as "'some evidence,'" and as "'strong enough to carry over a mere formal objection without more.'" *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (citation omitted). The party objecting to the proof of claim has the burden of going forward to "'meet, overcome, or, at minimum, equalize the valid claim.'" *FDIC v. Union Entities (In re Be–Mac Transport Co.)*, 83 F.3d 1020, 1025 (8th Cir. 1996) (citation omitted). The amount of evidence necessary to overcome the objection "must be sufficient to demonstrate a true dispute and must have probative force equal to the contents of the claim." 9 *Collier on Bankruptcy* ¶ 3001.9[2] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2008). Although the Court of Appeals for the Fourth Circuit "has not previously addressed how the bankruptcy rules allocate the burden of proof for purposes of establishing the amount and validity of a claim . . . . [its] reading of the bankruptcy rules . . . is in accord with [its] sister circuits that have addressed the issue." *Stancill*, 372 F.3d at 640 n. 2 (citing. *inter alia, In re Hemingway Transp.*, 993 F.2d 915, 925 (1st Cir.1993) ("The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence."); *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992) ("It is often said that the objector must produce evidence equal in force to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.")).

Before the passage of the claims bar date, courts generally allow amendments of proofs of claim in accordance with Rule 7015 of the Federal Rule of Bankruptcy Procedure. *Holstein v. Brill*, 987 F.2d 1268, 1269 (7th Cir. 1993); *see also In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005) (explaining that Rule 7015 grants bankruptcy courts discretion to grant or deny leave to amend claims despite the fact that Rule 7015 otherwise only applies to adversary proceedings). Particularly, courts freely allow the amendment of a claim "where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim." *Integrated Resources, Inc. v. Ameritrust Company National Association (In re Integrated Res., Inc.)*, 157 B.R. 66, 70 (Bankr. S.D.N.Y. 1993). After the bar date passes, however, courts must apply "careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment." *United States v. International Horizons, Inc. (In re International Horizons, Inc.)*, 751 F.2d 1213, 1216 (11th Cir. 1985). Thus, courts apply a two pronged test to determine whether to grant an amendment after

6

the bar date passes: (1) whether the amended claim relates back to ta timely filed proof of claim and (2) "whether it would be equitable to allow the amendment." *Pavarini McGovern, LLC v. Waterscape Resort LLC*, 520 B.R. 424, 434 (Bankr. S.D.N.Y. 2014).  Finally, in cases where a party seeks to amend a claim after confirmation, "a creditor must demonstrate a 'compelling reason' to amend the claim given the discharge, the *res judicata* effect of the plan, the disruption to the orderly process of adjudication and the interests of finality." *Id*.

Marquardt filed his original proof of claim on February 6, 2014, eight days before the February 14 bar date.  In it, Marquardt set forth claims arising from his alleged termination without cause and the rights stemming from that termination under the Employment Agreement.  Marquardt then amended that proof of claim on November 3, 2016.  The amendment sought to cure defects in the claim as originally filed and to describe the claim with greater particularity.  The Liquidating Trustee asserts that each component of the proof of claim constitutes an individual claim and buttresses this argument by stating that Marquardt could have filed a series of proofs of claims.  However, Marquardt is seeking to recover various forms of compensation potentially owed to him under his Employment Agreement and arising out of the same nucleus of operative facts.  While the claim is fragmented, each fragment arises out of the Employment Agreement itself such that the constituent parts are all aspects of a single right to payment.  Because Marquardt amended the claim to provide greater accuracy and to correct prior mathematical errors, the amendment relates back to the original timely filed proof of claim.

The Liquidating Trustee argues that the amendment will cause undue prejudice to the creditor body because Marquardt increased various components of his claim and added entirely new components as well.  However, the amendment, as a whole, reduces Marquardt's total claim.  Insofar as the creditor is seeking to recover less than he previously did, there can be no undue prejudice to the creditor body.  Thus, equitable considerations do no support denying Marquardt's right to amend.

In a case where a creditor seeks to amend a proof of claim after the debtor's plan is confirmed, courts also require a compelling reason to allow the amendment.  The underlying rationale for such an approach is that the plan effectively adjudicates the issue and discharges unclaimed debts.  Moreover, to allow constant amendments to claims after confirmation would disrupt the orderly unfolding of the plan process and threaten the principle of finality.  However, in this case, the amendment seeks to reduce the total debt claimed.  Marquardt filed his initial claim

7

before the bar date and the Debtor failed to object to the claim before confirmation. Thus, the claim was preserved. Insofar as Marquardt seeks to reduce his total claim, he is not attempting to recover a discharged debt. Rather, he is providing greater accuracy and detail to the claim he filed before the bar date. Thus, the court will overrule the Liquidating Trustee's objection as to the timing of the amendment.

II.     Equitable Estoppel

The Liquidating Trustee asserts that equitable estoppel bars Marquardt from seeking to recover under the terms of Employment Agreement pertaining to termination by the Debtor without cause because it was Marquardt himself who requested that the Board characterize his termination as a resignation. The Liquidating Trustee, in effect, argues that Marquardt's claim should be rejected as being duplicitous. That is, he should not be permitted on one hand to accept the benefit of favorably framing the circumstances of his departure, while, on the other hand, claiming that he was in fact involuntarily terminated for purposes of pursuing a recovery from the proceeds of the bankruptcy estate. In response, Marquardt asserts that equitable estoppel is not proper on these facts.

"Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Intl'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-18 (4th Cir. 2000) (Internal quotation marks omitted). The doctrine exists because it is unfair for a party to "rely on [a] contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981). In West Virginia, equitable estoppel exists when a false representation or concealment of material fact is made with actual or constructive knowledge of the facts to a party without knowledge who then relies on the representation or concealment to his prejudice. Syl. Pt. 3, *Cleaver v. The Big Arm Bar & Grill, Inc.*, 502 S.E.2d 438, 439 (W. Va. 1998). Thus, a party seeking to invoke equitable estoppel must "identify . . . critical element[s] of detrimental reliance [and] resulting prejudice that resulted from such reliance." *Id.* at 444.

When the Board of Directors sought to terminate Marquardt, Marquardt requested that the Board phrase his termination as a resignation on all documents, when talking with the public, and when talking with the media. The Board obliged. Thus, the Debtor changed its position from asserting that it fired Marquardt to asserting that Marquardt resigned. The Liquidating Trustee

8

points out that Marquardt now seeks to benefit from describing the action as a resignation in order to avoid any reputational harm while, in contradiction, also acquiring compensation for being terminated. However, the Liquidating Trustee fails to identify any detrimental reliance or resulting prejudice of the Debtor, and the court finds none. That is because, as discussed further in Section III, the record is clear that the Debtor intended to terminate Marquardt, not to seek his resignation. Therefore, at the time the Debtor discharged Marquardt, it was clearly prepared to live with the risks associated with a potential termination claim. It is merely fortuitous that Marquardt's request for a more favorable characterization has provided fodder for the Debtor's objection to his claim. Because there is no indication that the Debtor was harmed in any way by allowing Marquardt to represent that he resigned, there simply cannot be a showing of equitable estoppel. Thus, the court will overrule the Liquidating Trustee's objection as it pertains to equitable estoppel.

III.     *Constructive Termination*

The Liquidating Trustee further argues that Marquardt cannot recover under the Employment Agreement because he resigned, and the Agreement does not provide any post-resignation benefits to Marquardt. In response, Marquardt asserts that he was constructively discharged as the Board of Directors presented him with a Hobson's choice: resign or be fired.

The Supreme Court of Appeals of West Virginia recognizes the doctrine of constructive discharge in the context of retaliatory or discriminatory discharge actions. *See Slack v. Kanawha County Housing and Redevelopment Authority*, 423 S.E.2d 547 (W. Va. 1992). In such cases "a constructive discharge cause of action arises when the employee claims that because of age, race, sexual, or other unlawful discrimination, the employer has created a hostile working climate which was so intolerable that the employee was forced to leave his or her employment." *Id*. at Syl. Pt. 4. Moreover, to show that a resignation was actually a constructive discharge, an employee must "establish that working conditions created by or known to the employer were so intolerable that a reasonable person would be compelled to quit." *Id*. at Syl. Pt. 6. However, the actions undertaken by the employer need not be done with the specific intention of inducing the employee to quit. *Id*. Moreover, presenting an employee with an ultimatum requiring resignation or termination can serve as the basis for a constructive discharge. *Birthisel v. Tri-Cities Health Services Corp.*, 424 S.E.2d 606, 610 (W. Va. 424).

Looking beyond West Virginia, courts "recognize two varieties of constructive dismissal." *Walker v. City of Cookeville*, Case No. M2002-1441-COA-R3, 2003 WL 2918625 (Tenn. Ct. App.

9

Aug. 12, 2003). The first variety arises in the context of hostile work environment discrimination claims, is the most commonly encountered, and has been recognized in West Virginia. *Id.* The second variety of constructive discharge involves executive employees who have a position-specific contract. *Id.* In both varieties of claims, courts evaluate whether "the employers actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *In re Sight Res. Corp.*, Case No. 04-14987, 2007 Bankr. LEXIS 1501, at *3 (Bankr. S.D. Oh. May 4, 2007).

In an instance where an executive employee resigns or retires, the constructive dismissal doctrine provides an opportunity for an employee to overcome a presumption that the resignation was voluntary and thus recover under the terms of an employment agreement. *Aliotta v. Bair*, 614 F.3d 556, 566 (D.C. Cir. 2010). Such a doctrine is necessary to prevent employers from "attempt[ing] an 'end run' around [significant legal] consequences by engaging in conduct calculated to induce an employee to quit." *Id.* at *3.

Constructive dismissal cases frequently arise when an employer forces upon the affected employee the perplexing choice between tendering one's resignation or accepting termination. *See In re Sight Res. Corp.*, 2007 Bankr. LEXIS 1501 (holding that a CEO was constructively discharged when her employer hired her replacement and told her she could resign or be fired.); *Walker*, 2003 WL 2918625(concluding that an employee was constructively discharged when her employer demoted her, hired her replacement, and required her to train her replacement to do the job she used to perform).

In *Slack v. Kanawha County Housing*, the Supreme Court of Appeals of West Virginia clearly stated that it was following the majority rule of sister jurisdictions when evaluating whether constructive discharge applies in employment discrimination cases. 423 S.E.2d at 556-57. The issue of constructive discharge of an executive employee seeking to recover under an employment agreement has not been addressed by the Supreme Court of Appeals of West Virginia. Given the Supreme Court of Appeals of West Virginia's preference for the majority approach, however, and the absence of any clear rationale that would permit constructive discharge claims in employment discrimination cases but not in cases involving employment contractual disputes, it is this court's view that constructive discharge principles should apply when an executive employee is forced to resign in order to avoid the adverse consequences of termination.

Notably, the facts of this case are strikingly similar to those found in *In re Sight Res Corp.* 2007 Bankr. LEXIS 1501. In that case, a hospital's board of directors determined that it needed new leadership on the eve of bankruptcy. *Id.* at *3. The board proceeded to hire a new CEO and inform its current CEO that she could resign or be fired. In this case, the facts are harsher. The Debtor selected Marquardt's replacement and informed him that he was being terminated. He was not provided a choice. Instead, in the face of the inevitable, he requested that the termination be cast as a resignation. Thus, the facts of this case go one step beyond *In re Sight Res Corp.*, insofar as Marquardt was not presented with a choice but was actually told that he was being terminated. Thus, Marquardt's request to resign, rather than be terminated, was reasonable, particularly considering the professional reputational harm that typically coincides with being terminated. Moreover, it is clear that his resignation was induced by the conduct of the Debtor. In this case the characterization of Marquardt's departure as a resignation merely masked the fact that he was being unceremoniously fired. Admittedly, the Board's willingness to allow for Marquardt's resignation under such circumstances was rather magnanimous. But its decision was stark and final. Marquardt's services were no longer desired.

Under these circumstances, to accept the Liquidating Trustee's argument that, in reality, Marquardt's departure was the result of a voluntary resignation rather than a firing would be to elevate form over substance. *Walker*, 2003 WL 2918625 at *7 ("The doctrine [of constructive discharge] disregards form and recognizes that some resignations, in substance, are actually terminations . . . .") Marquardt faced an ultimatum, and as any reasonable person would have done, let alone an executive, Marquardt merely sought to preserve some dignity and protect his future employment prospects by nominally seeking to resign.

Therefore, the court will overrule the Liquidating Trustee's objection regarding the inapplicability of the provisions of the Employment Agreement because Marquardt resigned. Consistent with the limited scope of this opinion, the court reserves judgment, based upon further litigation, as to whether cause existed for Marquardt's termination, should the issue remain unresolved between the parties.

IV.   *Additional Objections*

The Liquidating Trustee raises several additional arguments addressing individual components of Marquardt's claim. Specifically, the Liquidating Trustee asserts that, if his objection is otherwise denied, Marquardt is not entitled to assert a priority claim. Additionally,

the Liquidating Trustee argues that the Employment Agreement does not provide for compensation of paid time off or retirement benefits even if Marquardt was terminated without cause.

A creditor's allowed unsecured claim is entitled to priority treatment in an amount up to $12,475 for wages or salaries, including vacation, severance, and sick time, earned within 180 days before the date of the filing of the petition; or for contribution to an employee benefit plan arising from services rendered within 180 days before the date of the filing of the petition. 11 U.S.C. § 507(a)(4) and (5). In this case, Marquardt seeks to recover $12,475, but fails to indicate why a portion of his claim is entitled to priority treatment. Because Marquardt's termination arose post-petition, his severance claim does not qualify because it did not occur within 180 days before the filing of the petition. *See In re M Group, Inc.*, 268 B.R. 896 (Bankr. D. Del. 2001). Moreover, he received compensation for his services performed pre-petition. Thus, the Liquidating Trustee's objection is sustained with regard to priority treatment of $12,475.

Regarding the objections to compensation for paid time off and retirement benefits, the Liquidating Trustee asserts that, even if Marquardt were terminated without cause, because Attachment C of the Employment Agreement provides severance only for base salary, and because Marquardt relies upon Attachment B to include these forms of compensation, they should not be allowed. However, both Attachment B and Attachment C are incorporated by reference into the Employment Agreement. In a section titled "Severance Terms," Attachment B provides that all legally permissible benefits will continue during severance. Attachment C provides that the Debtor will continue to pay Marquardt's base monthly salary for 12 months, will pay all gross base salary for services performed through his last day of work, and will maintain health benefits for a period of twelve months or until Marquardt receives benefits from a new employer. As Attachment B indicates that all legally permissible benefits will continue during the one-year severance period, and because retirement contributions justifiably fit within that category, Marquardt is entitled to that component of his claim. Therefore, the Liquidating Trustee's objection as to the retirement contribution component of the claim is overruled. As to the component of the claim pertaining to paid time off, however, neither Attachment B nor Attachment C indicates that Marquardt should be compensated for previously earned paid time off or Legacy paid time off. Therefore, the Liquidating Trustee's objection regarding the paid time off component of the claim is sustained.

For the reasons stated herein, the court does hereby

**ORDER** that the Liquidating Trustee's objection to Robert Marquardt's amended proof of claim is OVERRULED IN PART and SUSTAINED IN PART. Specifically, Marquardt's amended claim is to be reduced by $65,693.05. Additionally, none of Marquardt's claim is entitled to priority status.